ACCEPTED
12-15-00216-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
9/3/2015 2:56:56 PM
Pam Estes
CLERK

NO. _____

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

9/3/2015 2:56:56 PM

PAM ESTES
Clerk

IN THE
COURT OF APPEALS
FOR THE
TWELFTH DISTRICT OF TEXAS

IN RE THOMAS LYTLE AND ELLEN LYTLE,
Relators,

v.

THE HONORABLE TERESA DRUM, JUDGE
PRESIDING 294TH JUDICIAL DISTRICT
COURT OF VAN ZANDT COUNTY, TEXAS,
Respondent,

Real Parties in Interest:

David C. Petruska
Sandra L. Petruska
Helmuth K. Gutzke and
Zackiann Gutzke,
Defendants.

RECORD REGARDING
PETITION FOR WRIT OF MANDAMUS

Barbara L. Emerson, Esq.
Texas State Bar No. 06599400
BELLINGER & SUBERG, LLP          ORAL ARGUMENT REQUESTED
10,000 N. Central Expy., Suite 900
Dallas, TX  75231
214.954.9540 – Telephone
214.954.9541 – Facsimile
bemerson@bd-law.com

Now come the Relators herein and file herewith the Official Record containing certified copies of pleadings and orders from the 294th District Court of Van Zandt County, Texas, as outlined on the Table of Contents.

A hearing on the underlying motion was held on August 17, 2015, at which time certain exhibits were offered into evidence. On August 25, 2015, a request was made to Estella Grisham, the Court Reporter for 294th District Court of Van Zandt County, Texas, and payment was arranged for the transcript of the hearing held on August 17, 2015, regarding *Defendant David C. Petruska's Motion to Stay All Proceedings With Legal Authorities in Support*. The transcript has not been completed at the time of this filing. The record will be supplemented with the transcript once it is completed.

Respectfully submitted,

**BELLINGER & SUBERG, L.L.P.**

By:

BARBARA L. EMERSON
Texas State Bar No. 06599400
10,000 N. Central Expy., Suite 900
Dallas, Texas 75231
Telephone:  214/954-9540
Facsimile:  214/954-9541
bemerson@bd-law.com

**ATTORNEY FOR RELATORS,
THOMAS LYTLE AND ELLEN LYTLE**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the Record Regarding Petition for Writ of Mandamus has been forwarded to all counsel via eservice and email on the 3rd day of September, 2015 as provided below.

Respondent –Via Hand Delivery
The Hon. Teresa Drum
County Courthouse
121 E. Dallas St., Suite 301
Canton TX, 7510
(903)567-7555 Telephone
c/o Kathy Jackson, Court Administrator
kjackson@vanzandtcounty.org

Counsel to Helmuth Gutzke and Zackiann Gutzke
Ralph E. Allen
Attorney and Counselor at Law
100 East Ferguson, Suite 901
Tyler, Texas  75702
(903) 593-9727 Telephone
rallen@tyler.net

Counsel to David C. Petruska and Sandra L. Petruska
Michael F. Pezzulli
Holmes Firm PC
14911 Quorum Drive, Suite 340
Dallas, Texas  75254
(469) 916-7700 Telephone
Michael@courtroom.com

Barbara L. Emerson
Texas State Bar No. 06599400
BELLINGER & SUBERG, L.L.P.
10,000 N. Central Expy., Suite 900
Dallas, Texas 75231
Telephone:  214/954-9540
Facsimile:   214/954-9541
bemerson@bd-law.com

# TABLE OF CONTENTS

Page

Defendants David C. and Sandra L. Petruska's Response to Plaintiffs'   001
Motion for Summary Judgment on Liability, Subject to Their Motion
for Continuance, filed December 2, 1014;

Plaintiffs' First Amended Petition, filed February 12, 2015;   124

Trial Setting Notice, dated July 19, 2015;   130

Defendant David C. Petruska's Motion to Stay All Proceedings With   132
Legal Authorities in Support, filed August 4, 2015;

Plaintiffs' Opposition to Defendant David C. Petruska's Motion to Stay   147
All Proceedings, filed August 14, 2015;

Order Staying Proceedings; signed August 21, 2015;   153

Criminal Docket sheet from cause number CR14-00185, in which The   154
State of Texas versus David Charles Petruska, pending in the 294th
District Court of Van Zandt County, Texas;

NO. 14-00172

| | | |
|---|---|---|
| THOMAS LYTLE AND ELLEN LYTLE, | § § § | IN THE DISTRICT COURT |
| v. | § § | |
| DAVID C. PETRUSKA, SANDRA L. PETRUSKA, COMPASS BANK, HELMUTH K. GUTZKE, and ZACKIANN GUTZKE | § § § § § | 294th JUDICIAL DISTRICT VAN ZANDT COUNTY TEXAS |

## DEFENDANTS DAVID C. AND SANDRA L. PETRUSKA'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY, SUBJECT TO THEIR MOTION FOR CONTINUANCE

### I. Introduction

Because Defendants David and Sandra Petruska have already signed (and Plaintiffs Thomas and Ellen Lytle already filed) a release of easement and because the Petruskas raise a genuine issue of material fact on key elements of the Lytles' claim under section 12.002 of the Civil Practice & Remedies Code, the Court should dismiss some of the Lytles claims because no live controversy exists and it should deny the Lytles' motion for summary judgment on liability.

### II. Background

In November 2002, Thomas and Ellen Lytle purchased the property at 1603 Van Zandt County Road 2319.

In May 2008, David and Sandra Petruska purchased the neighboring property at 1601 Van Zandt County Road. 2319. As they believed that their predecessors and others had done, they drove on the Lytles' driveway for access to and from their property and house to the county road for years without complaint. After another dispute in February 2014, the Lytles' attorney demanded that the Petruskas release the easement so that the Lytles wouldn't sue. The Petruskas

DEFENDANTS DAVID C. AND SANDRA L. PETRUSKA'S RESPONSE TO PLAINTIFFS'     Page 1
MOTION FOR SUMMARY JUDGMENT ON LIABILITY, SUBJECT TO THEIR
MOTION FOR CONTINUANCE

signed the release of easement. But the Lytles sued anyway.

### III. Standards

As a plaintiff with the burden of proof, a plaintiff who moves for a traditional summary judgment must conclusively establish each element of his or her claim.[1] To defeat the motion, the defendant must present sufficient evidence to justify a reasonable jury in finding in his or her favor on the relevant elements.[2] A court should resolve all doubts and draw all reasonable inferences in the favor of the non-movant.[3]

### IV. Grounds to Deny Summary Judgment

**A.    The Petruskas specially except.**

**1.    No Specific Grounds for Summary Judgment**

The Petruskas specially except[4] to the Lytles' failure to state the specific grounds for their motion within the meaning of Rule 166a(c).

**2.    No Briefing on the Elements of Section 12.002**

The Petruskas specially except to the Lytles' failure to cite section 12.002 of the Civil Practice & Remedies Code, recite its elements, recite any case law under the section, or

---

[1] See Tex. R. Civ. P. 166a(c); *Bowman v. Brookshire Grocery Co.*, 317 S.W.3d 500, 503 (Tex. App.—Tyler 2010, pet. denied).

[2] See *Merchant v. PHH Mtge. Corp.*, No. 12-12-00261-CV, 2013 WL 5593493, *1 (Tex. App.—Tyler Oct. 9, 2013, no pet.) (memo).

[3] See *Bowman*, 317 S.W.3d at 503.

[4] "The purpose of special exceptions in the summary-judgment procedure is to ensure that the parties and the trial court are focused on the same grounds." Michol O'Connor, O'Connor's Texas Rules, Civil Trials 2013, 604 (2013) (citing *McConnell v. Southside Ind. Sch. Dist.*, 858 S.W.2d 337, 342-43 (Tex. 1993) (discussing the need for clear summary-judgment issues and the use of exceptions to clarify doubts)). "If the motion or response states grounds that are unclear or ambiguous, it is 'prudent trial practice' to file special exceptions." Michol O'Connor, O'Connor's Texas Rules, Civil Trials 2013, 604 (2013) (citing *McConnell v. Southside Ind. Sch. Dist.*, 858 S.W.2d 337, 342-43 (Tex. 1993) ("Prudent trial practice dictates that such an exception should be lodged to ensure that the parties, as well as the trial court, are focused on the same grounds.")).

**DEFENDANTS DAVID C. AND SANDRA L. PETRUSKA'S RESPONSE TO PLAINTIFFS'**    Page 2
**MOTION FOR SUMMARY JUDGMENT ON LIABILITY, SUBJECT TO THEIR**
**MOTION FOR CONTINUANCE**

RECORD 2

straightforwardly argue the evidence as it may or may not apply to the elements.

**B.     Lyltes' Requested Relief**

With respect to the Lytles' requested relief listed on pages 2–3 of their motion, the Petruskas counter:

1.     Because David and Sandy Petruska signed an returned the release of easement at Tab ___, there is no live controversy with respect to the Lytles' requested relief in sections II(2)(a), (b), and (c).  There is nothing for the Court to declare, and there is no further relief for the Lytles to obtain.

2.     In section II(2)(c), the Lytles ask the Court to "mandate" that the Petruskas sign documents to release all claims to the disputed easement.  In addition to the fact that the Petruskas have already signed a release and, thus, that this request involves no live controversy, the Lytles don't invoke a statute authorizing such relief.

3.     With respect to the Lytles' requested relief in section II(2)(d), a deed of trust sets out a lender's remedies against a borrower. A deed of trust doesn't affect the borrower's neighbors. To the extent that the Petruskas' deed of trust with Compass Bank may affect the Lyltes, the Petruskas have already signed a release of easement.  Thus, there is no live controversy with respect to this requested relief as to the Petruskas.  For example, the Lytles haven't asserted or briefed a provision under Chapter 65 of the Civil Practice & Remedies Code or met the standards for a preliminary injunction.

4.     As Fact Nos15-16 discuss below, the Petruskas did not cause any fraudulent documents to be filed in the public records within the meaning of section 12.002 of the Civil Practice & Remedies Code.

DEFENDANTS DAVID C. AND SANDRA L. PETRUSKA'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY, SUBJECT TO THEIR MOTION FOR CONTINUANCE

RECORD 3

## C. Lytles' Arguments

The Lytles failed to conclusive prove all of the elements of their claims. The Petruskas had reasonable grounds to believe that they had a valid easement as of May 16, 2008. Also, the evidence shows that the Petruskas never used the deeds knowing that the easement was false or fraudulent, and the Petruskas never had any intention to cause the Lytles any financial harm or emotional distress.

## V. Notice of Summary-Judgment Evidence

**Tab**        **Description**

Tab 1  Affidavit of David C. Petruska

    Tab A  Field Notes

    Tab B  Deed of Trust

    Tab C  General Warranty Deed with Vendor's Lien

    Tab D  Amendment to Contract dated April 2008

    Tab E  Amendment to Contract dated May 16, 2008

    Tab F  Letter re Commitment to Title Insurance dated April 10, 2008

    Tab G  Letter from Emily Dunn's dated February 28, 2014

    Tab H  032614 Letter to E Dunn with release of Easement

    Tab I  Survey revised

    Tab J  Photos

Tab 2  Affidavit of Sandra L. Petruska

Tab 3  Thomas and Ellen Lytles' Objections and Responses to David and Sandra Petruskas' First Requests for Admission

RECORD 4

## VI. Facts not Reasonably Disputed

### A. Properties

1. David and Sandy Petruska own the property at 1601 Van Zandt County Road 2319.[5] The property lies to the south of Van Zandt County Road 2319.[6] Van Zandt County Road runs roughly east and west.[7]

2. Thomas and Ellen Lytle claim to own the neighboring, contiguous property at 1603 Van Zandt County Road 2319. This property lies south of the county road and to the north or northwest of 1601 Van Zandt County Road 2319.[8]

### B. Driveway

3. The properties at 1601 and 1603 Van Zandt County Road 2319 are contiguous along a boundary on the west side of 1601 (or the east side of 1603) running southwest from Van Zandt County Road 2319.[9] A driveway or roadway, located on 1603 Van Zandt County Road 2319, runs southwest from the county road along the boundary line towards the houses on both properties.[10] For years, there has been a turn off from this driveway or roadway that connects to a barn or other farm building and, later since 1997, the house on 1601 Van Zandt County Road and a separate turn off from the driveway that connects to the house on 1603 Van Zandt County

---

[5] *See* David Petruska's Affidavit, ¶ 2, Tab 1 ; Sandra Petruska's Affidavit, ¶ 2, Tab 2.

[6] *See* David Petruska's Affidavit, ¶ 2, Tab 1.

[7] *See* David Petruska's Affidavit, ¶ 2, Tab 1.

[8] *See* David Petruska's Affidavit, ¶ 3, Tab 1.

[9] *See* David Petruska's Affidavit, ¶ 4, Tab 1.

[10] *See* David Petruska's Affidavit, ¶ 4, Tab 1.

RECORD 5

Road.[11] Before February 2014, Thomas Lytle told David Petruska that this driveway or roadway was a former county road and that one of his predecessor landowners bought it from the county.[12]

4.  A diagram of the properties with the driveway is at Tab 1(A).[13] Aerial photographs of the properties, the county road, and the driveway are at Tab 1(J).[14] These photographs depict the properties, including the disputed driveway with its turn offs that lead to the houses on each parcel, as they existed after we bought the property in May 2008 and before the Lytles first disputed their use of the driveway in February 2014.[15]

**D.  Easement**

5.  The photos of the driveway at Tab J show that the persons living in the house on 1601 Van Zandt County Road 2319 used and drove vehicles on the driveway or roadway on 1603 Van Zandt County 2319 for access to and from the house to the county road.[16] The driveway or roadway was there when the Petruska bought 1601 Van Zandt County Road in May 2008, and it was obvious from the driveway and its wear, tear, and tracks, by then, that the driveway had been heavily used by both properties.[17] For example, the driveway had a separate

---

[11] *See* David Petruska's Affidavit, ¶ 4, Tab 1; Sandra Petruska's Affidavit, ¶ 4, Tab 2.

[12] *See* David Petruska's Affidavit, ¶ 4, Tab 1.

[13] *See* David Petruska's Affidavit, ¶ 5, Tab 1.

[14] *See* David Petruska's Affidavit, ¶ 5, Tab 1.

[15] *See* David Petruska's Affidavit, ¶ 5, Tab 1; Sandra Petruska's Affidavit, ¶ 5, Tab 2.

[16] *See* David Petruska's Affidavit, ¶ 6, Tab 1; Sandra Petruska's Affidavit, ¶ 6, Tab 2.

[17] *See* David Petruska's Affidavit, ¶ 6, Tab 1; Sandra Petruska's Affidavit, ¶ 6, Tab 2.

RECORD 6

and well-worn split off leading to the house on 1601 Van Zandt County Road by May 2008.[18] Both properties, 1601 and 1603 Van Zandt County Road 2319, shared one mail-box post at the corner of the driveway and the county road between May 2008 and February 2014.[19]

### E.   Title Company

6.   On or about April 10, 2008, the Petruskas' title company—Elliott & Waldron Abstract & Title Company of Canton, Texas—wrote them a letter.[20]  Schedule B of the accompanying Commitment for Title Insurance "Exceptions from Coverage," stated, in part, "In addition to the Exclusion and Conditions and Stipulations, your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from . . . 10. Easements or claims of easements which may or may not be recorded in the public records of Zandt County, Texas."  At the time of their purchase, the Petruskas believed that this exclusion from the title policy was standard language.[21] They did not believe that this language referred specifically to the easement set out in the General Warranty Deed with Vendor's Lien from the Gutzkes.[22]  Also, they didn't understand the title company as telling them that the easement to use the neighboring driveway was invalid or non-existent.[23]  They understood the company to be saying that it just didn't insure easements.[24]  Also, no one from the title company told the Petruska that the easement identified

---

[18] *See* David Petruska's Affidavit, ¶ 6, Tab 1; Sandra Petruska's Affidavit, ¶ 6, Tab 2.

[19] *See* David Petruska's Affidavit, ¶ 6, Tab 1; Sandra Petruska's Affidavit, ¶ 6, Tab 2.

[20] *See* David Petruska's Affidavit, ¶ 7, Tab 1.

[21] *See* David Petruska's Affidavit, ¶ 7, Tab 1; Sandra Petruska's Affidavit, ¶ 7, Tab 2.

[22] *See* David Petruska's Affidavit, ¶ 7, Tab 1; Sandra Petruska's Affidavit, ¶ 7, Tab 2.

[23] *See* David Petruska's Affidavit, ¶ 7, Tab 1; Sandra Petruska's Affidavit, ¶ 7, Tab 2.

[24] *See* David Petruska's Affidavit, ¶ 7, Tab 1; Sandra Petruska's Affidavit, ¶ 7, Tab 2.

**DEFENDANTS DAVID C. AND SANDRA L. PETRUSKA'S RESPONSE TO PLAINTIFFS'**     Page 7
**MOTION FOR SUMMARY JUDGMENT ON LIABILITY, SUBJECT TO THEIR**
**MOTION FOR CONTINUANCE**



RECORD 7

in the General Warranty Deed was not valid.[25] In fact, no one at all, including the title company personnel, the bank personnel, the Gutzkes, or anyone else, ever suggested to the Petruskas that the easement identified in the General Warranty Deed was not valid.[26] From January 2008 during the times the Petruskas visited the property to make their purchase decision, they drove on the neighboring driveway to access the property.[27] So did the realtors and others involved in their purchase.[28] No one, including the Lytles, complained about this.[29]

7.       As Exhibit B(1) to Plaintiff's Motion for Summary Judgment on Liability (filed Oct. 29, 2014), the Lytles attached a copy of our title policy for the property. Schedule B (Exceptions) states, in part, "We do not cover loss, costs, attorneys' fees and expenses resulting from: . . . 6(l) We do not insure access via the roadway shown on property owned Lytle adjacent to NW line of property shown on survey dated April 23, 2008 by Gerald A. Carter." The Petruskas did not receive a copy of the title policy at the time of closing on May 16, 2008.[30] Buyers ordinarily do not receive copies of the title policy at the time of the closing.[31] Closings are predicated on the title commitment.[32] Title companies customarily provide a final title policy

---

[25] *See* David Petruska's Affidavit, ¶ 7, Tab 1; Sandra Petruska's Affidavit, ¶ 7, Tab 2.

[26] *See* David Petruska's Affidavit, ¶ 7, Tab 1; Sandra Petruska's Affidavit, ¶ 7, Tab 2.

[27] *See* David Petruska's Affidavit, ¶ 7, Tab 1; Sandra Petruska's Affidavit, ¶ 7, Tab 2.

[28] *See* David Petruska's Affidavit, ¶ 7, Tab 1; Sandra Petruska's Affidavit, ¶ 7, Tab 2.

[29] *See* David Petruska's Affidavit, ¶ 7, Tab 1; Sandra Petruska's Affidavit, ¶ 7, Tab 2.

[30] *See* David Petruska's Affidavit, ¶ 8, Tab 1; Sandra Petruska's Affidavit, ¶ 8, Tab 2.

[31] *See* David Petruska's Affidavit, ¶ 8, Tab 1; Sandra Petruska's Affidavit, ¶ 8, Tab 2.

[32] *See* David Petruska's Affidavit, ¶ 8, Tab 1; Sandra Petruska's Affidavit, ¶ 8, Tab 2.

RECORD 8

four to six weeks after a closing.[33] In fact, the Petruskas are unsure when they first saw a copy of their title policy, but it was long after closing.[34] Also, the title company is not stating that the easement shown on the General Warranty Deed with Vendor's Lien (dated May 16, 2008) from the Gutzkes is invalid.[35]

## F. Independent Survey

8.     In early 2008, the Petruskas engaged an independent surveyor, Registered Professional Surveyor No. 1935 Gearld A. Carter, to survey the property at 1601 Van Zandt County Road 2319 and to confirm the property's boundaries.[36] Mr. Carter provided the Petruskas and the title company with a survey, field notes, and diagrams.[37] Although they're not experts at reading technical surveys or diagrams, they understood that the documents at Tab _ likewise confirmed and documented this easement. The Petruskas understood this in 2008, as well, when they had their General Warranty Deed with Vendor's Lien and our Deed of Trust recorded in Van Zandt County's public land records.[38]

## G. The Petruskas bought 1601 Van Zandt County Road 2319.

9.     On April 24, 2008, the Petruskas, on the one hand, and the Gutzkes, on the other hand, signed an amendment to the real-estate contract for the property, chiefly to make David

---

[33] See David Petruska's Affidavit, ¶ 8, Tab 1; Sandra Petruska's Affidavit, ¶ 8, Tab 2.

[34] See David Petruska's Affidavit, ¶ 8, Tab 1; Sandra Petruska's Affidavit, ¶ 8, Tab 2.

[35] See David Petruska's Affidavit, ¶ 8, Tab 1; Sandra Petruska's Affidavit, ¶ 8, Tab 2.

[36] See David Petruska's Affidavit, ¶ 9, Tab 1; Sandra Petruska's Affidavit, ¶ 9, Tab 2.

[37] See David Petruska's Affidavit, ¶ 9, Tab 1; Sandra Petruska's Affidavit, ¶ 9, Tab 2.

[38] See David Petruska's Affidavit, ¶ 9, Tab 1; Sandra Petruska's Affidavit, ¶ 9, Tab 2.

RECORD 9

Petruska a party-buyer to the contract.[39] At the time, the title company recommended that the parties obtain documentation of the easement signed by the Lytles.[40] Exhibit A to the amendment stated, "Closing is conditioned upon conveyance of easement acceptable to buyers allowing access to said property from private driveway owned by Ms. Lytle."[41] In April or May 2008, Sandy Petruka called Thomas Lytle about signing a paper to meet the title company's suggestion.[42] Thomas Lytle said that he didn't want to spend money on an attorney to confirm an easement that was clear or obvious that residents of 1601 Van Zandt County Road 2319 had possessed and used for years.[43] Given this, the Petruskas didn't seek further documentation.[44]

10.    On or about May 16, 2008, the Petruskas, relying in part, on the representations in the General Warranty Deed as well as the representations of Tom Lytle in his phone conversation with Sandy, purchased the real property consisting of just over 25 acres of land, with a house and other buildings, at 1601 Van Zandt County Road 2319, being described in that General Warranty Deed with Vendor's Lien dated May 16, 2008, from Helmuth Gutzke and Zackiann Gutzke, recorded with Document Number 2008-004602 of the deed records of Van Zandt County, Texas.[45]

11.    On May 16, 2008, the Petruskas and the Gutzkes signed another amendment,

---

[39] *See* David Petruska's Affidavit, ¶ 10, Tab 1.

[40] *See* David Petruska's Affidavit, ¶ 10, Tab 1.

[41] *See* David Petruska's Affidavit, ¶ 10, Tab 1.

[42] *See* Sandra Petruska's Affidavit, ¶ 10, Tab 2.

[43] *See* ; Sandra Petruska's Affidavit, ¶ 10, Tab 1; *see also* David Petruska's Affidavit, ¶ 10, Tab 1.

[44] *See* David Petruska's Affidavit, ¶ 10, Tab 1; Sandra Petruska's Affidavit, ¶ 10, Tab 1.

[45] *See* David Petruska's Affidavit, ¶ 10, Tab 1.

RECORD 10

which stated, in part, "Seller and Buyer agree to waive the condition of the contract relating to obtaining an easement from Thomas M. or Ellen Lytle."[46] The Petruskas believed that they did not need any additional documentation of the easement.[47] First, their general warranty deed (dated May 26, 2008) set out the easement.[48] Second, an independent surveyor confirmed the easement in April 2008.[49] Third, they believed that the Gutzkes had used and driven vehicles on the driveway or roadway for years before May 16, 2008.[50] Fourth, Thomas Lytle had acknowledged the easement in a phone conversation with Sandy in April or May 2008.[51]

12. The Gutzkes stated that they owned fee simple title to the property, including the easement, at the time the Petruskas purchased it.[52] By the terms of the General Warranty Deed, the Gutzkes warranted the title conveyed to them, including the easement.[53] In part, the Deed stated, "All that certain lot, tract or parcel of land . . . of the called 5.753 acre first tract and all of the called 20.00 acre second tract . . . together with an Easement for Roadway situated in Van Zandt County, State of Texas, on the M.V. Lout Survey, A-468 and being a part of the called 68.78 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed . . . and part of the called 1.10 acre tract conveyed to Thomas M. Lytle and Ellen

---

[46] *See* David Petruska's Affidavit, ¶ 11, Tab 1.

[47] *See* David Petruska's Affidavit, ¶¶ 11-12, Tab 1; Sandra Petruska's Affidavit, ¶¶ 12-13, Tab 2.

[48] *See* David Petruska's Affidavit, ¶¶ 11-12, Tab 1; Sandra Petruska's Affidavit, ¶¶ 12-13, Tab 2.

[49] *See* David Petruska's Affidavit, ¶¶ 11-12, Tab 1; Sandra Petruska's Affidavit, ¶¶ 12-13, Tab 2.

[50] *See* David Petruska's Affidavit, ¶¶ 11-12, Tab 1; Sandra Petruska's Affidavit, ¶¶ 12-13, Tab 2.

[51] *See* David Petruska's Affidavit, ¶¶ 11-12, Tab 1; Sandra Petruska's Affidavit, ¶¶ 12-13, Tab 2.

[52] *See* David Petruska's Affidavit, ¶ 13, Tab 1.

[53] *See* David Petruska's Affidavit, ¶ 13, Tab 1.

RECORD 11

Lytle . . . ."[54] The Gutzkes executed and delivered the General Warranty Deed pursuant to a purchase agreement and in consideration of the purchase price paid that the Petruskas paid to the Gutzkes including purchase of the easement.[55]

13.    On or about May 16, 2008, the Petruskas also signed a Deed of Trust, which contained the same property description and easement language as the General Warranty Deed with Vendor's Lien, as part of securing a loan from Compass Bank.[56]

14.    Between May 16, 2008 and February 2014, the Petruskas used and drove on the driveway on the Lytles' property without complaint.[57] Both properties shared a single mail-box post at the corner of the county road and the driveway or roadway.[58] Before February 2014, David Petruska gave Thomas Lytle a check for what County Commissioner Virgil Melton told David was one-half of the cost of repairing the culvert and entranceway from the county road to the driveway or roadway, and Lytle cashed the check.[59]

**H.    The Petruskas had a valid easement on May 16, 2008.**

15.    The Petruskas believed that they had or acquired a valid easement, attached to their property, to use and drive vehicles on the driveway or roadway located on 1603 Van Zandt County Road 2319, on May 16, 2008.[60] First, their general warranty deed (dated May 26, 2008)

---

[54] *See* David Petruska's Affidavit, ¶ 13, Tab 1.

[55] *See* David Petruska's Affidavit, ¶ 13, Tab 1.

[56] *See* David Petruska's Affidavit, ¶ 14, Tab 1.

[57] *See* David Petruska's Affidavit, ¶ 15, Tab 1; Sandra Petruska's Affidavit, ¶ 15, Tab 2.

[58] *See* David Petruska's Affidavit, ¶ 15, Tab 1; Sandra Petruska's Affidavit, ¶ 15, Tab 2.

[59] *See* David Petruska's Affidavit, ¶ 15, Tab 1.

[60] *See* David Petruska's Affidavit, ¶¶ 16-17, Tab 1; Sandra Petruska's Affidavit, ¶¶ 16-17, Tab 2.

DEFENDANTS DAVID C. AND SANDRA L. PETRUSKA'S RESPONSE TO PLAINTIFFS'      Page 12
MOTION FOR SUMMARY JUDGMENT ON LIABILITY, SUBJECT TO THEIR
MOTION FOR CONTINUANCE

RECORD 12

set out the easement.[61] Second, an independent surveyor confirmed the easement in April 2008.[62] Third, they believed, based on conversations with the Gutzkes, that the Gutzkes had used and driven vehicles on the driveway or roadway for years before May 16, 2008.[63] Fourth, Thomas Lytle acknowledged the easement in a phone call with Sandy in April or May 2008.[64] Fifth, the two properties shared one mail-box post at the corner of the driveway and Van Zandt County Road 2319 when in May 2008.[65] Moreover, the Petruskas' beliefs were confirmed by their experience in using and driving vehicles on the driveway between May 2008 and February 2014 without complaint from the Lytles or anyone else.[66] Mr. Lytle's later acceptance and cashing of the check for what Commissioner Melton said was one-half of the cost to replace the culvert and repair the affected part of the driveway also confirmed their beliefs.[67]

## I. The Petruskas committed no fraud.

16. Their information as of May 16, 2008, including that set out in paragraph 15, shows that the Petruskas did not commit any fraud, including fraud under section 12.002 of the Civil Practice & Remedies Code.[68] They had a valid easement and documentation to support this

---

[61] *See* David Petruska's Affidavit, ¶¶ 16-17, Tab 1; Sandra Petruska's Affidavit, ¶¶ 16-17, Tab 2.

[62] *See* David Petruska's Affidavit, ¶¶ 16-17, Tab 1; Sandra Petruska's Affidavit, ¶¶ 16-17, Tab 2.

[63] *See* David Petruska's Affidavit, ¶¶ 16-17, Tab 1; Sandra Petruska's Affidavit, ¶¶ 16-17, Tab 2.

[64] *See* David Petruska's Affidavit, ¶¶ 16-17, Tab 1; Sandra Petruska's Affidavit, ¶¶ 16-17, Tab 2.

[65] *See* David Petruska's Affidavit, ¶ 17, Tab 1; Sandra Petruska's Affidavit, ¶ 17, Tab 2.

[66] *See* David Petruska's Affidavit, ¶ 17, Tab 1; Sandra Petruska's Affidavit, ¶ 17, Tab 2.

[67] *See* David Petruska's Affidavit, ¶ 17, Tab 1.

[68] *See* David Petruska's Affidavit, ¶ 18, Tab 1; Sandra Petruska's Affidavit, ¶ 18, Tab 2.

RECORD 13

conclusion.[69] They did not prepare, or participate in the preparation of, the General Warranty Deed with Vendor's Lien (May 16, 2008), Tab C, from the Gutzkes, and the deed described the easement.[70] The Petruskas did not prepare, or participate in the preparation of (beyond signing), the Deed of Trust (May 16, 2008), Tab B, for Compass Bank, which contained the same description of the easement.[71] Given their documentation, including the independent survey and the general warranty deed, the Petruskas did not search the deed records to see what might or might not be reflected in the Lytles' deed or deeds.[72] Moreover, the Gutzkes said that they had used the driveway to access the property and house for years.[73] The Gutzkes said, in the warranty deed, that they had an easement to sell.[74] An surveyor independently confirmed the easement.[75] No one—including persons from our title company, the real-estate agents, Compass Bank, and our surveyor—ever suggested that the easement was invalid or that the General Warranty Deed with Vendor's Lien or the Deed of Trust were fraudulent or contained any materially false information.[76] The Petruskas never had any intention of causing a fraudulent document to be filed of public record in conjunction with their purchase of 1601 Van Zandt

---

[69] *See* David Petruska's Affidavit, ¶ 18, Tab 1; Sandra Petruska's Affidavit, ¶ 18, Tab 2.

[70] *See* David Petruska's Affidavit, ¶ 18, Tab 1; Sandra Petruska's Affidavit, ¶ 18, Tab 2.

[71] *See* David Petruska's Affidavit, ¶ 18, Tab 1; Sandra Petruska's Affidavit, ¶ 18, Tab 2.

[72] *See* David Petruska's Affidavit, ¶ 18, Tab 1; Sandra Petruska's Affidavit, ¶ 18, Tab 2.

[73] *See* David Petruska's Affidavit, ¶ 18, Tab 1; Sandra Petruska's Affidavit, ¶ 18, Tab 2.

[74] *See* David Petruska's Affidavit, ¶ 18, Tab 1; Sandra Petruska's Affidavit, ¶ 18, Tab 2.

[75] *See* David Petruska's Affidavit, ¶ 18, Tab 1; Sandra Petruska's Affidavit, ¶ 18, Tab 2.

[76] *See* David Petruska's Affidavit, ¶ 18, Tab 1; Sandra Petruska's Affidavit, ¶ 18, Tab 2.

RECORD 14

County Road, nor were any fraudulent documents filed in conjunction with such purchase.[77]

**J.      David Petruska did not assert his rights to the easement with an assault rifle.**

17.      In paragraph 21 of Plaintiff's Motion for Summary Judgment on Liability (filed Oct. 29, 2014), the Lytles wrote, "The Petruskas have taken actions to assert their rights to the easement, including coming on to Plaintiffs' property and threatening Plaintiff, Thomas Lytle, with an assault rifle." David Petruska denies this.[78] He never came on to the Lytles' property with an assault rifle.[79] On February 15, 2014, he had an unloaded assault rifle on his gator and was driving on his own property.[80] He had a rifle because Thomas Lytle had threatened to shoot him and three other workers, while they were working on a fence on the Petruskas' property.[81] David never threatened Thomas Lytle with my rifle.[82] Also, his driving with the rifle had no connection to the disputed easement.[83] The Petruskas drove on the driveway located on the Lytles' property between May 2008 and February 2014 without complaint from the Lytles.[84]

**K.      Moreover, the Petruskas released the easement before the Lytles filed suit.**

18.      On February 28, 2014, the Lytles' attorney, Emily Jones Dunn, wrote the Petruskas a letter and asserted that they didn't have a recorded easement to use the driveway or

---

[77] *See* David Petruska's Affidavit, ¶ 18, Tab 1; Sandra Petruska's Affidavit, ¶ 18, Tab 2.

[78] *See* David Petruska's Affidavit, ¶ 19, Tab 1.

[79] *See* David Petruska's Affidavit, ¶ 19, Tab 1.

[80] *See* David Petruska's Affidavit, ¶ 19, Tab 1.

[81] *See* David Petruska's Affidavit, ¶ 19, Tab 1.

[82] *See* David Petruska's Affidavit, ¶ 19, Tab 1.

[83] *See* David Petruska's Affidavit, ¶ 19, Tab 1.

[84] *See* David Petruska's Affidavit, ¶ 19, Tab 1.

RECORD 15

roadway on the Lytles' property which created a cloud on their title.[85] She offered, "I am requesting that you execute the enclosed release stating that there is no easement. If I do not receive a properly executed release within 30 days from the date of this letter, I am prepared to litigate."[86]

19. The Petruskas believed that the attorney was incorrect.[87] First, their general warranty deed (dated May 16, 2008) reflected the easement.[88] Second, an independent surveyor confirmed the easement in April 2008.[89] Third, they believed that the residents of 1601 Van Zandt County Road 2319 had used and driven vehicles on the driveway or roadway for many years and the Petruskas had used the driveway between May 2008 and February 2014 without complaint.[90] Nonetheless, in an effort to avoid litigation and further problems, the Petruskas accepted the Lytles' offer and signed the release of easement and returned it to the Lytles' attorney on March 26, 2014.[91] They would not have signed the release of easement or returned it, unless the Lytles had agreed, in return, not to sue over the easement.[92]

20. Again, the Petruskas fully performed all of their material duties under the contract with the Lytles, under which the Lytles agreed not to sue over the easement in exchange for a

---

[85] *See* David Petruska's Affidavit, ¶ 20, Tab 1.

[86] *See* David Petruska's Affidavit, ¶ 20, Tab 1.

[87] *See* David Petruska's Affidavit, ¶ 21, Tab 1; Sandra Petruska's Affidavit, ¶ 20, Tab 2.

[88] *See* David Petruska's Affidavit, ¶ 21, Tab 1.

[89] *See* David Petruska's Affidavit, ¶ 21, Tab 1.

[90] *See* David Petruska's Affidavit, ¶ 21, Tab 1; Sandra Petruska's Affidavit, ¶ 20, Tab 2.

[91] *See* David Petruska's Affidavit, ¶ 21, Tab 1; Sandra Petruska's Affidavit, ¶ 20, Tab 2.

[92] *See* David Petruska's Affidavit, ¶ 21, Tab 1; Sandra Petruska's Affidavit, ¶ 20, Tab 2.

RECORD 16

signed release of easement. In contrast, the Lytles materially breached the contract by (a) filing this lawsuit on July 9, 2014, (b) filing a motion for summary judgment on October 29, 2014, and (c) continuing this lawsuit. The Lytles' material breaches have proximately caused, and continue to cause, the Petruska's damages, including attorney's fees and litigation expenses.

## VII. The Court should deny the Lytles' motion.

### A. Lyltes' Requested Relief

#### 1. Lytles' Sections II(2)(a), (b), and (c)

At pages 2–3 of their motion, the Lytles seek

- § II(2)(a) – a declaration that no easement exists for the benefit of the Petruskas' property;

- § II(2)(b) – a declaration that any easement in the Petruskas' General Warranty Deed with Vendor's Lien or the Deed of Trust with Compass Bank is null and void;

- § II(2)(c) – "mandate" that the Petruskas sign a release of all claims to the disputed easement.

But a court's subject-matter jurisdiction requires a live controversy,[93] and the Petruskas have already signed and returned to the Lytles the release of easement at Tab 1(H).[94] Thus, there is no live controversy with respect to these requests for relief by the Lytles. The Court has no jurisdiction over these claims or these aspects of the Lytles' claims and should deny the

---

[93] See The State Bar of Texas v. Gomez, 891 S.W.2d 243, 245 (Tex. 1994) ("Subject matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable."); see also Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 865 (Tex. 2010) (same).

[94] See David Petruska's Affidavit, ¶¶ 20-22, Tab 1; Sandra Petruska's Affidavit, ¶¶ 19-21, Tab 2; Thomas and Ellen Lytles' Objections and Responses to David and Sandra Petruskas' First Requests for Admission, response to nos. 1 & 2 (served Nov. 6, 2014), Tab 3 (admitting that the Petruskas signed the release of easement on or about March 26, 2014 and that the Lytles filed the release in the public records before July 1, 2014).

RECORD 17

requested relief and dismiss the related claims or aspects of the claims for lack of jurisdiction.

2.      Lytles' Section II(2)(b)

A deed of trust is a mortgage document and gives a bank or other lender certain rights or remedies against a borrower (related to the real estate purchased).[95] The Lytles cite no authority or evidence that the Petruskas' deed of trust affects the Lytles. Instead, the Lytles complain about the deed of trust's inclusion of language about the disputed easement. To this extent, the Lytles have no live complaint with the Petruskas, because the Petruskas have already signed a release of easement. Thus, there's nothing in this regard for the Court to find or declare. The Court has no jurisdiction over this claim or this aspect of the Lytles' claims and should deny the requested relief and dismiss the related claim or aspect.

3.      Lytles' Section II(2)(d)

In section II(2)(d), the Lytles ask the Court to order the Petruskas and Compass Bank to sign an amended deed of trust to remove all references to the disputed easement and to release all claims to the disputed easement. Again, a deed of trust is a contract between the Petruskas and Compass Bank, and the Lytles aren't a party. Again, the Lytles cite no authority or evidence that the deed of trust affects them or their property. Instead, the Lytles complain about the deed of trust's inclusion of language about the disputed easement. To this extent, the Lytles have no live complaint with the Petruskas, because the Petruskas have already signed a release of easement.

---

[95] *See, e.g., Kaldis v. Aurora Loan Servs.*, No. 01-09-00270-CV, 2010 WL 2545614, *1 n.2 (Tex. App.—Houston [1st Dist.] June 24, 2010, pet. dism'd w.o.j.) (unpublished) ("An alternative to a mortgage, a deed of trust is an agreement between three parties, whereby the title holder deeds the property to a trustee who holds the title for the lender until the loan is fully repaid); *Stephens v. LPP Mtge, Ltd.*, 316 S.W.3d 742, 746, 750 (Tex. App.—Austin 2010, pet. denied) (noting that a deed of trust secured a note's repayment); Black's Law Dictionary, 414 (6th ed. 1990).

RECORD 18

The Lytles have already filed the release on the public records.[96]

### 4. Lytles' Section II(2)(e)

As Fact Nos. 15-16 discuss, the Petruskas did not cause any fraudulent documents to be filed in the public records within the meaning of section 12.002 of the Civil Practice & Remedies Code. The Petruskas had no intent to cause financial harm to the Lytles—as their provision of the release of easement conclusively proves.

### B. Lytles' Arguments

The Lytles' must conclusively prove as a matter of law that David and Sandy Petruska (1) made or used a document with knowledge that it was a fraudulent lien; (2) intended the document be given legal effect; and (3) intended to cause Thomas and Ellen Lytle financial injury.[97]

First, David and Sandy Petruska didn't draft the General Warranty Deed with Vendor's Lien, Tab 1(C), from the Gutzkes.

Second, beyond signing it, the Petruskas didn't draft the Deed of Trust with Compass Bank. Also, with respect to their signature, the Petruskas signed (and the Lytles filed) a release of easement before the Lytles filed suit.

Third, David and Sandy Petruska had no knowledge that the easement described in their general warranty deed was non-existent, much less fraudulent. In fact, their documentation—

---

[96] *See* Thomas and Ellen Lytles' Objections and Responses to David and Sandra Petruskas' First Requests for Admission, response to nos. 1 & 2 (served Nov. 6, 2014), Tab 3 (admitting that the Petruskas signed the release of easement on or about March 26, 2014 and that the Lytles filed the release in the public records before July 1, 2014).

[97] *See Gray v. Entis Mech. Servs., LLC*, 343 S.W.3d 527, 529-30 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (reciting the plaintiff-movant's burden to get a summary judgment on a claim under section 12.002 of the Civil Practice & Remedies Code.)

DEFENDANTS DAVID C. AND SANDRA L. PETRUSKA'S RESPONSE TO PLAINTIFFS'    Page 19
MOTION FOR SUMMARY JUDGMENT ON LIABILITY, SUBJECT TO THEIR
MOTION FOR CONTINUANCE

RECORD 19

including their general warranty deed and their surveyor's independent confirmation—supported their belief that the easement was valid and existing. Thomas Lytle acknowledged the easement in a phone conversation with Sandy Petruska before they bought the property. Their experience in driving on the driveway between May 2008 and February 2014 confirmed their belief. Fact Nos. 15-16, above, extensively discuss this, as do David's and Sandy's affidavits.

Fourth, the Lytles'—through their attorney's letter at Tab 1(G)—asked the Petruskas to sign a release of easement. This act alone suggests that the Lytles or their attorney had grounds to believe that an easement existed that allowed the owners of 1601 Van Zandt County Road 2319 to use the driveway on 1603 Van Zandt County Road 2319. This alone creates a genuine issue of material fact that justifies denying summary judgment.

In paragraphs 12–15 of their motion for summary judgment, the Lytles argue that the April 24, 2008 and the May 16, 2008 amendments to the Petruskas' purchase agreement show that the Petruskas knew that there was no valid easement when they bought their parcel in May 2008. David Petruska addresses this argument in paragraphs 10–12 of his affidavit (Fact Nos. 9-11, above). The Petruskas believed that they did not need additional documentation of the easement because of the general warranty deed's language, the independent surveyor's confirmation, their belief that the Gutzkes had used the driveway for years without complaint, and that Thomas Lytle had acknowledged the easement in his phone conversation with Sandy in April or May 2008.

Fifth, David and Sandy Petruska never had an intention to cause financial injury or emotional distress to Thomas or Ellen Lytle. Again, the Petruskas had good reason to believe that they had a valid easement and they drove on the driveway for years with no complaint.

RECORD 20

Also, the Petruskas promptly signed and returned the release of easement provided by the Lytles' attorney, which alone conclusively negates any intention to cause financial harm or emotional distress.

In sum, the evidence is that the Petruskas had good reason to believe that they were buying a valid easement to use the neighboring driveway—as photos show that other had done for years—when they bought their property in May 2008. Also, the evidence shows that the Petruskas never used the deeds with knowledge that the easement language was false or fraudulent. And the evidence conclusively shows that the Petruskas never had an intent to cause financial injury or emotional distress to the Lytles. Thus, the Court should deny summary judgment.[98]

## C.    David Petruska never tried to enforce the easement with a firearm.

In paragraph 21 of their motion, the Lytles assert that David Petruska tried to enforce the easement with a firearm. David Petruska denies and discusses this assertion in paragraph 19 of his affidavit. He never entered the Lytles' property with a firearm, and he carried one only because Thomas Lytle—who is younger, larger, and stronger than David—threatened to shoot David and three other workers in the past.

### VIII. Conclusion

Because the Petruskas have already signed (and the Lytles already filed) a release of easement and because the Petruskas raise a genuine issue of material fact on key elements of the Lytles' claim under section 12.002 of the Civil Practice & Remedies Code, the Court should

---

[98] *E.g., Gordon v. West Houston Trees, Ltd.*, 352 S.W.3d 32, 46-47 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (reversing a summary judgment on a section 12.002 claim where the plaintiff failed to conclusively show that the defendant knew that the relevant records were false or fraudulent).

DEFENDANTS DAVID C. AND SANDRA L. PETRUSKA'S RESPONSE TO PLAINTIFFS'     Page 21
MOTION FOR SUMMARY JUDGMENT ON LIABILITY, SUBJECT TO THEIR
MOTION FOR CONTINUANCE

dismiss some of the Lytles claims because no live controversy exists and it should deny the Lytles' motion for summary judgment on liability.

Respectfully submitted,

PEZZULLI BARNES, LLP

/s/ Michael F. Pezzulli
MICHAEL F. PEZZULLI
State Bar No. 15881900
michael@courtroom.com
CHRISTOPHER L. BARNES
State Bar No. 00792175
chris@courtroom.com
M. ELLEN SKINNER
State Bar No. 24033075
ellen@courtroom.com
17300 Preston Road, Suite 220
Dallas, Texas 75252-5476
(972) 713-1300

-and-

Rothwell B. Pool
Rothwell B. Pool
State Bar No. 16120500
Law Offices of Rothwell B. Pool
408 W. Nash
Terrell, Tx. 75160
972-524-7585
972-524-3909 (fax)
**Attorneys for David and Sandra Petruska**

RECORD 22

## CERTIFICATE OF SERVICE

I certify that on Monday, December 1, 2014 a true and correct copy of Defendants David C. and Sandra L. Petruska's Response to Plaintiffs' Motion for Summary Judgment on Liability, Subject to their Motion for Continuance was served by electronic notice on the below:

BARBARA L. EMERSON
Texas State Bar No. 06599400
**BELLINGER & SUBERG, L.L.P.**
10,000 N. Central Expy, Suite 900
Dallas, Texas 75231
Telephone: 214/954-9540
Facsimile: 214/954-9541
bemerson@bd-law.com
*Attorney for Thomas and Ellen Lytle*

Ralph E. Allen
100 East Ferguson, Suite 901
Tyler, Texas 75710-0028
Phone: 903-593-9727
Fax: 903-531-2566
rallen@tyler.net
*Attorney for Helmuth K. Gutzke and Zackiann Gutzke*

William "Pat" Huttenbach
Aaron E. Homer
1415 Louisiana Street, 36th Floor
Wedge International Tower
Houston, Texas 77002
Phone: 713-223-5181
Fax: 713-223-9319
ahomer@hirschwest.com
*Attorney for Compass Bank*

/s/ Michael F. Pezzulli
Michael F. Pezzulli

RECORD 23

NO. 14-00172

| THOMAS LYTLE AND ELLEN LYTLE, | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| | § | |
| v. | § | |
| | § | |
| DAVID C. PETRUSKA, SANDRA L. PETRUSKA, COMPASS BANK, HELMUTH K. GUTZKE, and ZACKIANN GUTZKE | § | 294th JUDICIAL DISTRICT |
| | § | |
| | § | |
| | § | VAN ZANDT COUNTY TEXAS |

## AFFIDAVIT OF DAVID C. PETRUSKA

1. My name is David. C. Petruska. I am one of the defendants in this case. My wife is Sandra L. Petruska, who is another defendant. I am competent to make this affidavit. My personal knowledge is based on my first-hand experience in buying, with my wife, the property at 1601 Van Zandt County Road 2319 in May 2008; my experience in driving on the disputed driveway between January 2008 and February 2014 with no protest from Thomas or Ellen Lytle; my experiences in living on or visiting the property regularly between May 2008 and the present; my personal review of the General Warranty Deed with Vendor's Lien we received from Helmuth and Zackiann Gutzke, the Deed of Trust we signed with Compass Bank, the release of easement I signed and returned to the Lytles' attorney in March 2014, and the Lytles' original petition, which is in the Court's file; my personal conversations with the Gutzkes, the Lytles, representatives of Compass Bank, and Registered Professional Land Surveyor No. 1935 Gearld A. Carter, as discussed below; and my personal review of other documents and photographs discussed below. The facts I discuss are within my personal knowledge and are true and correct.

### A. Property: 1601 Van Zandt County Road 2319

2. My wife, Sandra, and I own the property at 1601 Van Zandt County Road 2319, Canton, Texas. The property consists of just over 25 acres that lie just south of Van Zandt County Road 2319, which runs roughly east and west. A house sits on the property back from the driveway on the neighboring property. To best of my knowledge the house was on the property since some time in 1997 when it was built, and a diagram from a 2008 survey shows a "concrete slab" at the house's location and the diagram states, "Revised 6-9-97." A true and correct copy of the survey is at Tab I. Thus, I believe that the house was built by or in 1997.

### B. Neighboring Property: 1603 Van Zandt County Road 2319

3. Thomas and Ellen Lytle claim to own the neighboring property at 1603 Van Zandt County Road 2319, which also lies south of the county road.

Affidavit of David C. Petruska

Tab 1

- Page 1

RECORD 24

## C. Driveway or Roadway

4. The properties at 1601 and 1603 Van Zandt County Road 2319 are contiguous along a boundary on the west side of 1601 (or the east side of 1603) running southwest from Van Zandt County Road 2319. A driveway or roadway, located on 1603 Van Zandt County Road 2319, runs southwest from the county road along the boundary line towards the houses on both properties. For years, there has been a turn off from this driveway or roadway that connects to a barn or other farm building and, later since 1997, the house on 1601 Van Zandt County Road and a separate turn off from the driveway that connects to the house on 1603 Van Zandt County Road. Before February 2014, Thomas Lytle told me that this driveway or roadway was a former county road and that one of his predecessor landowners bought it from the county.

5. A true and correct diagram of the properties is at Tab I. This diagram accurately depicts the relevant portion of Van Zandt County Road 2319, the "private road" or driveway on the Lytle's land, and our property. True and correct photographs of the properties are at Tab J. These photographs depict the properties, including the disputed driveway with its turn offs that lead to the houses on each parcel, as they existed after we bought the property in May 2008 and before the Lytles first disputed our use of the driveway in February 2014.

## D. Easement

6. The photos of the road at Tab J show that the persons living in the house on 1601 Van Zandt County Road 2319 used and drove vehicles on the driveway or roadway on 1603 Van Zandt County 2319 for access to and from the house to the county road. The driveway or roadway was there when my wife and I bought 1601 Van Zandt County Road in May 2008, and it was obvious from the driveway and its wear, tear, and tracks, by then, that the driveway had been heavily used by both properties. For example, the driveway had a separate and well-worn split off leading to the house on 1601 Van Zandt County Road by May 2008. Both properties, 1601 and 1603 Van Zandt County Road 2319, shared one mail-box post at the corner of the driveway and the county road between May 2008 and February 2014.

## E. Title Company

7. On or about April 10, 2008, our title company—Elliott & Waldron Abstract & Title Company of Canton, Texas—wrote us a letter. A true and correct copy of the letter is at Tab F. Schedule B of the accompanying Commitment for Title Insurance "Exceptions from Coverage," states, in part, "In addition to the Exclusion and Conditions and Stipulations, your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from . . . 10. Easements or claims of easements which may or may not be recorded in the public records of Zandt County, Texas." At the time of our purchase I believed that this exclusion from our title policy was standard language. I did not believe that this language referred specifically to the easement set out in the General Warranty Deed with Vendor's Lien from the Gutzkes. Also, I don't believe that the title company was telling us that the easement to use the neighboring driveway was invalid or non-existent. I understood the company to be saying that it just didn't insure easements. Also, no one from the title company told us that the easement identified in the

Affidavit of David C. Petruska               - Page 2

Tab 1

RECORD 25

General Warranty Deed was not valid. In fact, no one at all, including the title company personnel, the bank personnel, the Gutzkes, or anyone else, ever suggested that the easement identified in the General Warranty Deed was not valid. From January 2008 during the times we visited the property to make our purchase decision, we drove our vehicle on the subject driveway to access the property. So did the realtors and others involved in our purchase. No one, including the Lytles, complained about this.

8.      As Exhibit B(1) to Plaintiff's Motion for Summary Judgment on Liability (filed Oct. 29, 2014), the Lytles attached a copy of our title policy for the property. Schedule B (Exceptions) states, in part, "We do not cover loss, costs, attorneys' fees and expenses resulting from: . . . 6(l) We do not insure access via the roadway shown on property owned Lytle adjacent to NW line of property shown on survey dated April 23, 2008 by Gerald A. Carter." I did not receive a copy of the title policy at the time of closing on May 16, 2008. Buyers ordinarily do not receive copies of the title policy at the time of the closing. Closings are predicated on the title commitment. Title companies customarily provide a final title policy four to six weeks after a closing. In fact, I'm not sure when I first saw a copy of my title policy, but it was long after closing. Also, the title company is not stating that the easement shown on the General Warranty Deed with Vendor's Lien (dated May 16, 2008) from the Gutzkes is invalid.

## F.      Independent Survey

9.      In early 2008, my wife and I engaged an independent surveyor, Registered Professional Surveyor No. 1935 Gearld A. Carter, to survey the property we planned to purchase at 1601 Van Zandt County Road 2319 and to confirm the property's boundaries as is customary. After he performed his work, Mr. Carter provided us and the title company with a survey, field notes, and diagrams. True and correct copies of this survey, field notes, and diagrams are at Tab A. Although I am not an expert at reading technical surveys or diagrams, I understand that the documents at Tab A likewise confirm and document this easement. I had this understanding in 2008, as well, when we had our General Warranty Deed with Vendor's Lien and our Deed of Trust recorded in Van Zandt County's public land records.

## G.      We (the Petruskas) bought 1601 Van Zandt County Road 2319.

10.      On April 24, 2008, my wife and I, on the one hand, and the Gutzkes, on the other hand, signed an amendment to the real-estate contract for the property, chiefly to make me (David Petruska) a party-buyer to the contract. A true and correct copy of the amendment is at Tab D. At the time, the title company recommended that the parties obtain documentation of the easement signed by the Lytles. Exhibit A to the amendment stated, "Closing is conditioned upon conveyance of easement acceptable to buyers allowing access to said property from private driveway owned by Ms. Lytle." In April or May 2008, my wife called Thomas Lytle about signing a paper to meet the title company's suggestion. She told me that Thomas Lytle had said that he didn't want to spend money on an attorney to confirm an easement that was clear or obvious that residents of 1601 Van Zandt County Road 2319 had possessed and used for years. I repeat this to help explain my conclusion, discussed below, that we had a valid easement to use the driveway when we bought our property and why we relied on the documentation of the

Affidavit of David C. Petruska                                                    - Page 3

Tab 1

RECORD 26

easement we had and why we didn't obtain further documentation of the easement.

11. On or about May 16, 2008, my wife and I, relying in part, on the representations in the General Warranty Deed as well as the representations of Tom Lytle in his phone conversation with Sandy, purchased the real property consisting of just over 25 acres of land, with a house and other buildings, at 1601 Van Zandt County Road 2319, being described in that General Warranty Deed with Vendor's Lien dated May 16, 2008, from Helmuth Gutzke and Zackiann Gutzke, recorded with Document Number 2008-004602 of the deed records of Van Zandt County, Texas. A true and correct copy of the warranty deed is at Tab C.

12. On May 16, 2008, my wife and I, on the one hand, and the Gutzkes, on the other hand, signed another amendment, which stated, in part, "Seller and Buyer agree to waive the condition of the contract relating to obtaining an easement from Thomas M. or Ellen Lytle." A true and correct copy of this amendment is at Tab E. I believed that we did not need any additional documentation of the easement. First, our general warranty deed (dated May 26, 2008) set out the easement. Second, an independent surveyor confirmed the easement in April 2008. Third, I believed that the Gutzkes had used and driven vehicles on the driveway or roadway for years before May 16, 2008. Fourth, my wife, Sandy, had reported to me that Thomas Lytle had acknowledged the easement in his phone conversation with her.

13. The Gutzkes stated that they owned fee simple title to the property, including the easement, at the time we purchased it. By the terms of the General Warranty Deed, the Gutzkes warranted the title conveyed to us including the easement. In part, the Deed stated, "All that certain lot, tract or parcel of land . . . of the called 5.753 acre first tract and all of the called 20.00 acre second tract . . . together with an Easement for Roadway situated in Van Zandt County, State of Texas, on the M.V. Lout Survey, A-468 and being a part of the called 68.78 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed . . . and part of the called 1.10 acre tract conveyed to Thomas M. Lytle and Ellen Lytle . . . ." The Gutzkes executed and delivered the General Warranty Deed to us pursuant to a purchase agreement and in consideration of the purchase price paid that we paid to the Gutzkes including purchase of the easement. My wife and I have performed or met all of our material obligations under the purchase agreement.

14. On or about May 16, 2008, my wife and I also signed a Deed of Trust, which contained the same property description and easement language as the General Warranty Deed with Vendor's Lien, as part of securing a loan from Compass Bank. A true and correct copy of the Deed of Trust is at Tab B.

15. Between May 16, 2008 and February 2014, my wife and I used and drove on the driveway on the Lytles' property without complaint. Both properties shared a single mail-box post at the corner of the county road and the driveway or roadway. Before February 2014, I gave Thomas Lytle a check for what County Commissioner Virgil Melton told me was one-half of the cost of repairing the culvert and entranceway from the county road to the driveway or roadway, and Lytle cashed the check.

**Affidavit of David C. Petruska** - Page 4

Tab 1

**H.    We had a valid easement on May 16, 2008.**

16.    I have been a licensed attorney in Texas (No. 15853200) since September 1982. I have a solo practice, Petruska & Associates, PLLC. I chiefly practice municipal finance law.

17.    Although I am not a real-estate attorney, it's my opinion that my wife and I had or acquired a valid easement, attached to our property, to use and drive vehicles on the driveway or roadway located on 1603 Van Zandt County Road 2319, on May 16, 2008. First, our general warranty deed (dated May 26, 2008) set out the easement. Second, an independent surveyor confirmed the easement in April 2008. Third, I believed, based on conversations with the Gutzkes, that the Gutzkes had used and driven vehicles on the driveway or roadway for years before May 16, 2008. Fourth, my wife's conversation with Thomas Lytle indicated that Mr. Lytle confirmed the easement. Fifth, the two properties shared one mail-box post at the corner of the driveway and Van Zandt County Road 2319 when we bought the property. Moreover, my belief was confirmed by my and my wife's experience in using and driving vehicles on the driveway between May 2008 and February 2014 without complaint from the Lytles or anyone else. Mr. Lytle's later acceptance and cashing of my check for what I was told by Commissioner Melton was one-half of the cost to replace the culvert and repair the affected part of the driveway also confirmed my belief.

**I.    We committed no fraud.**

18.    Our information as of May 16, 2008, including that set out in paragraph 17, shows that my wife and I did not commit any fraud, including fraud under section 12.002 of the Civil Practice & Remedies Code. We had a valid easement and documentation to support this conclusion. My wife and I did not prepare, or participate in the preparation of, the General Warranty Deed with Vendor's Lien (May 16, 2008), Tab C, from the Gutzkes to us, and the deed described the easement. My wife and I did not prepare, or participate in the preparation of (beyond signing), the Deed of Trust (May 16, 2008), Tab B, for Compass Bank, which contained the same description of the easement.   Given the documentation I had, including the independent survey and the general warranty deed, I did not search the deed records to see what might or might not be reflected in the Lytles' deed or deeds. Moreover, the Gutzkes said that they had used the driveway to access the property and house for years. The Gutzkes said, in the warranty deed, that they had an easement to sell us.  Our surveyor independently confirmed the easement. No one—including persons from our title company, the real-estate agents, Compass Bank, and our surveyor—ever suggested that the easement was invalid or that the General Warranty Deed with Vendor's Lien or the Deed of Trust were fraudulent or contained any materially false information. I never had any intention of causing a fraudulent document to be filed of public record in conjunction with our purchase of 1601 Van Zandt County Road nor were any fraudulent documents filed in conjunction with such purchase. I never used the deeds with an intent to cause anyone, including the Lytle's financial injury or emotional distress.

**J.    I did not assert our rights to the easement with an assault rifle.**

19.    In paragraph 21 of Plaintiff's Motion for Summary Judgment on Liability (filed Oct. 29, 2014), the Lytles wrote, "The Petruskas have taken actions to assert their rights to the

RECORD 28

easement, including coming on to Plaintiffs' property and threatening Plaintiff, Thomas Lytle, with an assault rifle." This is false. I never came on to the Lytles' property with an assault rifle. On February 15, 2014, I had an unloaded assault rifle on my gator and was driving on my own property. I had my rifle because Thomas Lytle had threatened to shoot me and three other workers, while we were working on a fence on our property. I never threatened Thomas Lytle with my rifle. Also, my driving with the rifle in my gator had no connection to the disputed easement. Again, my wife and I drove on the driveway located on the Lytles' property between May 2008 and February 2014 without complaint from the Lytles.

K.  **Moreover, we released the easement before the Lytles filed suit.**

20.  On February 28, 2014, the Lytles' attorney, Emily Jones Dunn, wrote my wife and me a letter and asserted that we didn't have a recorded easement to use the driveway or roadway on the Lytles' property which created a cloud on their title. She offered, "I am requesting that you execute the enclosed release stating that there is no easement. If I do not receive a properly executed release within 30 days from the date of this letter, I am prepared to litigate." A true and correct copy of this letter is at Tab G.

21.  I believed that the attorney was incorrect for several reasons. First, our general warranty deed (dated May 16, 2008) reflected the easement. Second, an independent surveyor confirmed the easement in April 2008. Third, I believed that the residents of 1601 Van Zandt County Road 2319 had used and driven vehicles on the driveway or roadway for many years and my wife and I had used the driveway between May 2008 and February 2014 without complaint. Nonetheless, in an effort to avoid litigation and further problems, my wife and I accepted the Lytles' offer and signed the release of easement and returned it to the Lytles' attorney on March 26, 2014. A true and correct copy of our return letter and the release of easement is at Tab H. I would not have signed the release of easement or returned it, unless the Lytles had agreed, in return, not to sue my wife and me over the easement.

22.  Again, my wife and I fully performed all of our material duties under our contract with the Lytles, under which the Lytles agreed not to sue us over the easement in exchange for a signed release of easement. In contrast, the Lytles materially breached the contract by (a) filing this lawsuit on July 9, 2014, (b) filing a motion for summary judgment on October 29, 2014, and (c) continuing this lawsuit. The Lytles' material breaches have proximately caused, and continue to cause, us damages, including attorney's fees and litigation expenses.

23.  I swear or affirm to these facts within the meaning of section 312.011(1) of the Texas Government Code.

Date:  December 1, 2014.

David C. Petruska

RECORD 29

Before me, _Ann Petizborn_ , on this day personally appeared David C. Petruska, who established his identify with his Texas driver's license, to be the person whose name is subscribed as a witness to the foregoing instrument. David C. Petruska swore to the statements in the above affidavit before me, and I am officially certifying this document under my seal of office under section 312.011(1) of the Texas Government Code. I am a notary public, and Texas law authorizes a notary public to administer an oath and certify the fact of a person making an oath, in section 602.002(5) of the Texas Government Code.


_Ann Tate Petizborn_
Notary Public

ANN TATE PERTZBORN
MY COMMISSION EXPIRES
September 20, 2018

Affidavit of David C. Petruska



- Page 7

RECORD 30

# FIELD NOTES

SANDRA L. PETRUSKA
24.020 ACRES

M. V. LOUT SURVEY
ABSTRACT NO. 468

## VAN ZANDT COUNTY, TEXAS

All that certain lot, tract or parcel of land situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468, and being all of the residue of the called 5.753 acre first tract and all of the called 20.00 acre second tract conveyed to Helmuth K. Gutzke and wife, Zackiann Gutzke, by A. D. Ward, a single man, by Warranty Deed with Vendor's Lien dated July 30, 1990, and recorded in Volume 1207, Page 390, of the Van Zandt County Real Records. Said lot, tract or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a ½" iron rod found for corner at the Southeast corner of the called 20.00 acre second tract, at the Southwest corner of the Arthur C. Werden tract recorded in Volume 2028, Page 309, of the Van Zandt County Real Records, and in the Northeast line of the Thomas M. Lytle 68.78 acre tract recorded in Volume 1771, Page 609, of the Van Zandt County Real Records, from WHENCE a fence corner found bears North 78 degrees 05 minutes 37 seconds West 2.58 feet;

THENCE NORTH 44 degrees 40 minutes 21 seconds West 648.90 feet to a 5/8" iron rod set for corner at the South corner of the Thomas M. Lytle 1.622 acre tract recorded in Volume 2188, Page 463, of the Van Zandt County Real Records;

THENCE NORTH 43 degrees 59 minutes 44 seconds East 105.86 feet to a ½" iron rod found for corner at the East corner of the said 1.622 acre tract;

THENCE NORTH 45 degrees 25 minutes 00 seconds West 668.07 feet to a ½" iron rod found for corner at the North corner of the called 1.622 acre tract, in the original Northwest line of the called 5.753 acre first tract, and in the Southeast line of the Thomas M. Lytle 1.10 acre tract recorded in Volume 1771, Page 629, of the Van Zandt County Real Records;

THENCE NORTH 44 degrees 05 minutes 12 seconds East 1152.76 feet to a railroad spike set for corner in County Road No. 2319, at the North corner of the called 20.00 acre second tract, from WHENCE a 60d nail found at the East corner of the said Thomas M. Lytle 1.10 acre tract bears North 44 degrees 05 minutes 12 seconds East 2.65 feet and a ½" iron rod found in the South right of way of the said county road bears South 38 degrees 58 minutes 47 seconds West 23.09 feet;

THENCE SOUTH 81 degrees 39 minutes 33 seconds East along the said county road and the North line of the called 20.00 acre second tract, 322.19 feet to a railroad spike set for corner in the South line of the B. W. Ward 106.60 acre first tract recorded in Volume 1654, Page 588, of the Van Zandt County Real Records, at the Northwest corner of the said Arthur C. Werden tract and at the Northeast corner of the called 20.00 acre second tract, from WHENCE a 5/8" iron rod set in the South right of way line of the said county road bears South 08 degrees 20 minutes 49 seconds West 19.00 feet and a 48" Pecan tree found marked X with two hacks above and below the X bears North 62 degrees 57 minutes East 60.40 feet;

THENCE SOUTH 08 degrees 20 minutes 49 seconds West along the East line of the called 20.00 acre second tract and the West line of the said Arthur C. Werden tract 1806.98 feet to the place of beginning and containing 24.020 acres of land.

Tab A

RECORD 31

## SURVEYOR'S CERTIFICATE

I, Gearld A. Carter, Registered Professional Land Surveyor No. 1935, do hereby certify that I directed the survey of the above described tract of land and prepared the above field notes describing the boundaries of same just as they were found and surveyed upon the ground, and this survey is made in accordance with the STANDARDS FOR LAND SURVEYS of the TEXAS BOARD OF PROFESSIONAL LAND SURVEYING, as revised in November, 2007, and will meet the accuracy requirements as set out in RULE 663.15C as defined therein.

WITNESS my hand and seal at Athens, Texas, this 29th Day of April, A.D. 2008.

GEARLD A. CARTER
REGISTERED PROFESSIONAL LAND
SURVEYOR NO. 1935

Tab A

RECORD 32



24.020 ACRES
ACTUAL BEARING AND DISTANCE

| NUMBER | DIRECTION | DISTANCE | CALLS |
|---|---|---|---|
| 1 | N 44°40'21" W | 648.90' | BRG. N45°03'W |
| 2 | N 43°59'44" E | 105.86' | N46°49'34"E 105.78' |
| 3 | N 45°25'00" W | 668.07' | N42°39'17"W 668.07' |
| 4 | N 44°05'12" E | 1152.76' | BRG. N44°34'E |
| 5 | S 81°39'33" E | 322.19' | S81°16'E 319.61' |
| 6 | S 08°20'49" W | 1806.98' | S08°44'W 1804.58' |

0.448 ACRE EASEMENT
ACTUAL BEARING AND DISTANCE

| NUMBER | DIRECTION | DISTANCE | CALLS |
|---|---|---|---|
| 7 | S 84°55'25" E | 21.41' | S82°08'20"E 21.37' |
| 8 | S 85°03'04" E | 14.94' | S82°08'20"E 14.92' |
| 9 | S 44°05'12" W | 674.24' | BRG. S44°34'W |
| 10 | N 45°54'48" W | 30.71' | |
| 11 | N 44°18'18" E | 651.34' | BRG. N47°05'23"E |

Tab A

COV. CONC. PORCH
COV. CONC. WALK
CONC. DR.
UGR. EL.
1-STRY. BRK. HSE.
52.4'
23.2'
45.3'
6'
AC
22.2'
AC
18.7'
27.3'
COV. CONC. CARPORT
BRK. HSE
COV. CONC. WALK
CONC. PORCH
BRICK PATIO
HOT TUB
46.3'
COV. CONC. PORCH

INSET SCALE 1' = 40'

Scale: 1" = 200'

SET RR. SPK.
WIT. 60DNLF. N44°05'12"E 2.65'
WIT. 1/2"IRF. S38°58'47"W 23.09'

FLETCHER TURNER 42.25 AC
2ND TR. VOL. 303 PG. 478
V.Z.C.D.R.
60DNL'SFD.

B.W. WARD 106.60 AC 1ST TR.
VOL. 1654 PG. 588 V.Z.C.R.R.
C CO. RD. NO. 2319

SET RR. SPK.
WIT. 5/8"IRS.
S08°20'49"W 19.00'
FD. MKD. X 48" PECAN
N62°57'E 60.40'

FLETCHER TURNER 2ND TR. VOL. 303 PG. 478 V.Z.C.D.R.

J. B. BODEN SUR. A-36
THOMAS M. LYTLE 50.00 AC 1ST TR. VOL. 303 PG. 478 V.Z.C.R.R.
THOMAS M. LYTLE 68.78 AC VOL. 1771 PG. 609 V.Z.C.R.R.
WHITE ROCK DRIVE
THOMAS M. LYTLE 1.10 AC VOL. 1771 PG. 629 V.Z.C.R.R.
5/8"IR. SS
TIN BARN

0.448 AC ACCESS
C ROCK DR.

PP ESMT.
DG

ARTHUR C. WERDEN VI

ACT. TOTAL 24.020 ACRES
CALL TOTAL 24.131 ACRES

1-STRY. BRK. HSE.
SEE INSET

**RECORD 33**

VAN ZANDT COUNTY CLERK DISTRICT COURT TEXAS CERTIFIED COPY



CALL 20.00 AC
2ND TR. 1207/390
V.Z.C.R.R.

M.V. LOUT SUR. A-468

## PLAT OF SURVEY

LEGAL DESCRIPTION OF LAND: All that certain lot, tract or parcel of land situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468, and being all of the residue of the called 5.753 acre first tract and all of the called 20.00 acre second tract conveyed to Helmuth K. Gutzke and wife, Zacklann Gutzke, by A. D. Ward, a single man, by Warranty Deed with Vendor's Lien dated July 30, 1990, and recorded in Volume 1207, Page 390, of the Van Zandt County Real Records and all that certain lot, tract or parcel of land situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468, and being a part of the called 68.78 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 609, of the Van Zandt County Real Records, and a part of the called 1.10 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 629, of the Van Zandt County Real Records. Said lot, tract or parcel of land being more particularly described by metes and bounds attached hereto:

PROPERTY ADDRESS
1601 VZCR 2319
CANTON, TEXAS 75103

I, Gearld A. Carter, Registered Professional Land Surveyor No. 1935, do hereby certify to Sandra L. Petruska, buyer, Loansource Real Estate Loans, lender and Elliott and Waldron Title Company, that the plat shown hereon accurately represents the results of an on the ground survey made under my direction and supervision on April 23, 2008, and all monuments were found or set and actually exist and the location and description are correctly shown, the boundaries, dimensions and other details shown hereon are true and correct as determined by survey, there are no visible encroachments on the property or protrusions therefrom, except as shown hereon, there are no visible discrepancies, conflicts, shortages in areas or boundary line conflicts, except as shown hereon, the size, location and type of improvements are as shown hereon and all are located within the boundaries of the property, except as shown hereon, and this survey is made in accordance with THE STANDARDS FOR LAND SURVEYS of the TEXAS BOARD OF PROFESSIONAL LAND SURVEYING as revised in November 2007, and will meet the accuracy requirements as set out in RULE 663.15C, as defined therein.

Gearld A. Carter, REGISTERED PROFESSIONAL LAND SURVEYOR NO.1935

SURVEY FOR: SANDRA L. PETRUSKA          M. V. LOUT SURVEY, A-468
GF#080258                               VAN ZANDT COUNTY, TEXAS

GEARLD A. CARTER AND ASSOCIATES, LAND SURVEYORS
P.O. BOX 1445,
ATHENS, TEXAS 75751
903-675-7346

Tab A

CERTIFIED COPY

**RECORD 34**

After recording please mail to:

Compass Bank
401 West Valley Avenue
Homewood, AL 35209
Marie Yamane

_____ [Space Above This Line For Recording Data] _____

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# DEED OF TRUST

Loan # *private*

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)   "Security Instrument" means this document, which is dated **May 16, 2008**, together with all Riders to this document.

(B)   "Borrower" is David C. Petruska and wife, Sandra L. Petruska. Borrower is the grantor under this Security Instrument.

(C)   "Lender" is Compass Bank . Lender is a **state bank** organized and existing under the laws of **Alabama**. Lender's address is **PO Box 13345 Birmingham, AL 35202**. Lender is the beneficiary under this Security Instrument.

(D)   "Trustee" is **Jon Mulkin** . Trustee's address is **401 West Valley Avenue, Homewood, AL 35209**.

(E)   "Note" means the promissory note signed by Borrower and dated **May 16, 2008**. The Note states that Borrower owes Lender **Two Hundred Seventy Four Thousand Five Hundred and 00/100** Dollars (U.S. **$274,500.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 1, 2038**.

(F)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)   "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

Form 3044 01/01
14001TX 08/00
©2006, The Compliance Source, Inc.
[Doc Id 6616 Rev. ...

1

Tab B

RECORD 35

Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Rate Improvement Rider | ☐ Graduated Payment Rider |
| ☐ VA Loan Rider | ☐ Manufactured Home Rider | ☒ Other(s): ARM, Interest Only |

(I)    **"Applicable Law"**  means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)    **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)    **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)    **"Escrow Items"** means those items that are described in Section 3.

(M)    **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)    **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)    **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)    **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. '2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)    **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security

---

**Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

2

Form 3044 01/01
14001TX 08/00
©2006, The Compliance Source, Inc.
[Doc Id 6618 Rev 03.20.06]

Tab B

RECORD 36

Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** [Type of Recording Jurisdiction] of **Van Zandt** [Name of Recording Jurisdiction]:

All that certain lot, tract or parcel of land situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468, and being all of the residue of the called 5.753 acre first tract and all of the called 20.00 acre second tract conveyed to Helmuth K. Gutzke and wife, Zackiann Gutzke, by A. D. Ward, a single man, by Warranty Deed with Vendor's Lien dated July 30, 1990, and recorded in Volume 1207 Page 390, of the Van Zandt County Real Records, together with an Easement for Roadway situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468 and being a part of the called 68.78 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 609, of the Van Zandt County Real Records and a part of the called 1.10 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 629, of the Van Zandt County Real Records and said lot, tract and parcel of land being more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof.

which currently has the address of

1601 VZ County Road 2319
Canton, Texas 75103
["Property Address"]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 01/01

©2008, The Compliance Source, Inc.

3

Tab B

RECORD 37

is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.**    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.**    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality,

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

4

Tab B



CERTIFIED COPY

**RECORD 38**

or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

5

Tab B

RECORD 39

and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

Form 3044 01/01
14001TX 08/00
©2006, The Compliance Source, Inc.
1Doc Id 4615 Rev 03/28/07

6

Tab B



CERTIFIED COPY

**RECORD 40**

Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage



CERTIFIED COPY

RECORD 41

Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3044 01/01
14001TX 06/00
©2006 The Compliance Source, Inc.
Doc Id 6616 Rev 03.20.08

8

Tab B

CERTIFIED COPY

RECORD 42

fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

9

Form 3044 01/01

©2006, The Compl...

Tab B

CERTIFIED COPY

RECORD 43

prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.    **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.    **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.    **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18.    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.    **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions,

---

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

Form 3044 01/01
14001TX 08/00
©2006, The Compliance Source, Inc.

10

Tab B

CERTIFIED COPY

**RECORD 44**

Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor





RECORD 45

CERTIFIED COPY

allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.      Acceleration; Remedies.   Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

Form 3044 01/01
©2006, The Compliance Source

12

Tab B





CERTIFIED COPY
THE STATE OF TEXAS
RECORD 46

removed by writ of possession or other court proceeding.

     23.    **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

     24.    **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

     25.    **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

     26.    **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

     27.    **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[X]    **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐    **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐    **Renewal and Extension of Liens Against Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐    **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

13

Tab B



CERTIFIED COPY



**RECORD 47**

28.    **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  5/16/08        _____  05/16/08
Signature                Date            Signature               Date
**David C. Petruska**                    **Sandra L. Petruska**

*[Sign Originals Only]*

STATE OF TEXAS
COUNTY OF _____Van Zandt_____

The foregoing instrument was acknowledged before me this 16th day of May, 2008 by David C. Petruska and Sandra L. Petruska

_____
Notary Public
Printed Name: Pamala Neal
My commission expires: 2-15-10



PAMALA NEAL
Notary Public, State of Texas
My Comm. Expires Feb. 15, 2010

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

14

Tab B

Form 3044 01/01
©2006, The Compliance Source, Inc.
[Doc Id 0616 Rev. 05-28-08]





CERTIFIED COPY

RECORD 48

Document No. 2008-004602

# GENERAL WARRANTY DEED WITH VENDOR'S LIEN

Parties:     GUTZKE HELMUTH K ET UX

                 to

             PETRUSKA DAVID C ET UX

FILED AND RECORDED
REAL RECORDS

On: 05/20/2008 at 03:01 PM

Document Number:     2008-004602
Receipt No.:     20086954
Amount: $ 24.00

By: esmith
Charlotte Bledsoe, County Clerk
Van Zandt County, Texas

4 Pages

**\*\*\*DO NOT REMOVE THIS PAGE – IT IS A PART OF THIS INSTRUMENT\*\*\***



STATE OF TEXAS
COUNTY OF VAN ZANDT
     I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded under the Document Number stamped hereon of the Official Public Records of Van Zandt County

Charlotte Bledsoe, County Clerk

Record and Return To:

DAVID C. PETRUSKA
11264 RUSSWOOD CIRCLE

DALLAS, TX 75229

Tab C



RECORD 49

080258 PN

AFTER RECORDING RETURN TO:
David C. Petruska
11264 Russwood Circle
Dallas, TX 75229

——————————— [Space Above This Line For Recording Data] ———————————

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## General Warranty Deed with Vendor's Lien

Date:    Executed on the date set forth in the acknowledgement herein, but to be effective the **Sixteenth** day of **May, 2008.**

Grantor:    **Helmuth K. Gutzke and wife, Zackiann Gutzke**

Grantor's Mailing Address: *1632 Pineview Ln.*
*Hideaway TX 75771*

Grantee:    **David C. Petruska and wife, Sandra L. Petruska**

Grantee's Mailing Address:    **11264 Russwood Circle**
**Dallas, TX 75229**

Consideration:

Ten Dollars ($10.00) and other good and valuable consideration paid to Grantor by Grantee and a note of even date in the principal amount of Two Hundred Seventy Four Thousand Five Hundred and 00/100 Dollars — ($274,500.00) made by Grantee payable to the order of Compass Bank , "Lender" herein, as consideration for the amount paid to Grantor. The note is secured by a vendor's lien retained in favor of Lender in this deed and by a deed of trust of even date from Grantee to Jon Mulkin , Trustee.

Property (including any improvements):

All that certain lot, tract or parcel of land situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468, and being all of the residue of the called 5.753 acre first tract and all of the called 20.00 acre second tract conveyed to Helmuth K. Gutzke and wife, Zackiann Gutzke, by A. D. Ward, a single man, by Warranty Deed with Vendor's Lien dated July 30, 1990, and recorded in Volume 1207 Page 390, of the Van Zandt County Real Records, together with an Easement for Roadway situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468 and being a part of the called 68.78 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 609, of the Van Zandt County Real Records and a part of the called 1.10 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 629, of the Van Zandt County Real Records and said lot, tract and parcel of land being more particularly described

General Warranty Deed with Vendor's Lien

1

©PeirsonPatterson, LLP.-Arlington, Texas 2004-2005
Doc Id 3479 Rev. 09-21-05

Tab C

**RECORD 50**

by metes and bounds in Exhibit "A" attached hereto and made a part hereof.

The above described property also includes any and all of Grantor's right, title, and/or interest in any and all system memberships and/or ownership certificates in any non-municipal water and/or sewer systems now or in the future serving said property.

Reservations from and Exceptions to Conveyance and Warranty:
This conveyance is given and accepted subject to any and all restrictions, reservations, covenants, conditions, rights of way, easements, municipal or other governmental zoning laws, regulations and ordinances, if any, affecting the herein described property.

Grantee herein assumes the taxes for the current year.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty. The vendor's lien (to the extent of the consideration paid by Grantee to Grantor) against and superior title to the property are retained until each note described is fully paid according to its terms, at which time this deed shall become absolute. The vendor's lien and superior title retained in this deed are transferred to Lender, without recourse on Grantor. When the context requires, singular nouns and pronouns include the plural. When executed by a corporation the words "heirs and assigns" shall be construed to mean "Successors and assigns".

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Signature _____ Date
**Helmuth K. Gutzke**

Signature _____ Date
**Zackiann Gutzke**

[Sign Originals Only]

STATE OF TEXAS
COUNTY OF _____Van Zandt_____

The foregoing instrument was acknowledged before me this _16th_ day of _May_, 2008 by Helmuth K. Gutzke and Zackiann Gutzke

Notary Public
Printed Name: _Pamala Neal_
My commission expires: _2-15-10_

PAMALA NEAL
Notary Public, State of Texas
My Comm. Expires Feb. 15, 2010

General Warranty Deed with Vendor's Lien

2

©PeirsonPatterson, LLP.-Arlington, Texas 2004-2005
Doc. Id 3479 Rev. 09.21.05

Return to:

Tab C

CERTIFIED COPY

RECORD 51

Exhibit "A"

All that certain lot, tract or parcel of land situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468, and being all of the residue of the called 5.753 acre first tract and all of the called 20.00 acre second tract conveyed to Helmuth K. Gutzke and wife, Zackiann Gutzke, by A. D. Ward, a single man, by Warranty Deed with Vendor's Lien dated July 30, 1990, and recorded in Volume 1207, Page 390, of the Van Zandt County Real Records. Said lot, tract or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a ½" iron rod found for corner at the Southeast corner of the called 20.00 acre second tract, at the Southwest corner of the Arthur C. Werden tract recorded in Volume 2028, Page 309, of the Van Zandt County Real Records, and in the Northeast line of the Thomas M. Lytle 68.78 acre tract recorded in Volume 1771, Page 609, of the Van Zandt County Real Records, from WHENCE a fence corner found bears North 78 degrees 05 minutes 37 seconds West 2.58 feet;

THENCE NORTH 44 degrees 40 minutes 21 seconds West 648.90 feet to a 5/8" iron rod set for corner at the South corner of the Thomas M. Lytle 1.622 acre tract recorded in Volume 2188, Page 463, of the Van Zandt County Real Records;

THENCE NORTH 43 degrees 59 minutes 44 seconds East 105.86 feet to a ½" iron rod found for corner at the East corner of the said 1.622 acre tract;

THENCE NORTH 45 degrees 25 minutes 00 seconds West 668.07 feet to a ½" iron rod found for corner at the North corner of the called 1.622 acre tract, in the original Northwest line of the called 5.753 acre first tract, and in the Southeast line of the Thomas M. Lytle 1.10 acre tract recorded in Volume 1771, Page 629, of the Van Zandt County Real Records;

THENCE NORTH 44 degrees 05 minutes 12 seconds East 1152.76 feet to a railroad spike set for corner in County Road No. 23 19, at the North corner of the called 20.00 acre second tract, from WHENCE a 60d nail found at the East corner of the said Thomas M. Lytle 1.10 acre tract bears North 44 degrees 05 minutes 12 seconds East 2.65 feet and a ½" iron rod found in the South right of way of the said county road bears South 38 degrees 58 minutes 47 seconds West 23.09 feet;

THENCE SOUTH 81 degrees 39 minutes 33 seconds East along the said county road and the North line of the called 20.00 acre second tract, 322.19 feet to a railroad spike set for corner in the South line of the B. W. Ward 106.60 acre first tract recorded in Volume 1654, Page 588, of the Van Zandt County Real Records, at the Northwest corner of the said Arthur C. Werden tract and at the Northeast corner of the called 20.00 acre second tract, from WHENCE a 5/8" iron rod set in the South right of way line of the said county road bears South 08 degrees 20 minutes 49 seconds West 19.00 feet and a 48" Pecan tree found marked X with two hacks above and below the X bears North 62 degrees 57 minutes East 60.40 feet;

THENCE SOUTH 08 degrees 20 minutes 49 seconds West along the East line of the called 20.00 acre second tract and the West line of the said Arthur C. Werden tract 1806.98 feet to the place of beginning and containing 24.020 acres of land.

Tab C

RECORD 52



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)          08-03-04

# AMENDMENT
## TO CONTRACT CONCERNING THE PROPERTY AT

__1601 VZCR___ Canton Tx__
(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box)

☐(1) The Sales Price in Paragraph 3 of the contract is:
   A. Cash portion of Sales Price payable by Buyer at closing ........................ $_____
   B. Sum of financing described in the contract ...................................... $_____
   C. Sales Price (Sum of A and B) .................................................. $ 325,000.00

☒(2) In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments:

   _See Exhibit A_

☐(3) The date in Paragraph 9 of the contract is changed to _____, 20____

☐(4) The amount in Paragraph 12A(1)(b) of the contract is changed to $_____.

☐(5) The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $_____ by Seller; $_____ by Buyer.

☐(6) Buyer has paid Seller an additional non-refundable Option Fee of $_____ for an extension of the unrestricted right to terminate the contract on or before _____, 20____. This additional Option Fee ☐ will ☐ will not be credited to the Sales Price.

☒(7) Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.

☐(8) The date for Buyer to give written notice to Seller that Buyer cannot obtain financing approval as set forth in the Third Party Financing Condition Addendum is changed to _____, 20____.

☒(9) Other Modifications: (Insert only factual statements and business details applicable to this sale.)
   A. _Seller to pay $2000.00 toward Buyer's closing costs._
   B. _David C. Petula to be added to contract as Buyer._
   C. _Leak in water tank or connected toilet to be repaired_

EXECUTED the __24th__ day of __April__, 20 08 (BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE).

_D.C. Petula_                          _____
Buyer                                   Seller

_____                       _____
Buyer                                   Seller

(This form was approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this contract form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544 (http://www.trec.state.tx.us) TREC No. OP-M.)

Tab D



CERTIFIED COPY

**RECORD 53**

## Exhibit "A"

Closing is conditioned upon conveyance of easement acceptable to buyers allowing access to said property from private driveway owned by Mr. Lytle.

If acceptable easement is not granted, earnest money is to be fully refunded without penalty to the buyer. The cost of the easement, which is to be conveyed to seller, buyer, and their assigns, is to be paid for by the seller.

April 24, 2008.



CERTIFIED COPY — CLERK DISTRICT COURT — THE STATE OF TEXAS

RECORD 54

## AMENDMENT
### TO CONTRACT CONCERNING THE PROPERTY AT

1601 VZ CR 2319    Canton, Tx.    75103
(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box)

☐(1) The Sales Price in Paragraph 3 of the contract is:
   A. Cash portion of Sales Price payable by Buyer at closing ...........................$_____
   B. Sum of financing described in the contract............................................$_____
   C. Sales Price (Sum of A and B) ...........................................................$_____

☐(2) In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments:

☐(3) The date in Paragraph 9 of the contract is changed to _____, 20____.

☐(4) The amount in Paragraph 12A(1)(b) of the contract is changed to $ _____.

☐(5) The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $ _____ by Seller; $ _____ by Buyer.

☐(6) Buyer has paid Seller an additional Option Fee of $ _____ for an extension of the unrestricted right to terminate the contract on or before _____, 20____. This additional Option Fee ☐ will ☐ will not be credited to the Sales Price.

☐(7) Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.

☐(8) The date for Buyer to give written notice to Seller that Buyer cannot obtain Financing Approval as set forth in the Third Party Financing Condition Addendum is changed to _____, 20____.

☒(9) Other Modifications: (Insert only factual statements and business details applicable to this sale.)

A. SELLER and BUYER AGREE TO WAIVE the condition of the CONTRACT RELATING TO OBTAINING AN EASEMENT FROM THOMAS M and ELLEN LYTLE.

B. SELLER and BUYER agree to NOT DISCLOSE SALES PRICE IN MLS.

EXECUTED the 16th day of May, 20 08. (BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

Buyer _____

Buyer _____

Seller _____

Seller _____

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transaction. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544 (http://www.trec.state.tx.us) TREC No. 39-6. This form replaces TREC No. 39-5.

Tab E

RECORD 55

# ELLIOTT & WALDRON ABSTRACT & TITLE COMPANY
## OF CANTON, TEXAS

OWNED BY
A.A.A. ABSTRACT COMPANIES, INC.
681 W. DALLAS, P.O. BOX 760
CANTON, TEXAS 75103

TELEPHONE (903) 567-4127
FAX (903) 567-1757

April 10, 2008

Briggs Freeman
Attn: Doug Shelton
5600 W. Lovers, Ste. 225
Dallas, Texas 75209

RE: GF# 080258
Buyer: David and Sandra Petruska / Seller: Helmuth and Zackiann Gutzke

Dear Mr. Shelton:

Enclosed are the following:

> [X] **Commitment**
> [X] **Privacy Policy Notice**

Please carefully review the requirements on Schedule C of the Commitment. We can not close or issue a policy until all requirements have been met.

Your file will be professionally handled in our office by Pamala Neal, Closer.

We look forward to working with you. If you have any questions at this time, please do not hesitate to call.

Sincerely,

**ELLIOTT & WALDRON ABSTRACT
& TITLE COMPANY OF CANTON**

Lisa Overton
Examiner

LO/cw

Tab F



CERTIFIED COPY

RECORD 56

# COMMITMENT FOR TITLE INSURANCE

## SCHEDULE A

Effective Date: **April 9, 2008, 7:00 am**                                    G.F. No. or File No. **080258**

Commitment No. _____ issued: **April 10, 2008, 7:00 am**
(if applicable)

1.      The policy or policies to be issued are:

   (a)      OWNER POLICY OF TITLE INSURANCE (Form T-1)
            (Not applicable for improved one-to-four family residential real estate)
            Policy Amount:
            PROPOSED INSURED:

   (b)      TEXAS RESIDENTIAL OWNER POLICY OF TITLE INSURANCE -
            ONE-TO-FOUR FAMILY RESIDENCES (Form T-1R)
            Policy Amount:               **$305,000.00**
            PROPOSED INSURED:     **David C. Petruska and Sandra L. Petruska**

   (c)      MORTGAGEE POLICY OF TITLE INSURANCE (Form T-2)
            Policy Amount:               **$274,500.00**
            PROPOSED INSURED:     **To Be Determined**
            Proposed Borrower:        **David C. Petruska and Sandra L. Petruska**

   (d)      TEXAS SHORT FORM RESIDENTIAL MORTGAGEE POLICY OF TITLE INSURANCE (Form T-2R)
            Policy Amount:
            PROPOSED INSURED:
            Proposed Borrower:

   (e)      MORTGAGEE TITLE POLICY BINDER ON INTERIM CONSTRUCTION LOAN (Form T-13)
            Binder Amount:
            PROPOSED INSURED:
            Proposed Borrower:

   (f)      OTHER
            Policy Amount:
            PROPOSED INSURED:

2.      The interest in the land covered by this Commitment is:  Fee Simple Estate

3.      Record title to the land on the Effective Date appears to be vested in:
        **Helmuth K. Gutzke and wife, Zackiann Gutzke**

4.      Legal description of the land:
        **22 ACRES, MORE OR LESS, TO BE SURVEYED OUT OF THE FOLLOWING:**

### FIRST TRACT:

All that certain lot, tract or parcel of land situated in Van Zandt County, Texas, on the M. V. LOUT SURVEY, A-468, and being a part of the 91.65 acre tract conveyed to Clota Mae Shelton by Bettie Joan Westberry by deed recorded in Volume 720, Page 453, of the Van Zandt County Deed Records. Said lot, tract or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at an iron pin in the Southwest line of the 91.65 acre tract, South 45 degrees 03 minutes East 30.00 feet from the West corner of same and being the South corner of the Second Tract recorded in Volume 695, page 159, of the Van Zandt County Deed Records;

THENCE North 44 degrees 34 minutes East 831.10 feet to an iron pin at the West Northwest corner of a 20.00 acre tract surveyed this date in the Southeast line of the Second Tract; WITNESS: 16' Post Oak North 20 degrees East 76.3 feet, 18" Post Oak North 40 degrees West 30.9 feet;

THENCE South 8 degrees 44 minutes West 1030.23 feet to an iron pin at the Southwest corner of the 20 acre tract in the southwest line of the 91.65 acre tract;

Old Republic National Title Insurance Company

Tab F

RECORD 57

# WARNING!     WARNING!

## *DO NOT USE LEGAL DESCRIPTION ON TITLE COMMITMENT FOR YOUR DOCUMENTS IF A NEW SURVEY HAS BEEN REQUIRED!!!*

*THIS TITLE COMMITMENT HAS BEEN PREPARED WITHOUT RECEIPT OF NEW SURVEY.*

*THIS LEGAL DESCRIPTION WILL NOT MATCH THE NEW SURVEY.*

*UPON RECEIPT OF NEW SURVEY, TITLE COMMITMENT WILL BE AMENDED.*

*WE WILL NOT BE RESPONSIBLE FOR DOCUMENTS DRAWN USING THIS LEGAL DESCRIPTION!!!*

*IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT OUR OFFICE.*

Tab F



**RECORD 58**

Continuation of Schedule A         G.F. No. 080258

THENCE North 45 degrees 03 minutes West 603.14 feet to the place of beginning and containing 5.753 acres of land.

Being Tract One in Warranty Deed with Vendor's Lien dated July 30, 1990 from A. D. Ward, a single man to Helmuth K. Gutzke and wife, Zacklann Gutzke, recorded in Volume 1207, Page 393, Real Records of Van Zandt County, Texas.

### LESS AND EXCEPT:

BEING a 1.622 acre tract and being all that certain lot, tractor parcel of land situated in the M.V. Lout Survey, Abstract No. 468, Van Zandt County, Texas, and being part of a called 5.753 acre tract and part of a called 20.00 acre tract described as First Tract and Second Tract, respectively in a deed from A.D. Ward to Helmuth K. Gutzke and wife, Zacklann Gutzke as recorded in Volume 1207, Page 390, Van Zandt County Real Records, and being more particularly described as follows:

BEGINNING at a 1/2 inch iron rod found at the west corner of said 5.753 acre tract and at an inside corner of a called 1.10 acre tract described in a deed to Lytle as recorded in Volume 1771, Page 629, V.Z.C.R.R., for a corner;

THENCE N 46°49'34" E the northwest line of said 5.753 acre tract and an East line of said 1.10 acre tract a distance of 105.78 feet to a 1/2 inch iron rod set for a corner;

THENCE S 42°39'17" E across said 5.753 and into said 20.00 acre tract a distance of 668.07 feet to a 1/2 inch iron rod set for a corner;

THENCE S 46°49'34" W a distance of 105.78 feet to a 1/2 inch iron rod set on the southwest line of said 20.00 acre tract for a corner, said point being on the northeast line of a called 35.02 acre tract described as Tract Two in a deed to Hadley as recorded in Volume 1583, Page 192, V.ZC.R.R.;

THENCE N 42°39'17" W along the southwest line of said 20.00 acre tract and said 5.753 acre tract and the northeast line of said 35.02 acre tract and an east line of said 1.10 acre tract passing the west corner of said 20.00 acre tract and the south corner of said 5.753 acre tract at a distance of 64.16 feet and passing a 1/2 inch iron rod found at the east corner of said 1.10 acre tract at a distance of 357.98 feet and continuing a total distance of 668.07 feet to the POINT OF BEGINNING and containing 1.622 acres of land.

Being the same land in General Warranty Deed dated October 27, 2006 from Helmuth Gutzke and Zacklann Gutzke to Thomas M. Lytle and Ellen G. Lytle, recorded in Volume 2188, Page 463, Real Records of Van Zandt County, Texas.

### SECOND TRACT:

All that certain lot, tract or parcel of land situated in Van Zandt County, Texas, on the H. V. LOUT SURVEY, A-468, and being a part of the 91.65 acre tract conveyed to Clota Mae Shelton by Bettie Joan Westberry by deed recorded in Volume 720, Page 453 of the Van Zandt County Deed Records. Said lot, tract or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a point in the North line of the 91.65 acre tract in the middle of a county road, North 81 degrees 16 minutes West 788.75 feet from the Northeast corner of same and at the Northwest corner of a 20.00 acre tract surveyed this date; WITNESS:     Iron pin in fence, South 8 degrees 44 minutes West 19.00 feet, 26" Pecan North 62 degrees 57 minutes East 60.40 feet;

Old Republic National Title Insurance Company

Tab F



RECORD 59

THENCE South 8 degrees 44 minutes West 1804.58 feet to an iron pin in the Southwest line of the 91.65 acre tract at the Southwest corner of the 20 acre tract;

THENCE North 45 degrees 03 minutes West 712.47 feet to an iron pin in the Southwest line of the 91.65 acre tract at the South corner of a 5.753 acre tract surveyed this date;

THENCE North 8 degrees 44 minutes East 1030.23 feet to an iron pin in the Southeast line of the Tract No. 2 recorded in Volume 695, page 159; WITNESS: 16" Post Oak North 20 degrees East 76.3 feet, 18" Post Oak North 40 degrees West 30.9 feet;

THENCE North 44 degrees 34 minutes East 435.90 feet to an iron pin at the Northeast corner of the Second tract in the North line of the 91.65 acre tract; WITNESS: Iron pin for corner, South 44 degrees 34 minutes West 24.5 feet;

THENCE South 81 degrees 16 minutes East 319.61 feet to the place of beginning and containing 20.00 acres of land of which 0.146 acres lies within a county road, leaving a net of 19.854 acres.

Being Tract Two in Warranty Deed with Vendor's Lien dated July 30, 1990 from A. D. Ward, a single man to Helmuth K. Gutzke and wife, Zackiann Gutzke, recorded in Volume 1207, Page 393, Real Records of Van Zandt County, Texas.

NOTE: The Company is prohibited from insuring the area or quantity of the land described herein. Any statement in the above legal description of the area or quantity of land is not a representation that such area or quantity is correct, but is made only for informational and/or identification purposes and does not override Item 2 of Schedule B hereof.

Old Republic National Title Insurance Company

Tab F





RECORD 60

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE B

### EXCEPTIONS FROM COVERAGE

In addition to the Exclusions and Conditions and Stipulations, your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from:

1. ~~The following restrictive covenants of record itemized below (We must either insert specific recording data or delete this exception):~~

2. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

3. Homestead or community property or survivorship rights, if any, of any spouse of any insured. (Applies to the Owner Policy only).

4. Any titles or rights asserted by anyone, including, but not limited to, persons, the public, corporations, governments or other entities,

    a. to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or

    b. to lands beyond the line of harbor or bulkhead lines as established or changed by any government, or

    c. to filled-in lands, or artificial islands, or

    d. to statutory water rights, including riparian rights, or

    e. to the area extending from the line of mean low tide to the line of vegetation, or the rights of access to that area or easement along and across that area.

    (Applies to the Owner Policy only.)

5. Standby fees, taxes and assessments by any taxing authority for the year 2008, and subsequent years; and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, *Texas Tax Code*, or because of improvements not assessed for a previous tax year. (If Texas Short Form Residential Mortgagee Policy (T-2R) is issued, that policy will substitute "which become due and payable subsequent to Date of Policy" in lieu of "for the year _____ and subsequent years.")

6. The terms and conditions of the documents creating your interest in the land.

7. Materials furnished or labor performed in connection with planned construction before signing and delivering the lien document described in Schedule A, if the land is part of the homestead of the owner. (Applies to the Mortgagee Title Policy Binder on Interim Construction Loan only, and may be deleted if satisfactory evidence is furnished to us before a binder is issued.)

8. Liens and leases that affect the title to the land, but that are subordinate to the lien of the insured mortgage. (Applies to Mortgagee Policy (T-2) only.)

9. The Exceptions from Coverage and Express Insurance in Schedule B of the Texas Short Form Residential Mortgagee Policy (T-2R). (Applies to Texas Short Form Residential Mortgagee Policy (T-2R) only. Separate exceptions 1 through 8 of this Schedule B do not apply to the Texas Short Form Residential Mortgagee Policy (T-2R).

Old Republic National Title Insurance Company

Tab F



RECORD 61

10. The following matters and all terms of the documents creating or offering evidence of the matters (We must insert matters or delete this exception.):



a. Easements or claims of easements which may or may not be recorded in the public records of Van Zandt, County, Texas.

b. Any portion of subject property lying within the boundaries of a public or private roadway whether dedicated or not.

c. There is expressly excluded from coverage hereunder, and this company does not insure title to oil, gas and other minerals of every kind and character, in, and on and under the property herein described.



d. Right of Way in certified copy of Judgment to DELHI GAS PIPELINE CO. from CLOTA MAE SHELTON in instrument dated August 3, 1972, recorded in Volume 783, Page 749, of the DEED Records of Van Zandt County, Texas.

e. Item 3b of any T-19 issued will be deleted.

f. Rights of parties in possession. (Owner's Policy Only)

g. Terms, conditions and stipulations as will be set out in Warranty Deed from Seller to Buyer given in connection herewith.

h. Protrusion(s), encroachment(s), easement(s) as shown on any plat that may be furnished by approved surveyor in connection with this transaction.

Old Republic National Title Insurance Company

Tab F



RECORD 62

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE C

Your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from the following requirements that will appear as Exceptions in Schedule B of the Policy, unless you dispose of these matters to our satisfaction, before the date the Policy is issued:

1.  Documents creating your title or interest must be approved by us and must be signed, notarized and filed for record.

2.  Satisfactory evidence must be provided that:

    a.  no person occupying the land claims any interest in that land against the persons named in paragraph 3 of Schedule A,

    b.  all standby fees, taxes, assessments and charges against the property have been paid,

    c.  all improvements or repairs to the property are completed and accepted by the owner, and that all contractors, subcontractors, laborers and suppliers have been fully paid, and that no mechanic's, laborer's or materialmen's liens have attached to the property,

    d.  there is legal right of access to and from the land,

    e.  (on a Mortgagee Policy only) restrictions have not been and will not be violated that affect the validity and priority of the insured mortgage.

3.  You must pay the seller or borrower the agreed amount for your property or interest.

4.  Any defect, lien or other matter that may affect title to the land or interest insured, that arises or is filed after the effective date of this Commitment.

5.  **Payment of any and all taxes now due and payable up to and including the year 2007.**

6.  **We require "GOOD FUNDS" in accordance with Procedural Rule P-27 which requires that "Good Funds" be received and deposited before a Title Agent may disburse from its trust fund account. "Good Funds" means: 1) Cash or wire transfers; 2) Certified Checks, Cashier's Checks and Teller's Checks; 3) Uncertified funds in amounts less that $1,500.00 including checks, traveler's checks, money orders and negotiable orders of withdrawal; provided multiple items shall not be used to avoid the $1,500.00 limitation; 4) Uncertified funds in the amount of $1,500.00 or more, drafts and any other items when collected by the financial institution; 5) State of Texas Warrants; 6) United States Treasury Checks; 7) Checks drawn on a bank of savings and loan association, insured by the FDIC or FSLIC and for which a transaction code has been issued pursuant to, and in compliance with, a fully executed Immediately Available Fund Procedure Agreement (Form T-37) with such bank or savings and loan association; 8) Checks by city and county governments located in the State of Texas.**

7.  **We require an Affidavit of Debts and Liens to be signed by the Seller.**

8.  **We require a Waiver of Inspection to be signed by the Purchaser.**

9.  **We require a release of Deed of Trust dated August 18, 2003 from HELMUTH K. GUTZKE AND WIFE, ZACKIANN GUTZKE to DENNIS P. SCHWARTZ, Trustee, securing a note for $77,000.00, payable to FIRST NATIONAL BANK OF CANTON, recorded in Volume 1851, Page 283 of the REAL Records of Van Zandt County, Texas.**

10. **We require a Warranty Deed from HELMUTH K. GUTZKE AND WIFE, ZACKIANN GUTZKE to DAVID C. PETRUSKA AND SANDRA L. PETRUSKA, with vendor's lien retained in favor of LENDER, representing part of the purchase price and being in the amount of $274,500.00.**

11. **We require a Deed of Trust and Note in the amount of $274,500.00 from DAVID C. PETRUSKA AND WIFE, SANDRA L. PETRUSKA to Trustee, for the benefit of LENDER.**

Old Republic National Title Insurance Company

Tab F



RECORD 63

G.F. No. 080258

12.      We require a Survey according to terms and conditions set forth in the contract and to determine exact size and location of subject property.

13.      If closing in our office, we require all closing documents and figures be in our office at least 24 hours prior to closing, or closing date and time will be changed.

Countersigned
**Elliott & Waldron Abstract & Title Company of Canton**

By _____
Authorized Counter Signature

Tab F

CERTIFIED COPY

RECORD 64

# COMMITMENT FOR TITLE INSURANCE

## SCHEDULE D

G.F. No. or File No. 080258                                    Effective Date: April 9, 2008, 7:00 am

Pursuant to the requirements of Rule P-21, Basic Manual of Rules, Rates and Forms for the writing of Title Insurance in the State of Texas, the following disclosures are made:

1.   The following individuals are directors and/or officers, as indicated, of the Title Insurance Company issuing this Commitment

### DIRECTORS OF OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

HARRINGTON BISCHOF          JOHN M. DOXON          STEVE R. WALKER
JOHN W. POPP                ARNOLD L. STEINER      A.C. ZUCARO

### OFFICERS OF OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

RANDE E. YEAGER, President & Chief Operating Officer    STEPHEN C. WILSON, Executive Vice President
GARY J. HORN, Senior Vice President & CFO               DANIEL M. WOLD, Vice President, Secretary & Senior
MIKE TARPEY, Vice President and Treasurer               Corporate Counsel

2.                              TITLE INSURANCE AGENCY

OFFICERS:                                   DIRECTORS & SHAREHOLDERS:
Ivan Alexander, Jr., Pres.                  Ivan Alexander, Jr.
Constance H. Alexander, VP                  Constance H. Alexander
George Ivan Alexander, VP                   George Ivan Alexander
Philip DeWitt Alexander, Sec. & Tres.       Philip DeWitt Alexander
                                            Lisa Alexandria Mitchell

3    You are entitled to receive advance disclosure of settlement charges in connection with the proposed transaction to which this commitment relates. Upon your request, such disclosure will be made to you. Additionally, the name of any person, firm or corporation receiving any sum from the settlement of this transaction will be disclosed on the closing or settlement statement.

You are further advised that the estimated title premium' is:
Owners Policy                   $1,938.00
Mortgagee Policy                $100.00
Total                           $2,038.00

Of this total amount: 15% will be paid to the policy issuing Title Insurance Company: 85% will be retained by the issuing Title Insurance Agent; and the remainder of the estimated premium will be paid to other parties as follows:

Amount              To Whom                          For Services


'The estimated premium is based upon information furnished to us as of the date of this Commitment for Title Insurance. Final determination of the amount of the premium will be made at closing in accordance with the Rules and Regulations adopted by the State Board of Insurance.

This commitment is invalid unless the insuring provisions and Schedules A, B, and C are attached

Old Republic National Title Insurance Company

Tab F



RECORD 65

 

# DUNN AND DUNN, PC     ATTORNEYS AND COUNSELORS AT LAW

171 S. BUFFALO ST.  CANTON, TEXAS 75103   PHONE (903) 567-1111  FAX (903) 567-5101
MATTHEW L. DUNN       EMILY DUNN

February 28, 2014

Mr. and Mrs. David Petruska
11264 Russwood Circle
Dallas, Texas 75229

**Re: Easement situated in Van Zandt County, Texas**

Mr. and Mrs. Petruska:

    This firm has been retained by Mr. and Mrs. Tom Lytle concerning the recent dispute regarding use of their driveway. While my clients have graciously permitted you to utilize their driveway with the understanding that you would be building your own soon, no easement was ever filed and recorded in the real property records of Van Zandt County regarding your use of this property. All parties were aware that no easement existed at the time of your purchase, as both of you requested that my clients sign an easement prior to your closing date. Mr. and Mrs. Lytle did not sign an easement at that time, nor have they executed anything resembling an easement since.

    The deed executed for the purchase of your land and filed on May 20, 2008 contains language reference "an Easement for Roadway"; thus causing a cloud on the title of my client's land. I am requesting that you execute the enclosed release stating that there is no easement. If I do no receive a properly executed release within 30 days from the date of this letter, I am prepared to litigate this matter.

    Thank you for your time and consideration of this matter. If you have any questions, please do not hesitate to contact my office at (903) 567-1111.

Sincerely,

Emily Jones Dunn

EJD/hj
Enclosure
CC:  Compass Bank (CMRRR)
      401 West Valley Avenue
      Homewood, Alabama 35209

      Marie Yamane (CMRRR)
      Compass Bank
      401 West Valley Avenue
      Homewood, Alabama 35209

Tab G



RECORD 66

Petruska & Associates (CMRRR)
5944 Luther Lane, Suite 450
Dallas, Texas 75225-5978

Mrs. Petruska (CMRRR)
Briggs Freeman Sotheby's
5600 West Lovers Lane, Suite 224
Dallas, TX 75209

Tab G





CERTIFIED COPY

**RECORD 67**



March 26, 2014

PETRUSKA
&
ASSOCIATES

A
PROFESSIONAL
LIMITED LIABILITY
COMPANY

5944 Luther Lane
Suite 450
Dallas, Texas 75225

Phone: 214.353.0141
Cell: 214.762.4611
E-mail:
David.Petruska@sbcglobal.net
Fax: 214.361.3935

Emily Jones Dunn, Esq.
Dunn and Dunn, PC
171 S. Buffalo Street
Canton, Texas 75103

**CERTIFIED MAIL NO.  7012 2920 0002 2647 4268**
**RETURN RECEIPT REQUESTED**

Dear Ms. Dunn:

Enclosed herewith please find the document you requested which you say will remove the cloud from the Lytle's title. We are signing this even though we believe and have been advised by others that we have a valid easement conveyed by the sellers to us. Having said that, life is too short to deal with petty matters.

As you may know we commenced work on a separate entrance to our home before we received your letter of February  28th. You may check with Commissioner Melton regarding the date. Said entrance is now completed.

We ask that you please instruct the Lytle's to refrain from screaming obscenities at us and threatening our property by yelling that they will be there when we are not.

We hope this puts the matter to rest.

Very truly yours,



Tab H

**RECORD 68**

# RELEASE OF EASEMENT

On __March 26th__, 2014, we, David C. Petruska and wife, Sandra L. Petruska, hereby release the easement that is listed in the one certain General Warranty Deed with Vendor's Lien of record dated May 16, 2008 from Helmuth K. Gutzke and wife, Zackiann Gutzke to David C. Petruska and wife, Sandra L. Petruska and being recorded in Van Zandt County under Document Number: 2008-004602.

_____
DAVID C. PETRUSKA

_____
SANDRA L. PETRUSKA

This instrument was acknowledged before me __Randall Willbanks__ on by DAVID C. PETRUSKA.


RANDALL SCOTT WILLBANKS
My Commission Expires
October 1, 2016

_____
Notary Public, State of Texas

This instrument was acknowledged before me __Randall Villbanks__ on by SANDRA L. PETRUSKA.


RANDALL SCOTT WILLBANKS
My Commission Expires
October 1, 2016

_____
Notary Public, State of Texas

Tab H



**RECORD 69**

214-696-8208



J. BODEN A-36

M. V. LOUT A-468

2.143 AC.

S87°00'E  417.42'

N87°00'W  447.52'

Revised 5-9-97

SCALE = 1" = 100'

SURVEY — M. V. LOUT A-458

DESCRIPTION — PART 2ND TRACT 1207/390

COUNTY — VAN ZANDT

SURVEY FOR — RIK GUTZKE

JACK L. WARD
Registered Professional Land Sur...
P. O. Box 1490, Athens, Texas
Phone (903) 670-5519

CERTIFIED COPY

CLERK DISTRICT COURT

RECORD 70

Tab I



Tab J

**RECORD 71**



Tab J

**RECORD 72**

CERTIFIED COPY

| | | |
|---|---|---|
| THOMAS LYTLE AND ELLEN LYTLE, | § § § | IN THE DISTRICT COURT |
| v. | § § § | |
| DAVID C. PETRUSKA, SANDRA L. PETRUSKA, COMPASS BANK, HELMUTH K. GUTZKE, and ZACKIANN GUTZKE | § § § § | 294th JUDICIAL DISTRICT VAN ZANDT COUNTY TEXAS |

## <u>AFFIDAVIT OF SANDRA L. PETRUSKA</u>

1.      My name is Sandra L. Petruska. I am one of the defendants in this case. My husband is David C. Petruska, who is another defendant. I am competent to make this affidavit. My personal knowledge is based on my first-hand experience in buying, with my husband, the property at 1601 Van Zandt County Road 2319 in May 2008; my experience in driving on the disputed driveway between January 2008 and February 2014 with no protest from Thomas or Ellen Lytle; my experiences in living on or visiting the property regularly between May 2008 and the present; my personal review of the General Warranty Deed with Vendor's Lien we received from Helmuth and Zackiann Gutzke, the Deed of Trust we signed with Compass Bank, the release of easement I signed and returned to the Lytles' attorney in March 2014, and the Lytles' original petition, which is in the Court's file; my personal conversations with the Gutzkes, the Lytles, representatives of Compass Bank, and Registered Professional Land Surveyor No. 1935 Gearld A. Carter, as discussed below; and my personal review of other documents and photographs as discussed below. The facts I discuss are within my personal knowledge and are true and correct.

### A.      Property: 1601 Van Zandt County Road 2319

2.      My husband, David, and I own the property at 1601 Van Zandt County Road 2319, Canton, Texas. The property lies just south of Van Zandt County Road 2319, which runs roughly east and west. A house sits on the property back from the driveway on the neighboring property. To the best of my knowledge the house was on the property since some time in 1997when it was built.

### B.      Neighboring Property: 1603 Van Zandt County Road 2319

3.      Thomas and Ellen Lytle claim to own the neighboring property at 1603 Van Zandt County Road 2319, which also lies south of the county road.

Affidavit of Sandra L. Petruska





CERTIFIED COPY

TAB 2

RECORD 73

## C.     Driveway or Roadway

4.      The properties at 1601 and 1603 Van Zandt County Road 2319 are contiguous along a boundary on the west side of 1601 (or the east side of 1603) running southwest from Van Zandt County Road 2319. A driveway or roadway, located on 1603 Van Zandt County Road 2319, runs southwest from the county road along the boundary line towards the houses on both properties. For years, there has been a turn off from this driveway or roadway that connects to a barn or other farm building and, later since 1997, the house on 1601 Van Zandt County Road and a separate turn off from the driveway that connects to the house on 1603 Van Zandt County Road.

5.      True and correct diagrams of the properties are at Tab A. True and correct photographs of the properties are at Tab J. These photographs depict the properties, including the disputed driveway with its turn offs that lead to the houses on each parcel, as they existed after we bought the property in May 2008 and before the Lytles first disputed our use of the driveway in February 2014.

## D.     Easement

6.      The photos of the road at Tab J show that the persons living in the house on 1601 Van Zandt County Road 2319 used and drove vehicles on the driveway or roadway on 1603 Van Zandt County 2319 for access to and from the house to the county road. The driveway or roadway was there when my husband and I bought 1601 Van Zandt County Road in May 2008, and it was obvious from the driveway and its wear, tear, and tracks, by then, that the driveway had been heavily used by both properties. For example, the driveway had a separate and well-worn split off leading to the house on 1601 Van Zandt County Road by May 2008. Both properties, 1601 and 1603 Van Zandt County Road 2319, shared one mail-box post at the corner of the driveway and the county road between May 2008 and February 2014.

## E.     Title Company

7.      On or about April 10, 2008, our title company—Elliott & Waldron Abstract & Title Company of Canton, Texas—wrote us a letter. A true and correct copy of the letter is at Tab F. Schedule B of the accompanying Commitment for Title Insurance "Exceptions from Coverage," states, in part, "In addition to the Exclusion and Conditions and Stipulations, your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from . . . 10. Easements or claims of easements which may or may not be recorded in the public records of Zandt County, Texas." At the time of the purchase I believed that this exclusion from our title policy was standard language. I did not believe that this language referred to the easement set out in the General Warranty Deed with Vendor's Lien from the Gutzkes. Also, I don't believe that the title company was telling us that the easement to use the neighboring driveway was invalid or non-existent. I understood the company to be saying that it just didn't insure easements. Also, no one from the title company told us that the easement identified in the General Warranty Deed was not valid. In fact, no one at all, including the title company personnel, the bank personnel, the Gutzkes, or anyone else, ever suggested that the easement identified in the Gene...

**Affidavit of Sandra L. Petruska**

TAB 2

CERTIFIED COPY

RECORD 74

Deed was not valid and Tom Lytle stated to me on the telephone that he thought the easement existed. During the times we visited the property to make our purchase decision, we drove our vehicle on the driveway on 1603 Van Zandt County Road 2319 to access the property. So did the realtors and others involved in our purchase. No one, including the Lytles, complained about this.

8.     As Exhibit B(1) to Plaintiff's Motion for Summary Judgment on Liability (filed Oct. 29, 2014), the Lytles attached a copy of our title policy for the property. Schedule B (Exceptions) states, in part, "We do not cover loss, costs, attorneys' fees and expenses resulting from: . . . 6(I) We do not insure access via the roadway shown on property owned Lytle adjacent to NW line of property shown on survey dated April 23, 2008 by Gerald A. Carter." I did not receive a copy of the title policy at the time of closing on May 16, 2008. Buyers ordinarily do not receive copies of the title policy at the time of the closing. Closings are predicated on the title commitment. Title companies customarily provide a final title policy four to six weeks after a closing. In fact, I'm not sure when I first saw a copy of my title policy, but it was long after closing. Also, the title company is not stating that the easement shown on the General Warranty Deed with Vendor's Lien (dated May 16, 2008) from the Gutzkes is invalid.

### F.     Independent Survey

9.     In early 2008, my husband and I engaged an independent surveyor, Registered Professional Surveyor No. 1935 Gearld A. Carter, to survey the property we planned to purchase at 1601 Van Zandt County Road 2319 and to confirm the property's boundaries as is customary. After he performed his work, Mr. Carter provided us with a survey, field notes, and diagrams. True and correct copies of this survey, field notes, and diagrams are at Tab A. Although I am not an expert at reading technical surveys or diagrams, I personally spoke with Mr. Carter and he confirmed and described the property's easement. I understand that the documents at Tab A likewise confirm and document this easement. I had this understanding in 2008, as well, when we had our General Warranty Deed with Vendor's Lien and our Deed of Trust recorded in Van Zandt County's public land records.

### G.     We (the Petruskas) bought 1601 Van Zandt County Road 2319.

10.     On April 24, 2008, my husband and I, on the one hand, and the Gutzkes, on the other hand, signed an amendment to the real-estate contract for the property, chiefly to make my husband, David, a party-buyer to the contract. A true and correct copy of the amendment is at Tab D. At the time, the title company recommended that the parties obtain documentation of the easement signed by the Lytles. Exhibit A to the amendment stated, "Closing is conditioned upon conveyance of easement acceptable to buyers allowing access to said property from private driveway owned by Ms. Lytle." In April or May 2008, I personally called and talked to Thomas Lytle about signing a paper to meet the title company's suggestion. Mr. Lytle said that he didn't want to spend money on an attorney to confirm an easement that was clear or obvious that residents of 1601 Van Zandt County Road 2319 had possessed and used for years. Contrary to his statement in paragraph 4 of his declaration (signed Oct. 24, 2014), Mr. Lytle did not tell me "that we [the Lytles] would not sign or grant an easement to use the driveway." He did tell me

Affidavit of Sandra L. Petruska

TAB 2

RECORD 75

didn't want to sign additional documentation of an easement that it was obvious had been used for years. I told this information to my husband. Based, in part, on this conversation, I believed that our property had an easement that allowed us to use the neighboring driveway for access between our property and house and Van Zandt County Road 2319.

11. On or about May 16, 2008, my husband and I, relying in part, on the representations in the General Warranty Deed as well as the representations of Tom Lylte per our phone conversation, purchased the real property consisting of just over 25 acres of land, with a house and other buildings, at 1601 Van Zandt County Road 2319, being described in that General Warranty Deed with Vendor's Lien dated May 16, 2008, from Helmuth Gutzke and Zackiann Gutzke, recorded with Document Number 2008-004602 of the deed records of Van Zandt County, Texas. A true and correct copy of the warranty deed is at Tab C.

12. On May 16, 2008, my husband and I, on the one hand, and the Gutzkes, on the other hand, signed another amendment, which stated, in part, "Seller and Buyer agree to waive the condition of the contract relating to obtaining an easement from Thomas M. or Ellen Lytle." A true and correct copy of this amendment is at Tab E. I believed that we did not need additional documentation of the easement. First, our general warranty deed (dated May 26, 2008) set out the easement. Second, an independent surveyor confirmed the easement in April 2008. Third, I believed that the Gutzkes had used and driven vehicles on the driveway or roadway for years before May 16, 2008. Fourth, Thomas Lytle had acknowledged the easement to me in our phone conversation in April or May 2008.

13. The Gutzkes stated that they owned fee simple title to the property, including the easement, at the time we purchased it. By the terms of the General Warranty Deed, the Gutzkes warranted the title conveyed to us. In part, the Deed stated, "All that certain lot, tract or parcel of land . . . of the called 5.753 acre first tract and all of the called 20.00 acre second tract . . . together with an Easement for Roadway situated in Van Zandt County, State of Texas, on the M.V. Lout Survey, A-468 and being a part of the called 68.78 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed . . . and part of the called 1.10 acre tract conveyed to Thomas M. Lytle and Ellen Lytle . . . ." The Gutzkes executed and delivered the General Warranty Deed to us pursuant to a purchase agreement and in consideration of the purchase price paid that we paid to the Gutzkes. My husband and I have performed or met all of our material obligations under the purchase agreement.

14. On or about May 16, 2008, my husband and I also signed a Deed of Trust, which contained the same property description and easement language as the General Warranty Deed with Vendor's Lien, as part of securing a loan from Compass Bank. A true and correct copy of the Deed of Trust is at Tab B.

15. Between May 16, 2008 and February 2014, my husband and I used and drove on the driveway on the Lytles' property without complaint. Both properties shared a single mailbox post at the corner of the county road and the driveway or roadway. Before February 2014, my husband gave Thomas Lytle a check for what County Commissioner Virgil Melton said was

Affidavit of Sandra L. Petruska

TAB 2

RECORD 76

one-half of the cost of repairing the culvert and entranceway from the county road to the driveway or roadway, and Mr. Lytle cashed the check.

**H.  We had a valid easement on May 16, 2008.**

16.  I have worked in real estate in Dallas since 1985. I am currently a licensed real-estate agent with Briggs Freeman Sotheby's International Realty in Dallas.

17.  Although I am not an attorney, it's my opinion that my husband and I had or acquired a valid easement, attached to our property, to use and drive vehicles on the driveway or roadway located on 1603 Van Zandt County Road 2319, on May 16, 2008. First, our general warranty deed (dated May 26, 2008) set out the easement. Second, an independent surveyor confirmed the easement in April 2008. Third, I believed, based on conversations with the Gutzkes, that the Gutzkes had used and driven vehicles on the driveway or roadway for years before May 16, 2008. Fourth, Thomas Lytle confirmed the easement in our phone conversation in April or May 2008 (before we purchased the property). Fifth, the two properties shared one mail box or mail-box post at the corner of the driveway and Van Zandt County Road 2319 when we bought the property. Moreover, my belief was confirmed by my and my husband's experience in using and driving vehicles on the driveway between May 2008 and February 2014 without complaint from the Lytles or anyone else. Mr. Lytle's later acceptance and cashing of our check for what he said was one-half of the cost to replace the culvert and repair the affected part of the driveway also confirmed my belief.

**I.  We committed no fraud.**

18.  Our information as of May 16, 2008, including that set out in paragraph 17, shows that my husband and I did not commit any fraud, including fraud under section 12.002 of the Civil Practice & Remedies Code. We had a valid easement and documentation to support this conclusion. My husband and I did not prepare, or participate in the preparation of, the General Warranty Deed with Vendor's Lien (May 16, 2008), Tab C, from the Gutzkes to us, and the deed described the easement. My husband and I did not prepare, or participate in the preparation of (beyond signing), the Deed of Trust (May 16, 2008), Tab B, for Compass Bank, which contained the same description of the easement. Given the documentation I had, including the independent survey and the general warranty deed, I did not search the deed records to see what might or might not be reflected in the Lytles' deed or deeds. Moreover, the Gutzkes said that they had used the driveway to access the property and house for years. The Gutzkes said, in the warranty deed, that they had an easement to sell us. Our surveyor independently confirmed the easement. No one—including persons from our title company, the real-estate agents, Compass Bank, and our surveyor—ever suggested that the easement was invalid or that the General Warranty Deed with Vendor's Lien or the Deed of Trust were fraudulent or contained any materially false information. I never had any intention of causing a fraudulent document to be filed of public record in conjunction with our purchase of 1601 Van Zandt County Road nor were any fraudulent documents filed in conjunction with such purchase. I never used the deeds with an intent to cause anyone, including the Lytle's financial injury or emotional distress

**Affidavit of Sandra L. Petruska**

TAB 2

CERTIFIED COPY **RECORD 77**

**J.   Moreover, we released the easement before the Lytles filed suit.**

19.   On February 28, 2014, the Lytles' attorney, Emily Jones Dunn, wrote my husband and me a letter and asserted that we didn't have a recorded easement to use the driveway or roadway on the Lytles' property which placed a cloud on their title. She offered, "I am requesting that you execute the enclosed release stating that there is no easement. If I do not receive a properly executed release within 30 days from the date of this letter, I am prepared to litigate." A true and correct copy of this letter is at Tab G.

20.   I believed that the attorney was incorrect for several reasons. First, our general warranty deed (dated May 16, 2008) reflected the easement. Second, an independent surveyor confirmed the easement in April 2008. Third, I believed that the residents of 1601 Van Zandt County Road 2319 had used and driven vehicles on the driveway or roadway for many years and my husband and I had used the driveway between May 2008 and February 2014 without complaint. Nonetheless, in an effort to avoid litigation and further problems, my husband and I accepted the Lytles' offer and signed the release of easement and returned it to the Lytles' attorney on March 26, 2014. A true and correct copy of our return letter and the release of easement is at Tab H. I would not have signed the release of easement or returned it, unless the Lytles had agreed, in return, not to sue us over the easement.

21.   Again, my husband and I fully performed all of our material duties under our contract with the Lytles, under which the Lytles agreed not to sue us over the easement in exchange for a signed release of easement. In contrast, the Lytles materially breached the contract by (a) filing this lawsuit on July 9, 2014, (b) filing a motion for summary judgment on October 29, 2014, and (c) continuing this lawsuit. The Lytles' material breaches have proximately caused, and continue to cause, us damages, including attorney's fees and litigation expenses.

22.   I swear or affirm to these facts within the meaning of section 312.011(1) of the Texas Government Code.

Date:   December 1, 2014.

*Sandra L. Petruska*
Sandra L. Petruska

Affidavit of Sandra L. Petruska

TAB 2



CERTIFIED COPY

**RECORD 78**

Before me,  , on this day personally appeared David C. Petruska, who established his identify with his Texas driver's license, to be the person whose name is subscribed as a witness to the foregoing instrument. David C. Petruska swore to the statements in the above affidavit before me, and I am officially certifying this document under my seal of office under section 312.011(1) of the Texas Government Code. I am a notary public, and Texas law authorizes a notary public to administer an oath and certify the fact of a person making an oath, in section 602.002(5) of the Texas Government Code.

_____
Notary Public

ANN TATE PERTZBORN
MY COMMISSION EXPIRES
September 20, 2018

Affidavit of Sandra L. Petruska



THE STATE OF TEXAS
VAN ZANDT COUNTY
CERTIFIED COPY



TAB 2

RECORD 79

# FIELD NOTES

SANDRA L. PETRUSKA
24.020 ACRES

M. V. LOUT SURVEY
ABSTRACT NO. 468

## VAN ZANDT COUNTY, TEXAS

All that certain lot, tract or parcel of land situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468, and being all of the residue of the called 5.753 acre first tract and all of the called 20.00 acre second tract conveyed to Helmuth K. Gutzke and wife, Zackiann Gutzke, by A. D. Ward, a single man, by Warranty Deed with Vendor's Lien dated July 30, 1990, and recorded in Volume 1207, Page 390, of the Van Zandt County Real Records. Said lot, tract or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a ½" iron rod found for corner at the Southeast corner of the called 20.00 acre second tract, at the Southwest corner of the Arthur C. Werden tract recorded in Volume 2028, Page 309, of the Van Zandt County Real Records, and in the Northeast line of the Thomas M. Lytle 68.78 acre tract recorded in Volume 1771, Page 609, of the Van Zandt County Real Records, from WHENCE a fence corner found bears North 78 degrees 05 minutes 37 seconds West 2.58 feet;

THENCE NORTH 44 degrees 40 minutes 21 seconds West 648.90 feet to a 5/8" iron rod set for corner at the South corner of the Thomas M. Lytle 1.622 acre tract recorded in Volume 2188, Page 463, of the Van Zandt County Real Records;

THENCE NORTH 43 degrees 59 minutes 44 seconds East 105.86 feet to a ½" iron rod found for corner at the East corner of the said 1.622 acre tract;

THENCE NORTH 45 degrees 25 minutes 00 seconds West 668.07 feet to a ½" iron rod found for corner at the North corner of the called 1.622 acre tract, in the original Northwest line of the called 5.753 acre first tract, and in the Southeast line of the Thomas M. Lytle 1.10 acre tract recorded in Volume 1771, Page 629, of the Van Zandt County Real Records;

THENCE NORTH 44 degrees 05 minutes 12 seconds East 1152.76 feet to a railroad spike set for corner in County Road No. 2319, at the North corner of the called 20.00 acre second tract, from WHENCE a 60d nail found at the East corner of the said Thomas M. Lytle 1.10 acre tract bears North 44 degrees 05 minutes 12 seconds East 2.65 feet and a ½" iron rod found in the South right of way of the said county road bears South 38 degrees 58 minutes 47 seconds West 23.09 feet;

THENCE SOUTH 81 degrees 39 minutes 33 seconds East along the said county road and the North line of the called 20.00 acre second tract, 322.19 feet to a railroad spike set for corner in the South line of the B. W. Ward 106.60 acre first tract recorded in Volume 1654, Page 588, of the Van Zandt County Real Records, at the Northwest corner of the said Arthur C. Werden tract and at the Northeast corner of the called 20.00 acre second tract, from WHENCE a 5/8" iron rod set in the South right of way line of the said county road bears South 08 degrees 20 minutes 49 seconds West 19.00 feet and a 48" Pecan tree found marked X with two hacks above and below the X bears North 62 degrees 57 minutes East 60.40 feet;

THENCE SOUTH 08 degrees 20 minutes 49 seconds West along the East line of the called 20.00 acre second tract and the West line of the said Arthur C. Werden tract 1806.98 feet to the place of beginning and containing 24.020 acres of land.

Tab A

RECORD 80

## SURVEYOR'S CERTIFICATE

I, Gearld A. Carter, Registered Professional Land Surveyor No. 1935, do hereby certify that I directed the survey of the above described tract of land and prepared the above field notes describing the boundaries of same just as they were found and surveyed upon the ground, and this survey is made in accordance with the STANDARDS FOR LAND SURVEYS of the TEXAS BOARD OF PROFESSIONAL LAND SURVEYING, as revised in November, 2007, and will meet the accuracy requirements as set out in RULE 663.15C as defined therein.

WITNESS my hand and seal at Athens, Texas, this 29th Day of April, A. D. 2008.

GEARLD A. CARTER
REGISTERED PROFESSIONAL LAND
SURVEYOR NO. 1935

Tab A



RECORD 81



## 24.020 ACRES
### ACTUAL BEARING AND DISTANCE

| NUMBER | DIRECTION | DISTANCE |
|--------|-----------|----------|
| 1 | N 44°40'21" W | 648.90' |
| 2 | N 43°59'44" E | 105.86' |
| 3 | N 45°25'00" W | 668.07' |
| 4 | N 44°05'12" E | 1152.76' |
| 5 | S 81°39'33" E | 322.19' |
| 6 | S 08°20'49" W | 1806.98' |

**CALLS**

BRG. N45°03'W
N46°49'34"E 105.78'
N42°39'17"W 668.07'
BRG. N44°34'E
S81°16'E 319.61'
S08°44'W 1804.58'

## 0.448 ACRE EASEMENT
### ACTUAL BEARING AND DISTANCE

| NUMBER | DIRECTION | DISTANCE |
|--------|-----------|----------|
| 7 | S 84°55'25" E | 21.41' |
| 8 | S 85°03'04" E | 14.94' |
| 9 | S 44°05'12" W | 674.24' |
| 10 | N 45°54'48" W | 30.71' |
| 11 | N 44°18'18" E | 651.34' |

**CALLS**

S82°08'20"E 21.37'
S82°08'20"E 14.92'
BRG. S44°34'W

BRG. N47°05'23"E

Tab A



INSET SCALE 1" = 40'

Scale: 1" = 200'



FLETCHER TURNER 42.25 AC 2ND TR. VOL. 303 PG. 478 V.Z.C.D.R.

SET RR. SPK.
WIT. 60DNLF. N44°05'12"E 2.65'
WIT. 1/2"IRF. S38°58'47"W 23.09'

B.W. WARD 106.60 AC 1ST TR.
VOL. 1654 PG. 588 V.Z.C.R.R.
€ CO. RD. NO. 2319

SET RR. SPK.
WIT. 5/8"IRS.
S08°20'49"W 19.00'
FD. MKD. X 48" PECAN
N62°57'E 60.40'

ACT. TOTAL 24.020 ACRES
CALL TOTAL 24.131 ACRES

1-STRY. BRK. HSE.
SEE INSET

ARTHUR C. WERDEN VI

**RECORD 82**



CALL 20.00 AC
2ND TR. 1207/390
V.Z.C.R.R.

M.V. LOUT SUR. A-468

28 PG. 309 V.Z.C.R.R.

LINE OF DIRECTIONAL CONTROL (ASSUMED)

RESID 5,753 A 1207/391

THOMAS M. LYTLE 1622 AC VOL. 2188 PG. 463 V.Z.C.R.R.

THOMAS M. LYTLE 1.10 AC VOL. 1771 PG. 629 V.Z.C.R.R.

THOMAS M. LYTLE 68.78 AC VOL. 1771 PG. 609 V.Z.C.R.R.

1/2"IRF.

5/8"IRS.

9.5'

1/2"IRF. WIT. FNC. COR. FD.
N78°05'37"W 2.58'

## PLAT OF SURVEY

LEGAL DESCRIPTION OF LAND: All that certain lot, tract or parcel of land situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468, and being all of the residue of the called 5.753 acre first tract and all of the called 20.00 acre second tract conveyed to Helmuth K. Gutzke and wife, Zackiann Gutzke, by A. D. Ward, a single man, by Warranty Deed with Vendor's Lien dated July 30, 1990, and recorded in Volume 1207, Page 390, of the Van Zandt County Real Records and all that certain lot, tract or parcel of land situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468, and being a part of the called 68.78 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 609, of the Van Zandt County Real Records, and a part of the called 1.10 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 629, of the Van Zandt County Real Records. Said lot, tract or parcel of land being more particularly described by metes and bounds attached hereto:

PROPERTY ADDRESS
1601 VZCR 2319
CANTON, TEXAS 75103

I, Gearld A. Carter, Registered Professional Land Surveyor No. 1935, do hereby certify to Sandra L. Petruska, buyer, Loansource Real Estate Loans, lender and Elliott and Waldron Title Company, that the plat shown hereon accurately represents the results of an on the ground survey made under my direction and supervision on April 23, 2008, and all monuments were found or set and actually exist and the location and description are correctly shown, the boundaries, dimensions and other details shown hereon are true and correct as determined by survey, there are no visible encroachments on the property or protrusions therefrom, except as shown hereon, there are no visible discrepancies, conflicts, shortages in areas or boundary line conflicts, except as shown hereon, the size, location and type of improvements are as shown hereon and all are located within the boundaries of the property, except as shown hereon, and this survey is made in accordance with THE STANDARDS FOR LAND SURVEYS of the TEXAS BOARD OF PROFESSIONAL LAND SURVEYING as revised in November 2007, and will meet the accuracy requirements as set out in RULE 663.15C, as defined therein.

Gearld A. Carter, REGISTERED PROFESSIONAL LAND SURVEYOR NO. 1935

SURVEY FOR: SANDRA L. PETRUSKA          M. V. LOUT SURVEY, A-468
GF#080258                               VAN ZANDT COUNTY, TEXAS

GEARLD A. CARTER AND ASSOCIATES, LAND SURVEYORS
P.O. BOX 1445,
ATHENS, TEXAS 75751
903-675-7346

CERTIFIED COPY

After recording please mail to:

**Compass Bank**
**401 West Valley Avenue**
**Homewood, AL 35209**
**Marie Yamane**

_____ [Space Above This Line For Recording Data] _____

## NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

# DEED OF TRUST

Loan # *private*

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "**Security Instrument**" means this document, which is dated **May 16, 2008**, together with all Riders to this document.

(B)    "**Borrower**" is **David C. Petruska and wife, Sandra L. Petruska**. Borrower is the grantor under this Security Instrument.

(C)    "**Lender**" is **Compass Bank** . Lender is a **state bank** organized and existing under the laws of **Alabama**. Lender's address is **PO Box 13345 Birmingham, AL 35202**. Lender is the beneficiary under this Security Instrument.

(D)    "**Trustee**" is **Jon Mulkin** . Trustee's address is **401 West Valley Avenue, Homewood, AL 35209**.

(E)    "**Note**" means the promissory note signed by Borrower and dated **May 16, 2008**. The Note states that Borrower owes Lender **Two Hundred Seventy Four Thousand Five Hundred and 00/100** Dollars (U.S. **$274,500.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 1, 2038**.

(F)    "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)    "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)    "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following

**Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM**
**INSTRUMENT**

Form 3044 01/01

©2006, The Compliance Source, Inc.
[Doc Id 6606 Rev 03.2006]

1

Tab B

**RECORD 84**

Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider     ☐ Condominium Rider     ☒ Second Home Rider

☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider

☐ 1-4 Family Rider     ☐ Rate Improvement Rider     ☐ Graduated Payment Rider

☐ VA Loan Rider     ☐ Manufactured Home Rider     ☒ Other(s): ARM, Interest Only

(I)     "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)     "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)     "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)     "Escrow Items" means those items that are described in Section 3.

(M)     "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)     "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)     "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)     "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. '2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)     "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security

CERTIFIED COPY

RECORD 85

Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** [Type of Recording Jurisdiction] of **Van Zandt** [Name of Recording Jurisdiction]:

All that certain lot, tract or parcel of land situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468, and being all of the residue of the called 5.753 acre first tract and all of the called 20.00 acre second tract conveyed to Helmuth K. Gutzke and wife, Zackiann Gutzke, by A. D. Ward, a single man, by Warranty Deed with Vendor's Lien dated July 30, 1990, and recorded in Volume 1207 Page 390, of the Van Zandt County Real Records, together with an Easement for Roadway situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468 and being a part of the called 68.78 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 609, of the Van Zandt County Real Records and a part of the called 1.10 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 629, of the Van Zandt County Real Records and said lot, tract and parcel of land being more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof.

which currently has the address of

1601 VZ County Road 2319
Canton, Texas 75103
["Property Address"]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.      Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

3

©200[...]

Tab B





CERTIFIED COPY

**RECORD 86**

is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality,

**Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

4





Tab B    CERTIFIED COPY

**RECORD 87**

or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.**   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.**   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any *particular* type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

5

Tab B



©2006



CERTIFIED COPY

**RECORD 88**

and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

6

Form 3044 01/01
14001TX 08/00
©2006, The Compliance Source, Inc.
[Doc Id 6616 Rev.03.20.08]

Tab B

RECORD 89

Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

Form 3044 04/01
1400STX 08/00
©2006, The Compliance Source, Inc.

7



Tab B



**RECORD 90**

Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the

---

**Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3044 01/01

8

©2006, The Compliance Source, Inc.



Tab B

CERTIFIED COPY



fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly

**RECORD 92**

prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions,

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

10

©2006, The Compliance Source, Inc.

Tab B





CERTIFIED COPY

RECORD 93

Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor

**Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3044 1/01

©2006, The Compliance Source, Inc.

11

Tab B





CERTIFIED COPY

**RECORD 94**

allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law; (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.    Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

12

Form 3044 01/01
1400FTX 08/00
©2006 The Compliance Source, Inc.
[Doc Id 66 6 Rev 03.20.08]

Tab B



RECORD 95

removed by writ of possession or other court proceeding.

    23.    **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

    24.    **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

    Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

    25.    **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

    26.    **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

    27.    **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[X]    **Purchase Money.**

    The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐    **Owelty of Partition.**

    The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐    **Renewal and Extension of Liens Against Property.**

    The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐    **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

    The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

---

Texas Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

Form 3044 01/01

©2006, The Compliance Source, Inc.
(Doc Id 6676) Rev. 03/29/08)

13

Tab B





**RECORD 96**

28.  Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 5/16/08    _____ 05/16/08
Signature                 Date        Signature                 Date
David C. Petruska                      Sandra L. Petruska

[Sign Originals Only]

STATE OF TEXAS
COUNTY OF _____Van Zandt_____

The foregoing instrument was acknowledged before me this 16th day of May, 2008 by David C. Petruska and Sandra L. Petruska

_____
Notary Public
Printed Name: Pamala Neal
My commission expires: 2-15-10

PAMALA NEAL
Notary Public, State of Texas
My Comm. Expires Feb. 15, 2010

Form 3044 01/01
1400TX 04/06
©2006 The Compliance Source, Inc.
[Doc Id 6610 Rev. 02 2006]

RECORD 97

# Document No. 2008-004602

## GENERAL WARRANTY DEED WITH VENDOR'S LIEN

Parties:     GUTZKE HELMUTH K ET UX

to

PETRUSKA DAVID C ET UX

---

FILED AND RECORDED
REAL RECORDS

On: 05/20/2008 at 03:01 PM

Document Number:     2008-004602
Receipt No.:     20086954
Amount: $ 24.00

By: esmith
Charlotte Bledsoe, County Clerk
Van Zandt County, Texas

4 Pages

**\*\*\*DO NOT REMOVE THIS PAGE – IT IS A PART OF THIS INSTRUMENT\*\*\***

---



STATE OF TEXAS
COUNTY OF VAN ZANDT
    I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded under the Document Number stamped hereon of the Official Public Records of Van Zandt County

Charlotte Bledsoe, County Clerk

---

Record and Return To:

DAVID C. PETRUSKA
11264 RUSSWOOD CIRCLE

DALLAS, TX 75229

Tab C



**RECORD 98**

080258 PN

AFTER RECORDING RETURN TO:
David C. Petruska
11264 Russwood Circle
Dallas, TX 75229

———————————————— [Space Above This Line For Recording Data] ————————————————

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## General Warranty Deed with Vendor's Lien

Date: Executed on the date set forth in the acknowledgement herein, but to be effective the Sixteenth day of May, 2008.

Grantor:  Helmuth K. Gutzke and wife, Zackiann Gutzke

Grantor's Mailing Address: *1632 Pineview Ln.*
*Hideaway TX 75771*

Grantee:  David C. Petruska and wife, Sandra L. Petruska

Grantee's Mailing Address:  11264 Russwood Circle
Dallas, TX 75229

Consideration:

Ten Dollars ($10.00) and other good and valuable consideration paid to Grantor by Grantee and a note of even date in the principal amount of Two Hundred Seventy Four Thousand Five Hundred and 00/100 Dollars — ($274,500.00) made by Grantee payable to the order of Compass Bank , "Lender" herein, as consideration for the amount paid to Grantor. The note is secured by a vendor's lien retained in favor of Lender in this deed and by a deed of trust of even date from Grantee to Jon Mulkin , Trustee.

Property (including any improvements):

All that certain lot, tract or parcel of land situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468, and being all of the residue of the called 5.753 acre first tract and all of the called 20.00 acre second tract conveyed to Helmuth K. Gutzke and wife, Zackiann Gutzke, by A. D. Ward, a single man, by Warranty Deed with Vendor's Lien dated July 30, 1990, and recorded in Volume 1207 Page 390, of the Van Zandt County Real Records, together with an Easement for Roadway situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468 and being a part of the called 68.78 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 609, of the Van Zandt County Real Records and a part of the called 1.10 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 629, of the Van Zandt County Real Records and said lot, tract and parcel of land being more particularly described

General Warranty Deed with Vendor's Lien

©PattsonPatterson, LLP.-Arlington, Texas 2004-2005

[Doc Id 3479 Rev. 09.21.07]

**RECORD 99**

by metes and bounds in Exhibit "A" attached hereto and made a part hereof.

The above described property also includes any and all of Grantor's right, title, and/or interest in any and all system memberships and/or ownership certificates in any non-municipal water and/or sewer systems now or in the future serving said property.

Reservations from and Exceptions to Conveyance and Warranty:

This conveyance is given and accepted subject to any and all restrictions, reservations, covenants, conditions, rights of way, easements, municipal or other governmental zoning laws, regulations and ordinances, if any, affecting the herein described property.

Grantee herein assumes the taxes for the current year.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty. The vendor's lien (to the extent of the consideration paid by Grantee to Grantor) against and superior title to the property are retained until each note described is fully paid according to its terms, at which time this deed shall become absolute. The vendor's lien and superior title retained in this deed are transferred to Lender, without recourse on Grantor. When the context requires, singular nouns and pronouns include the plural. When executed by a corporation the words "heirs and assigns" shall be construed to mean "Successors and assigns".

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Signature _____ Date _____
**Helmuth K. Gutzke**

Signature _____ Date _____
**Zackiann Gutzke**

[Sign Originals Only]

STATE OF TEXAS
COUNTY OF ___Van Zandt___

The foregoing instrument was acknowledged before me this __16th__ day of __May__, 20__08__ by Helmuth K. Gutzke and Zackiann Gutzke

Notary Public
Printed Name: _Pamala Neal_
My commission expires: _2.15.10_

PAMALA NEAL
Notary Public, State of Texas
My Comm. Expires Feb. 15, 2010

General Warranty Deed with Vendor's Lien

2

©PeirsonPatterson, LLP-Arlington, Texas 2005

Return to:

Tab C

RECORD 100

Exhibit "A"

All that certain lot, tract or parcel of land situated in Van Zandt County, State of Texas, on the M. V. Lout Survey, A-468, and being all of the residue of the called 5.753 acre first tract and all of the called 20.00 acre second tract conveyed to Helmuth K. Gutzke and wife, Zackiann Gutzke, by A. D. Ward, a single man, by Warranty Deed with Vendor's Lien dated July 30, 1990, and recorded in Volume 1207, Page 390, of the Van Zandt County Real Records. Said lot, tract or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a ½" iron rod found for corner at the Southeast corner of the called 20.00 acre second tract, at the Southwest corner of the Arthur C. Werden tract recorded in Volume 2028, Page 309. of the Van Zandt County Real Records, and in the Northeast line of the Thomas M. Lytle 68.78 acre tract recorded in Volume 1771, Page 609, of the Van Zandt County Real Records, from WHENCE a fence corner found bears North 78 degrees 05 minutes 37 seconds West 2.58 feet;

THENCE NORTH 44 degrees 40 minutes 21 seconds West 648.90 feet to a 5/8" iron rod set for corner at the South corner of the Thomas M. Lytle 1.622 acre tract recorded in Volume 2188, Page 463, of the Van Zandt County Real Records;

THENCE NORTH 43 degrees 59 minutes 44 seconds East 105.86 feet to a ½" iron rod found for corner at the East corner of the said 1.622 acre tract;

THENCE NORTH 45 degrees 25 minutes 00 seconds West 668.07 feet to a ½" iron rod found for corner at the North corner of the called 1.622 acre tract, in the original Northwest line of the called 5.753 acre first tract, and in the Southeast line of the Thomas M. Lytle 1.10 acre tract recorded in Volume 1771, Page 629, of the Van Zandt County Real Records;

THENCE NORTH 44 degrees 05 minutes 12 seconds East 1152.76 feet to a railroad spike set for corner in County Road No. 23 19, at the North corner of the called 20.00 acre second tract, from WHENCE a 60d nail found at the East corner of the said Thomas M. Lytle 1.10 acre tract bears North 44 degrees 05 minutes 12 seconds East 2.65 feet and a ½" iron rod found in the South right of way of the said county road bears South 38 degrees 58 minutes 47 seconds West 23.09 feet;

THENCE SOUTH 81 degrees 39 minutes 33 seconds East along the said county road and the North line of the called 20.00 acre second tract, 322.19 feet to a railroad spike set for corner in the South line of the B. W. Ward 106.60 acre first tract recorded in Volume 1654, Page 588, of the Van Zandt County Real Records, at the Northwest corner of the said Arthur C. Werden tract and at the Northeast corner of the called 20.00 acre second tract, from WHENCE a 5/8" iron rod set in the South right of way line of the said county road bears South 08 degrees 20 minutes 49 seconds West 19.00 feet and a 48" Pecan tree found marked X with two hacks above and below the X bears North 62 degrees 57 minutes East 60.40 feet;

THENCE SOUTH 08 degrees 20 minutes 49 seconds West along the East line of the called 20.00 acre second tract and the West line of the said Arthur C. Werden tract 1806.98 feet to the place of beginning and containing 24.020 acres of land.



Tab C

RECORD 101



# AMENDMENT
## TO CONTRACT CONCERNING THE PROPERTY AT

1601 VZCR ___ Canton Tx

(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box)

☐ (1) The Sales Price in Paragraph 3 of the contract is:
   A. Cash portion of Sales Price payable by Buyer at closing ........... $ _____
   B. Sum of financing described in the contract ........... $ _____
   C. Sales Price (Sum of A and B) ........... $ 305,000.00

☒ (2) In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments:

See Exhibit A

☐ (3) The date in Paragraph 9 of the contract is changed to _____, 20___.

☐ (4) The amount in Paragraph 12A(1)(b) of the contract is changed to $ _____.

☐ (5) The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $ _____ by Seller; $ _____ by Buyer.

☐ (6) Buyer has paid Seller an additional non-refundable Option Fee of $ _____ for an extension of the unrestricted right to terminate the contract on or before _____, 20___. This additional Option Fee ☐ will ☐ will not be credited to the Sales Price.

☒ (7) Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.

☐ (8) The date for Buyer to give written notice to Seller that Buyer cannot obtain financing approval as set forth in the Third Party Financing Condition Addendum is changed to _____, 20___.

☒ (9) Other Modifications: (Insert only factual statements and business details applicable to this sale.)
A. Seller to pay $2000.00 toward Buyer's closing costs.
B. David C. Petrula to be added to contract as Buyer.
C. Leak in master bath or commode (toilet) to be repaired.

EXECUTED the 24th day of April, 20 08 (BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE).

_____   _____
Buyer                      Seller

_____   _____
Buyer                      Seller

[certified copy / clerk district court seal]

RECORD 102

## Exhibit "A"

Closing is conditioned upon conveyance of easement acceptable to buyers allowing access to said property from private driveway owned by Mr. Lytle.

If acceptable easement is not granted, earnest money is to be fully refunded without penalty to the buyer. The cost of the easement, which is to be conveyed to seller, buyer, and their assigns, is to be paid for by the seller.



April 24, 2008.



CERTIFIED COPY — CLERK DISTRICT COURT, VAN ZANDT, TEXAS

**RECORD 103**

# AMENDMENT
## TO CONTRACT CONCERNING THE PROPERTY AT

_1601 VZ CR 2319    Canton, Tx.    75103_
(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box).

☐ (1) The Sales Price in Paragraph 3 of the contract is:
   A. Cash portion of Sales Price payable by Buyer at closing ..........................$ _____
   B. Sum of financing described in the contract...................................$ _____
   C. Sales Price (Sum of A and B) ................................................$ _____

☐ (2) In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments:



☐ (3) The date in Paragraph 9 of the contract is changed to _____, 20_____.

☐ (4) The amount in Paragraph 12A(1)(b) of the contract is changed to $ _____.

☐ (5) The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $ _____ by Seller; $ _____ by Buyer.

☐ (6) Buyer has paid Seller an additional Option Fee of $ _____ for an extension of the unrestricted right to terminate the contract on or before _____, 20_____. This additional Option Fee ☐ will ☐ will not be credited to the Sales Price.

☐ (7) Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.

☐ (8) The date for Buyer to give written notice to Seller that Buyer cannot obtain Financing Approval as set forth in the Third Party Financing Condition Addendum is changed to _____, 20_____.

☒ (9) Other Modifications: (Insert only factual statements and business details applicable to this sale.)

A SELLER and BUYER AGREE TO WAIVE the condition of the CONTRACT RELATING TO OBTAINING AN EASEMENT FROM THOMAS M and ELLEN LYTLE.

B. SELLER and BUYER agree to NOT DISCLOSE SALES PRICE IN MLS.

EXECUTED the _16ᵗʰ_ day of _May_, 20_08_. (BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

_____          _____
Buyer                             Seller

_____          _____
Buyer                             Seller

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544 (http://www.trec.state.tx.us) TREC No. 39-6. This form replaces TREC No. 39-5.

Tab E

RECORD 104

# ELLIOTT & WALDRON ABSTRACT & TITLE COMPANY
## OF CANTON, TEXAS

OWNED BY
A.A.A. ABSTRACT COMPANIES, INC,
681 W. DALLAS, P.O. BOX 760
CANTON, TEXAS 75103
_____
TELEPHONE (903) 567-4127
FAX (903) 567-1757

April 10, 2008

Briggs Freeman
Attn: Doug Shelton
5600 W. Lovers, Ste. 225
Dallas, Texas 75209

RE: GF# 080258
Buyer: David and Sandra Petruska / Seller: Helmuth and Zackiann Gutzke

Dear Mr. Shelton:

Enclosed are the following:

[X] **Commitment**
[X] **Privacy Policy Notice**

Please carefully review the requirements on Schedule C of the Commitment. We can not close or issue a policy until all requirements have been met.

Your file will be professionally handled in our office by Pamala Neal, Closer.

We look forward to working with you. If you have any questions at this time, please do not hesitate to call.

Sincerely,

**ELLIOTT & WALDRON ABSTRACT
& TITLE COMPANY OF CANTON**

Lisa Overton
Examiner

LO/cw

Tab F




CERTIFIED COPY

**RECORD 105**

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE A

Effective Date:  April 9, 2008,  7:00 am                                    G.F. No. or File No.  080258

Commitment No. _____ issued:  April 10, 2008,  7:00 am
(if applicable)

1.   The policy or policies to be issued are:

   (a)   OWNER POLICY OF TITLE INSURANCE (Form T-1)
      (Not applicable for improved one-to-four family residential real estate)
      Policy Amount:
      PROPOSED INSURED:

   (b)   TEXAS RESIDENTIAL OWNER POLICY OF TITLE INSURANCE -
      ONE-TO-FOUR FAMILY RESIDENCES (Form T-1R)
      Policy Amount:           **$305,000.00**
      PROPOSED INSURED:   **David C. Petruska and Sandra L. Petruska**

   (c)   MORTGAGEE POLICY OF TITLE INSURANCE (Form T-2)
      Policy Amount:           **$274,500.00**
      PROPOSED INSURED:   **To Be Determined**
      Proposed Borrower:    **David C. Petruska and Sandra L. Petruska**

   (d)   TEXAS SHORT FORM RESIDENTIAL MORTGAGEE POLICY OF TITLE INSURANCE (Form T-2R)
      Policy Amount:
      PROPOSED INSURED:
      Proposed Borrower:

   (e)   MORTGAGEE TITLE POLICY BINDER ON INTERIM CONSTRUCTION LOAN (Form T-13)
      Binder Amount:
      PROPOSED INSURED:
      Proposed Borrower:

   (f)   OTHER
      Policy Amount:
      PROPOSED INSURED:

2.   The interest in the land covered by this Commitment is:  Fee Simple Estate

3.   Record title to the land on the Effective Date appears to be vested in:
Helmuth K. Gutzke and wife, Zackiann Gutzke

4.   Legal description of the land:
22 ACRES, MORE OR LESS, TO BE SURVEYED OUT OF THE FOLLOWING:

### FIRST TRACT:

   All that certain lot, tract or parcel of land situated in Van Zandt County, Texas, on the M. V. LOUT SURVEY, A-468, and being a part of the 91.65 acre tract conveyed to Clota Mae Shelton by Bettie Joan Westberry by deed recorded in Volume 720, Page 453, of the Van Zandt County Deed Records. Said lot, tract or parcel of land being more particularly described by metes and bounds as follows:

   BEGINNING at an iron pin in the Southwest line of the 91.65 acre tract, South 45 degrees 03 minutes East 30.00 feet from the West corner of same and being the South corner of the Second Tract recorded in Volume 695, page 159, of the Van Zandt County Deed Records;

   THENCE North 44 degrees 34 minutes East 831.10 feet to an iron pin at the West Northwest corner of a 20.00 acre tract surveyed this date in the Southeast line of the Second Tract; WITNESS: 16' Post Oak North 20 degrees East 76.3 feet, 18" Post Oak North 40 degrees West 30.9 feet;

   THENCE South 8 degrees 44 minutes West 1030.23 feet to an iron pin at the Southwest corner of the 20 acre tract in the southwest line of the 91.65 acre tract;

Old Republic National Title Insurance Company

Tab F

**RECORD 106**

# WARNING!        WARNING!

## DO NOT USE LEGAL DESCRIPTION ON TITLE COMMITMENT FOR YOUR DOCUMENTS IF A NEW SURVEY HAS BEEN REQUIRED!!!

*THIS TITLE COMMITMENT HAS BEEN PREPARED WITHOUT RECEIPT OF NEW SURVEY.*

*THIS LEGAL DESCRIPTION WILL NOT MATCH THE NEW SURVEY.*

*UPON RECEIPT OF NEW SURVEY, TITLE COMMITMENT WILL BE AMENDED.*

*WE WILL NOT BE RESPONSIBLE FOR DOCUMENTS DRAWN USING THIS LEGAL DESCRIPTION!!!*

*IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT OUR OFFICE.*

Tab F



**RECORD 107**

THENCE North 45 degrees 03 minutes West 603.14 feet to the place of beginning and containing 5.753 acres of land.

Being Tract One in Warranty Deed with Vendor's Lien dated July 30, 1990 from A. D. Ward, a single man to Helmuth K. Gutzke and wife, Zackiann Gutzke, recorded in Volume 1207, Page 393, Real Records of Van Zandt County, Texas.

### LESS AND EXCEPT:

BEING a 1.622 acre tract and being all that certain lot, tractor parcel of land situated in the M.V. Lout Survey, Abstract No. 468, Van Zandt County, Texas, and being part of a called 5.753 acre tract and part of a called 20.00 acre tract described as First Tract and Second Tract, respectively in a deed from A.D. Ward to Helmuth K. Gutzke and wife, Zackiann Gutzke as recorded in Volume 1207, Page 390, Van Zandt County Real Records, and being more particularly described as follows:

BEGINNING at a 1/2 inch iron rod found at the west corner of said 5.753 acre tract and at an inside corner of a called 1.10 acre tract described in a deed to Lytle as recorded in Volume 1771, Page 629, V.Z.C.R.R., for a corner;

THENCE N 46°49'34" E the northwest line of said 5.753 acre tract and an East line of said 1.10 acre tract a distance of 105.78 feet to a 1/2 inch iron rod set for a corner;

THENCE S 42°39'17" E across said 5.753 and into said 20.00 acre tract a distance of 668.07 feet to a 1/2 inch iron rod set for a corner;

THENCE S 46°49'34" W a distance of 105.78 feet to a 1/2 inch iron rod set on the southwest line of said 20.00 acre tract for a corner, said point being on the northeast line of a called 35.02 acre tract described as Tract Two in a deed to Hadley as recorded in Volume 1583, Page 192, V.ZC.R.R.;

THENCE N 42°39'17" W along the southwest line of said 20.00 acre tract and said 5.753 acre tract and the northeast line of said 35.02 acre tract and an east line of said 1.10 acre tract passing the west corner of said 20.00 acre tract and the south corner of said 5.753 acre tract at a distance of 64.16 feet and passing a 1/2 inch iron rod found at the east corner of said 1.10 acre tract at a distance of 357.98 feet and continuing a total distance of 668.07 feet to the POINT OF BEGINNING and containing 1.622 acres of land.

Being the same land in General Warranty Deed dated October 27, 2006 from Helmuth Gutzke and Zackiann Gutzke to Thomas M. Lytle and Ellen G. Lytle, recorded in Volume 2188, Page 463, Real Records of Van Zandt County, Texas.

### SECOND TRACT:

All that certain lot, tract or parcel of land situated in Van Zandt County, Texas, on the H. V. LOUT SURVEY, A-468, and being a part of the 91.65 acre tract conveyed to Clota Mae Shelton by Bettie Joan Westberry by deed recorded in Volume 720, Page 453 of the Van Zandt County Deed Records. Said lot, tract or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a point in the North line of the 91.65 acre tract in the middle of a county road, North 81 degrees 16 minutes West 788.75 feet from the Northeast corner of same and at the Northwest corner of a 20.00 acre tract surveyed this date; WITNESS:    Iron pin in fence, South 8 degrees 44 minutes West 19.00 feet, 26" Pecan North 62 degrees 57 minutes East 60.40 feet;

Old Republic National Title Insurance Company

Tab F




**RECORD 108**

THENCE South 8 degrees 44 minutes West 1804.58 feet to an iron pin in the Southwest line of the 91.65 acre tract at the Southwest corner of the 20 acre tract;

THENCE North 45 degrees 03 minutes West 712.47 feet to an iron pin in the Southwest line of the 91.65 acre tract at the South corner of a 5.753 acre tract surveyed this date;

THENCE North 8 degrees 44 minutes East 1030.23 feet to an iron pin in the Southeast line of the Tract No. 2 recorded in Volume 695, page 159; WITNESS: 16" Post Oak North 20 degrees East 76.3 feet, 18" Post Oak North 40 degrees West 30.9 feet;

THENCE North 44 degrees 34 minutes East 435.90 feet to an iron pin at the Northeast corner of the Second tract in the North line of the 91.65 acre tract; WITNESS: Iron pin for corner, South 44 degrees 34 minutes West 24.5 feet;

THENCE South 81 degrees 16 minutes East 319.61 feet to the place of beginning and containing 20.00 acres of land of which 0.146 acres lies within a county road, leaving a net of 19.854 acres.

Being Tract Two in Warranty Deed with Vendor's Lien dated July 30, 1990 from A. D. Ward, a single man to Helmuth K. Gutzke and wife, Zackiann Gutzke, recorded in Volume 1207, Page 393, Real Records of Van Zandt County, Texas.

NOTE: The Company is prohibited from insuring the area or quantity of the land described herein. Any statement in the above legal description of the area or quantity of land is not a representation that such area or quantity is correct, but is made only for informational and/or identification purposes and does not override Item 2 of Schedule B hereof.

Old Republic National Title Insurance Company

Tab F



CERTIFIED COPY

**RECORD 109**

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE B

### EXCEPTIONS FROM COVERAGE

In addition to the Exclusions and Conditions and Stipulations, your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from:

1. ~~The following restrictive covenants of record itemized below (We must either insert specific recording data or delete this exception):~~

2. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

3. Homestead or community property or survivorship rights, if any, of any spouse of any insured. (Applies to the Owner Policy only).

4. Any titles or rights asserted by anyone, including, but not limited to, persons, the public, corporations, governments or other entities,

   a. to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or

   b. to lands beyond the line of harbor or bulkhead lines as established or changed by any government, or

   c. to filled-in lands, or artificial islands, or

   d. to statutory water rights, including riparian rights, or

   e. to the area extending from the line of mean low tide to the line of vegetation, or the rights of access to that area or easement along and across that area.

   (Applies to the Owner Policy only.)

5. Standby fees, taxes and assessments by any taxing authority for the year 2008, and subsequent years; and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, *Texas Tax Code*, or because of improvements not assessed for a previous tax year. (If Texas Short Form Residential Mortgagee Policy (T-2R) is issued, that policy will substitute "which become due and payable subsequent to Date of Policy" in lieu of "for the year _____ and subsequent years.")

6. The terms and conditions of the documents creating your interest in the land.

7. Materials furnished or labor performed in connection with planned construction before signing and delivering the lien document described in Schedule A, if the land is part of the homestead of the owner. (Applies to the Mortgagee Title Policy Binder on Interim Construction Loan only, and may be deleted if satisfactory evidence is furnished to us before a binder is issued.)

8. Liens and leases that affect the title to the land, but that are subordinate to the lien of the insured mortgage. (Applies to Mortgagee Policy (T-2) only.)

9. The Exceptions from Coverage and Express Insurance in Schedule B of the Texas Short Form Residential Mortgagee Policy (T-2R). (Applies to Texas Short Form Residential Mortgagee Policy (T-2R) only. Separate exceptions 1 through 8 of this Schedule B do not apply to the Texas Short Form Residential Mortgagee Policy (T-2R).

Old Republic National Title Insurance Company

Tab F

RECORD 110

Continuation of Schedule B                                G.F. No. 080258

10.  The following matters and all terms of the documents creating or offering evidence of the matters (We must insert matters or delete this exception.):



a.  Easements or claims of easements which may or may not be recorded in the public records of Van Zandt, County, Texas.

b.  Any portion of subject property lying within the boundaries of a public or private roadway whether dedicated or not.

c.  There is expressly excluded from coverage hereunder, and this company does not insure title to oil, gas and other minerals of every kind and character, in, and on and under the property herein described.



d.  Right of Way in certified copy of Judgment to DELHI GAS PIPELINE CO. from CLOTA MAE SHELTON in instrument dated August 3, 1972, recorded in Volume 783, Page 749, of the DEED Records of Van Zandt County, Texas.

e.  Item 3b of any T-19 issued will be deleted.

f.  Rights of parties in possession. (Owner's Policy Only)

g.  Terms, conditions and stipulations as will be set out in Warranty Deed from Seller to Buyer given in connection herewith.

h.  Protrusion(s), encroachment(s), easement(s) as shown on any plat that may be furnished by approved surveyor in connection with this transaction.

Old Republic National Title Insurance Company

Tab F



RECORD 111

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE C

Your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from the following requirements that will appear as Exceptions in Schedule B of the Policy, unless you dispose of these matters to our satisfaction, before the date the Policy is issued:

1.   Documents creating your title or interest must be approved by us and must be signed, notarized and filed for record.

2.   Satisfactory evidence must be provided that:

   a.   no person occupying the land claims any interest in that land against the persons named in paragraph 3 of Schedule A,

   b.   all standby fees, taxes, assessments and charges against the property have been paid,

   c.   all improvements or repairs to the property are completed and accepted by the owner, and that all contractors, subcontractors, laborers and suppliers have been fully paid, and that no mechanic's, laborer's or materialmen's liens have attached to the property,

   d.   there is legal right of access to and from the land,

   e.   (on a Mortgagee Policy only) restrictions have not been and will not be violated that affect the validity and priority of the insured mortgage.

3.   You must pay the seller or borrower the agreed amount for your property or interest.

4.   Any defect, lien or other matter that may affect title to the land or interest insured, that arises or is filed after the effective date of this Commitment.

5.   Payment of any and all taxes now due and payable up to and including the year 2007.

6.   We require "GOOD FUNDS" in accordance with Procedural Rule P-27 which requires that "Good Funds" be received and deposited before a Title Agent may disburse from its trust fund account. "Good Funds" means: 1) Cash or wire transfers; 2) Certified Checks, Cashier's Checks and Teller's Checks; 3) Uncertified funds in amounts less that $1,500.00 including checks, traveler's checks, money orders and negotiable orders of withdrawal; provided multiple items shall not be used to avoid the $1,500.00 limitation; 4) Uncertified funds in the amount of $1,500.00 or more, drafts and any other items when collected by the financial institution; 5) State of Texas Warrants; 6) United States Treasury Checks; 7) Checks drawn on a bank of savings and loan association, insured by the FDIC or FSLIC and for which a transaction code has been issued pursuant to, and in compliance with, a fully executed Immediately Available Fund Procedure Agreement (Form T-37) with such bank or savings and loan association; 8) Checks by city and county governments located in the State of Texas.

7.   We require an Affidavit of Debts and Liens to be signed by the Seller.

8.   We require a Waiver of Inspection to be signed by the Purchaser.

9.   We require a release of Deed of Trust dated August 18, 2003 from HELMUTH K. GUTZKE AND WIFE, ZACKIANN GUTZKE to DENNIS P. SCHWARTZ, Trustee, securing a note for $77,000.00, payable to FIRST NATIONAL BANK OF CANTON, recorded in Volume 1851, Page 283 of the REAL Records of Van Zandt County, Texas.

10.   We require a Warranty Deed from HELMUTH K. GUTZKE AND WIFE, ZACKIANN GUTZKE to DAVID C. PETRUSKA AND SANDRA L. PETRUSKA, with vendor's lien retained in favor of LENDER, representing part of the purchase price and being in the amount of $274,500.00.

11.   We require a Deed of Trust and Note in the amount of $274,500.00 from DAVID C. PETRUSKA AND WIFE, SANDRA L. PETRUSKA to Trustee, for the benefit of LENDER.

Old Republic National Title Insurance Company

Tab F

RECORD 112

12.     We require a Survey according to terms and conditions set forth in the contract and to determine exact size and location of subject property.

13.     If closing in our office, we require all closing documents and figures be in our office at least 24 hours prior to closing, or closing date and time will be changed.

Countersigned
Elliott & Waldron Abstract & Title Company of Canton

By _____
Authorized Counter Signature

Old Republic National Title Insurance Company

Tab F




RECORD 113

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE D

G.F. No. or File No. 080258                              Effective Date: April 9, 2008,  7:00 am

Pursuant to the requirements of Rule P-21, Basic Manual of Rules, Rates and Forms for the writing of Title Insurance in the State of Texas, the following disclosures are made:

1.   The following individuals are directors and/or officers, as indicated, of the Title Insurance Company issuing this Commitment

### DIRECTORS OF OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

| | | |
|---|---|---|
| HARRINGTON BISCHOF | JOHN M. DOXON | STEVE R. WALKER |
| JOHN W. POPP | ARNOLD L. STEINER | A.C. ZUCARO |

### OFFICERS OF OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

RANDE E. YEAGER, President & Chief Operating Officer      STEPHEN C. WILSON, Executive Vice President
GARY J. HORN, Senior Vice President & CFO                DANIEL M. WOLD, Vice President, Secretary & Senior
MIKE TARPEY, Vice President and Treasurer                Corporate Counsel

2.                              TITLE INSURANCE AGENCY

OFFICERS:                                    DIRECTORS & SHAREHOLDERS:
Ivan Alexander, Jr., Pres.                   Ivan Alexander, Jr.
Constance H. Alexander, VP                   Constance H. Alexander
George Ivan Alexander, VP                    George Ivan Alexander
Philip DeWitt Alexander, Sec. & Tres.        Philip DeWitt Alexander
                                             Lisa Alexandria Mitchell

3      You are entitled to receive advance disclosure of settlement charges in connection with the proposed transaction to which this commitment relates.  Upon your request, such disclosure will be made to you. Additionally, the name of any person, firm or corporation receiving any sum from the settlement of this transaction will be disclosed on the closing or settlement statement.

You are further advised that the estimated title premium* is:

| | |
|---|---|
| Owners Policy | $1,938.00 |
| Mortgagee Policy | $100.00 |
| Total | $2,038.00 |

Of this total amount: 15% will be paid to the policy issuing Title Insurance Company: 85% will be retained by the issuing Title Insurance Agent; and the remainder of the estimated premium will be paid to other parties as follows:

Amount                    To Whom                              For Services

*The estimated premium is based upon information furnished to us as of the date of this Commitment for Title Insurance. Final determination of the amount of the premium will be made at closing in accordance with the Rules and Regulations adopted by the State Board of Insurance.

This commitment is invalid unless the insuring provisions and Schedules A, B, and C are attached

Old Republic National Title Insurance Company                                                      Page 1

Tab F



RECORD 114

 

# DUNN AND DUNN, PC ATTORNEYS AND COUNSELORS AT LAW

171 S. BUFFALO ST. CANTON, TEXAS 75103   PHONE (903) 567-1111   FAX (903) 567-5101
MATTHEW L. DUNN     EMILY DUNN

February 28, 2014

Mr. and Mrs. David Petruska
11264 Russwood Circle
Dallas, Texas 75229

**Re: Easement situated in Van Zandt County, Texas**

Mr. and Mrs. Petruska:

    This firm has been retained by Mr. and Mrs. Tom Lytle concerning the recent dispute regarding use of their driveway. While my clients have graciously permitted you to utilize their driveway with the understanding that you would be building your own soon, no easement was ever filed and recorded in the real property records of Van Zandt County regarding your use of this property. All parties were aware that no easement existed at the time of your purchase, as both of you requested that my clients sign an easement prior to your closing date. Mr. and Mrs. Lytle did not sign an easement at that time, nor have they executed anything resembling an easement since.

    The deed executed for the purchase of your land and filed on May 20, 2008 contains language reference "an Easement for Roadway"; thus causing a cloud on the title of my client's land. I am requesting that you execute the enclosed release stating that there is no easement. If I do no receive a properly executed release within 30 days from the date of this letter, I am prepared to litigate this matter.

    Thank you for your time and consideration of this matter. If you have any questions, please do not hesitate to contact my office at (903) 567-1111.

                             Sincerely,

                             Emily Jones Dunn

EJD/hj
Enclosure
CC:   Compass Bank (CMRRR)
      401 West Valley Avenue
      Homewood, Alabama 35209

      Marie Yamane (CMRRR)
      Compass Bank
      401 West Valley Avenue
      Homewood, Alabama 35209



RECORD 115

Petruska & Associates (CMRRR)
5944 Luther Lane, Suite 450
Dallas, Texas 75225-5978

Mrs. Petruska (CMRRR)
Briggs Freeman Sotheby's
5600 West Lovers Lane, Suite 224
Dallas, TX 75209

Tab G



**RECORD 116**



PETRUSKA
&
ASSOCIATES

A
PROFESSIONAL
LIMITED LIABILITY
COMPANY

5944 Luther Lane
Suite 450
Dallas, Texas 75225

Phone: 214.353.0141
Cell: 214.762.4611
E-mail:
David.Petruska@sbcglobal.net
Fax: 214.361.3935

March 26, 2014

Emily Jones Dunn, Esq.
Dunn and Dunn, PC
171 S. Buffalo Street
Canton, Texas 75103

**CERTIFIED MAIL NO. 7012 2920 0002 2647 4268**
**RETURN RECEIPT REQUESTED**

Dear Ms. Dunn:

Enclosed herewith please find the document you requested which you say will remove the cloud from the Lytle's title. We are signing this even though we believe and have been advised by others that we have a valid easement conveyed by the sellers to us. Having said that, life is too short to deal with petty matters.

As you may know we commenced work on a separate entrance to our home before we received your letter of February 28th. You may check with Commissioner Melton regarding the date. Said entrance is now completed.

We ask that you please instruct the Lytle's to refrain from screaming obscenities at us and threatening our property by yelling that they will be there when we are not.

We hope this puts the matter to rest.

Very truly yours,

Tab H



**RECORD 117**

## RELEASE OF EASEMENT

On **March 26th**, 2014, we, David C. Petruska and wife, Sandra L. Petruska, hereby release the easement that is listed in the one certain General Warranty Deed with Vendor's Lien of record dated May 16, 2008 from Helmuth K. Gutzke and wife, Zackiann Gutzke to David C. Petruska and wife, Sandra L. Petruska and being recorded in Van Zandt County under Document Number: 2008-004602.

_____
DAVID C. PETRUSKA

_____
SANDRA L. PETRUSKA

This instrument was acknowledged before me **Randall Willbanks** on by DAVID C. PETRUSKA.



RANDALL SCOTT WILLBANKS
My Commission Expires
October 1, 2016

_____
Notary Public, State of Texas

This instrument was acknowledged before me **Randall Willbanks** on by SANDRA L. PETRUSKA.



RANDALL SCOTT WILLBANKS
My Commission Expires
October 1, 2016

_____
Notary Public, State of Texas



Tab H

**RECORD 118**

214-696-8208

①

(Old Martins Mill-Mabank Rd.)
County Road 2319

S61°16'E
49.34'

J. BODEN A-36

N46°34'E  436.90'  40' Rd. Esmt.
0.70 AC.
S44°34'W  449.60'
Private Road

M. V. LOUT A-468

Helmuth K. Gutzke et ux Kackleen
Residue 20.00 AC.
2nd Tract
1207/390

N3°00'E  335.64'

S3°00'W  320.46'

Power
Pole

Barn    Corral
Power
Pole

40'    Set 60 d nail
30'
Set 1/2"  Water
L. Rod   Well

S87°00'E  417.42'

N3°00'E  208.71'

Helmuth K. Gutzke
et ux Kackleen Gutzke
0.765 AC.
1st Tract
1207/390

2.143 AC.

S3°00'W  206.71'

N87°00'W  447.52'

Revised 5-9-97

SCALE - 1" = 100'

I, Jack L. Ward, R.P.L.S. No. 1496, declare that the plat shown hereon represents the results of an on the ground survey made under my direction and supervision on March 6, 1996 and this survey complies with the Texas Board of Professional Land Surveyors Standards effective September, 1993.

USE OF THIS SURVEY FOR ANY OTHER PURPOSE OR BY OTHER PARTIES SHALL BE AT THEIR OWN RISK AND THE UNDERSIGNED SURVEYOR IS NOT RESPONSIBLE FOR ANY LOSS RESULTING THEREFROM.

JACK L. WARD, REGISTERED PROFESSIONAL LAND SURVEYOR NO. 1496

SURVEY - M. V. LOUT A-468

DESCRIPTION - PART 2ND TRACT 1207/390

COUNTY - VAN ZANDT

SURVEY FOR - RIK GUTZKE

JACK L. WARD
Registered Professional Land Surveyor No. 1496
P. O. Box 1496, Athens, Texas 75751
Phone (903) 675-9519

Tab I

RECORD 119



Tab J

**RECORD 120**



Tab J

**RECORD 121**

No. 14-00172

| | | |
|---|---|---|
| THOMAS LYTLE and | § | |
| ELLEN LYTLE | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | |
| | § | |
| DAVID C. PETRUSKA, SANDRA | § | 294TH JUDICIAL DISTRICT |
| L. PETRUSKA, COMPASS BANK, | § | |
| HELMUTH K. GUTZKE, and | § | |
| ZACKIANN GUTZKE | § | VAN ZANDT COUNTY, TEXAS |

### THOMAS AND ELLEN LYTLE'S OBJECTIONS AND RESPONSES TO DAVID C. AND SANDRA L. PETRUSKA'S FIRST REQUEST FOR ADMISSION TO THOMAS AND ELLEN LYTLE

TO:    Defendant David C. Petruska and Sandra L. Petruska, by and through counsel, Pezzulli Barnes, LLP, 17300 Preston Road, Suite 220, Dallas, TX 75252.

Come now, Plaintiffs, Thomas Lytle and Ellen Lytle, and pursuant to Tex. R. Civ. Proc. 198, serve their responses to the *David C. and Sandra L. Petruska's First Request for Admissions to Thomas and Ellen Lytle.*

**Request for Admission No. 1**: Please admit that David Petruska and Sandra Petruska signed the Release of Easement attached here at Tab 1 on or about March 26, 2014.

**Response**: Admitted

**Request for Admission No. 2**: Please admit that Thomas Lytle, Ellen Lytle, or one of their attorneys or other agents recorded the Release of Easement at Tab 1 here, in the public records for Van Zandt County before July 1, 2014.

**Response**: Admitted

**Request for Admission No. 3**: Please admit that David Petruska and Sandra Petruska had a new driveway from County Road 2319 to the house on their property at 1601 Van Zandt County Road built before July 1, 2014.

**Response**: Plaintiffs admit that David Petruska and Sandra Petruska had a new driveway from County Road 2319 to the house on their property at 1601 Van Zandt County Road built, but Plaintiffs are unable to recall whether the driveway was completed before or after July 1, 2014.

THOMAS AND ELLEN LYTLE'S OBJECTIONS AND RESPONSES TO
DAVID C. AND SANDRA L. PETRUSKA'S FIRST REQUEST FOR ADMISSION TO THOMAS AND ELLEN
LYTLE  Page 1
\\bdnt-fs1\wpprolaw\3191.002\263246.docx

Tab 3

RECORD 122

Respectfully submitted,

**BELLINGER & SUBERG, L.L.P.**

By: _____

BARBARA L. EMERSON
Texas State Bar No. 06599400
10,000 N. Central Expy, Suite 900
Dallas, Texas 75231
Telephone: 214/954-9540
Facsimile: 214/954-9541
bemerson@bd-law.com

**ATTORNEY FOR PLAINTIFFS,**
**THOMAS LYTLE AND ELLEN LYTLE**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of foregoing has been forwarded to all counsel via eservice, email and certified mail, return receipt requested on the 6th day of November, 2014 as provided below.

William P. Huttenbach
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, TX 77002-2728
(713) 220-9184 Telephone
phuttenbach@hirschwest.com

Michael F. Pezzulli
M. Ellen Skinner
Christopher L. Barnes
Pezzulli Barnes, LLP
17300 Preston Road, Suite 220
Dallas, TX 75252-5476
(972) 713-1300 Telephone
michael@courtroom.com
Ellen@courtroom.com
Chris@courtroom.com

Ralph E. Allen
Attorney and Counselor at Law
100 East Ferguson, Suite 901
Tyler, Texas 75702
(903) 593-9727 Telephone
rallen@tyler.net

_____
Barbara L. Emerson

THOMAS AND ELLEN LYTLE'S OBJECTIONS AND RESPONSES TO
DAVID C. AND SANDRA L. PETRUSKA'S FIRST REQUEST FOR ADMISSION TO THOMAS AND ELLEN
LYTLE Page 2
\\bdnt-fs1\wpprolaw\3191.002\263246.docx

I certify this to be a true and exact copy of the original on file in the District Clerk's Office, Van Zandt County, Texas.

By _____
DEPUTY CLERK

RECORD 123

Filed 2/12/2015 11:41:54 AM
Karen L. Wilson
District Clerk
Van Zandt County, Texas
Malisa Chaney

Holly Spindle

CAUSE NO. 14-00172

| THOMAS LYTLE AND ELLEN LYTLE | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| v. | § | |
| | § | |
| DAVID C. PETRUSKA, SANDRA L. | § | 294TH JUDICIAL DISTRICT |
| PETRUSKA, COMPASS BANK, | § | |
| HELMUTH K. GUTZKE AND | § | |
| ZACKIANN GUTZKE | § | VAN ZANDT COUNTY, TEXAS |

## PLAINTIFFS' FIRST AMENDED PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COME** Thomas Lytle and Ellen Lytle, hereinafter called Plaintiffs, and file Plaintiffs' First Amended Petition, complaining of and about David C. Petruska, Sandra L. Petruska, Helmuth K. Gutzke, and Zackiann Gutzke, hereinafter called Defendants, and for cause of action would show unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.      Plaintiffs intend that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

2.      Plaintiff, Thomas Lytle, is an individual whose address is 1603 Van Zandt County Road 2319, Canton, Texas 75103.

3.      Plaintiff, Ellen Lytle, is an individual whose address is 1603 Van Zandt County Road 2319, Canton, Texas 75103.

4.      Defendant David C. Petruska has appeared in this case and no service of process is necessary at this time.

5.      Defendant Sandra L. Petruska has appeared in this case and no service of process is necessary at this time.

PLAINTIFFS' FIRST AMENDED PETITION
\\Bdnt-fs1\wpprolaw\3191.002\267954.docx



I certify this to be a true and exact copy of the original on file in the District Clerk's office.

RECORD 124

6.    Defendant Helmuth K. Gutzke has appeared in this case and no service of process is necessary at this time.

7.    Defendant Zackiann Gutzke has appeared in this case and no service of process is necessary at this time.

## JURISDICTION AND VENUE

8.    The court has jurisdiction over this action to quiet title pursuant to Article V, Section 8 of the Texas Constitution and Section 26.043(8) of the Texas Government Code.

9.    Venue in Van Zandt County is proper in this cause under Section 15.011 of the Texas Civil Practice and Remedies Code because this action involves real property located in Van Zandt County.

10.    The damages sought herein are within the jurisdictional limits of this Court.

11.    This suit seeks monetary relief of $100,000 or less and non-monetary relief.

## FACTS

12.    This is an action to quiet title on real property, hereafter referred to as "the Property", and for damages for a fraudulent claim filed against real property in violation of Texas Civ. Prac. & Rem. Code § 12.002. The Property is described as follows:

> Roadway situated in Van Zandt County, State of Texas, on the M.V. Lout Survey, A-468 and being a part of the called 68.78 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 609, of the Van Zandt County Real Records and a part of the called 1.10 acre tract conveyed to Thomas M. Lytle and Ellen Lytle, by Ricky Lee Hadley, by General Warranty Deed recorded in Volume 1771, Page 629, of the Van Zandt County Real Records.

13.    Plaintiffs are the rightful owners, entitled to possession of the Property by virtue of General Warranty Deeds recorded in Volume 1771, Page 609 and Volume 1775, Page 629 in Real Property Records of Van Zandt County, Texas.

RECORD 125

14. On May 16, 2008, Plaintiffs were wrongfully dispossessed of the Property when a General Warranty Deed with Vendor's Lien was executed by Helmuth K. Gutzke and Zackiann Gutzke (collectively, "**Gutzke**") purporting to convey to David C. Petruska and Sandra L. Petruska (collectively, "**Petruska**") an easement on the Property (the "**Deed**"). Said easement never existed and was never granted by the Plaintiffs or their predecessors-in-interest.

15. The Deed was filed of record May 20, 2008, as Document No. 2008-004602 in the Real Property Records of Van Zandt County, Texas.

16. On May 16, 2008, Plaintiffs were further wrongfully dispossessed of the Property when Petruska executed a Deed of Trust which purported to convey the easement for the benefit of Compass Bank. That Deed of Trust was filed of record May 20, 2008 as Document No. 2008-004603 in the Real Property Records of Van Zandt County, Texas.

17. Defendants Petruska purport to have an adverse claim or interest in the Property that operates as a cloud on Plaintiffs' title to the Property and through pleadings before this Court continue to assert that on May 16, 2008 they acquired an interest in the Property. The nature of the interest asserted by Petruska in the Property is an easement on Plaintiff's Property.

18. The claim or interest purportedly conveyed to Petruska is invalid, unenforceable or without right against Plaintiffs because no easement ever existed. Gutzke did not have any easement or rights to convey. The Deed of Trust signed by Petruska lists an easement that never existed and was never granted. In order for Plaintiffs to enjoy title to the Property, the adverse estate or interest claimed and still claimed by Petruska and as set forth in the Deed and Deed of Trust must be removed.



RECORD 126

19. At the time of the conveyance from the Defendants Gutzke to Defendants Petruska, all parties to the transaction knew no such easement existed and knowingly created a false and fraudulent interest in the Property of Plaintiffs.

20. At the time of the conveyance in the Deed of Trust for the benefit of Defendant Compass Bank, Petruska knew no such easement existed and knowingly created a false and fraudulent interest in the Property of Plaintiffs.

21. In executing and causing to have the Deed and the Deed of Trust to be filed, Defendants knowingly participated in creating a false claim in the Property with the intent to cause Plaintiffs financial injury by imposing burdens and encumbrances on the real property of Plaintiffs.

22. Any claim that an easement in the Property existed at any time is invalid and unenforceable. In order for Plaintiffs to enjoy title to the Property, any claim that an easement existed or was conveyed by the Deed and Deed of Trust must be removed and declared null and void.

23. Petruska has taken actions to assert his rights to the easement, including coming onto Plaintiffs' property and threatening Plaintiff Thomas Lytle with an assault rifle, and continuing to assert an easement existed in his pleadings before this Court. Plaintiffs have been forced to retain an attorney who sent a demand for release of any claim for an easement to Petruska and Compass Bank. While Petruska refused to consent, Compass Bank ultimately executed a Release of Easement and Petruska continues to seek a declaration that he held a valid easement and conveyed a valid easement under the Deed of Trust. Plaintiffs have been forced to incur the cost and expense of seeking to clear title to their property.

RECORD 127

## DECLARATORY JUDGMENT

24.     Pursuant to Section 37.001 *et seq.* of the Texas Civil Practice and Remedies Code, Plaintiffs request a declaratory judgment that Plaintiffs are the sole and rightful owners of the Property and declaring **all claims** to an easement at any time or currently are null and void.

25.     Plaintiffs further request that Defendants be required to execute a correction deed for the General Warranty Deed with Vendor's Lien and Deed of Trust, and file it with the Real Property Records in Van Zandt County.

## CLAIM FOR DAMAGES

26.     The alleged conveyance of the easement was a fraudulent interest in Plaintiffs' Property.

27.     Pursuant to **Section 12.002(b)** of the Texas Civil Practice and & Remedies Code, Plaintiffs seek recovery of damages, court costs and attorneys' fees.

## ATTORNEYS' FEES

28.     Pursuant to **Section 37.001** *et seq.* of the Texas Civil Practice & Remedies Code, Plaintiffs seek recovery of court costs and attorneys' fees as are equitable and just.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, Thomas Lytle and Ellen Lytle, respectfully requests that Defendants be cited to appear and answer, and that on the final trial, the court grant Plaintiffs judgment quieting title to the Property and removing cloud on Plaintiffs' title; declaratory judgment; damages; attorney fees; award of costs, and any other relief at law or in equity to which Plaintiffs are entitled.

RECORD 128

Respectfully submitted,

**BELLINGER & SUBERG, L.L.P.**

By: _____

BARBARA L. EMERSON
Texas State Bar No. 06599400
10,000 N. Central Expy, Suite 900
Dallas, Texas 75231
Telephone: 214/954-9540
Facsimile: 214/954-9541
bemerson@bd-law.com

**ATTORNEY FOR PLAINTIFFS,
THOMAS LYTLE AND ELLEN LYTLE**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of foregoing has been forwarded to all counsel via eservice and email on the 12th day of February, 2015 as provided below.

Ralph E. Allen
Attorney and Counselor at Law
100 East Ferguson, Suite 901
Tyler, Texas 75702
(903) 593-9727 Telephone
rallen@tyler.net

Michael F. Pezzulli
M. Ellen Skinner
Christopher L. Barnes
Pezzulli Barnes, LLP
17300 Preston Road, Suite 220
Dallas, TX 75252-5476
(972) 713-1300 Telephone
michael@courtroom.com
Ellen@courtroom.com
Chris@courtroom.com

_____

Barbara L. Emerson



I certify this to be a true and exact copy of the original on file in the District Clerk's Office.

CLERK DISTRICT COURT TEXAS

Page 6

RECORD 129



# TERESA A. DRUM

## DISTRICT JUDGE
### 294th Judicial District Court

Pam Kelly
Court Coordinator

121 East Dallas Street, Room 301
Canton, Texas 75103-1465
Tel: (903) 567-4422   Fax: (903) 567-5652

July 20, 2015

Hon. Barbara L. Emerson, Esq.        Via email: bemerson@bd-law.com
Attorney for Plaintiffs, Thomas & Ellen Lytle

Hon. Ralph Allent, Esq.        Via email: rallen@tyler.net
Attorney for Defendants, Helmuth & Zaciann Gutzke

Hon. Michael Pezzulli, Esq.        Via email: Michael@courtroom.com
Attorney for Defendants, David & Sandra Petruska

## NOTICE OF TRIAL SETTING

The Court finds this matter is ripe for trial and sets this matter in a trial before the Court on:

## DECEMBER 1st, 2015 @ 9:00AM (jury selection)
## EVIDENCE TO BEGIN IMMEDIATELY AFTER

A scheduling conference has been set for this case on

## JULY 31, 2015 @ 1:30PM for scheduling conference

the following will be discussed:

1. All pending motions
2. All facts which have been stipulated and admitted and require no proof;
3. Probable length of trial;
4. Availability of witnesses, including out-of-state witnesses;



RECORD 130

5.    Proposed special issues, including instructions and definitions
6.    Exhibits: Each counsel/party will bring a list of exhibits to be offered and will make all such exhibits available for examination by opposing counsel. This rule does not apply to rebuttal exhibits which cannot be anticipated.
    a.  Any objections to admissibility of exhibits must, where possible, be made at the pre-trial conference.
    b.  The offering party will bring and have marked their own exhibits
7.    Mediation completed/Mediator agreed upon
8.    Social Study completed
9.    Scheduling Order

**IF YOU DO NOT APPEAR AT THE SCHEDULING CONFERENCE, THE COURT SHALL PRESUME THAT YOU HAVE NO FURTHER INTEREST IN EITHER PURSUING OR DEFENDING THE MATTER AND WILL, THEREFORE, ENTER APPROPRIATE ORDERS PURSUANT TO RULES 165 AND/OR 165A OF THE TEXAS RULES OF COURT.**

**IF THE ATTORNEYS SUBMIT AN AGREED SCHEDULING ORDER, THIS HEARING MAY BE PASSED BY AGREEMENT.**

HON. TERESA A. DRUM
294TH DISTRICT COURT



**RECORD 131**

Filed 8/4/2015 10:45:22 AM
Karen L. Wilson
District Clerk
Van Zandt County Texas

Kimberly Knowles

NO. 14-00172

| | | |
|---|---|---|
| THOMAS LYTLE AND ELLEN LYTLE, | § § § | IN THE DISTRICT COURT |
| v. | § § | |
| DAVID C. PETRUSKA, SANDRA L. PETRUSKA, COMPASS BANK, HELMUTH K. GUTZKE, and ZACKIANN GUTZKE | § § § § § § | 294th JUDICIAL DISTRICT |
| | § | VAN ZANDT COUNTY TEXAS |

## DEFENDANT DAVID C. PETRUSKA'S MOTION TO STAY ALL PROCEEDINGS WITH LEGAL AUTHORITIES IN SUPPORT

TO THE COURT

COMES NOW, David C. Petruska, Defendant herein, by and through his attorney of record, Michael Pezzulli, and respectfully moves this Honorable Court for an Order staying all discovery proceedings, on the following grounds and reasons:

### FACTUAL BACKGROUND

Plaintiff's First Amended Petition seeks to inject state law claims of threat of bodily injury. Specifically, Plaintiff claims that "Petruska has taken actions to assert his rights to the easement, including coming onto Plaintiffs' property and threatening Plaintiff Thomas Lytle with an assault rifle, and continuing to assert an easement existed in his pleadings before this court.

Motion to Stay



I certify this to be a true and exact copy of the original on file in the District Clerk's Office.

DEPUTY CLERK

**RECORD 132**

In essence, Plaintiff's suit papers mirrors the indictment that Plaintiff obtained against the Defendant in Van Zandt County, Texas on April 21, 2014. Specifically, the indictment[1] alleges that the Defendant, David Petruska, on or about February 15, 2014, did intentionally or knowingly threaten Tom Lytle with imminent bodily injury and did there use or exhibit a deadly weapon, to wit: a firearm, during the commission of said assault and said firearm in the manner and means of use could have caused serious bodily injury or death to Tom Lytle.[2]

## SUMMARY OF THE ARGUMENT

This requested stay involves weighing Mr. Petruska's fundamental constitutional right to a fair trial in this civil threat of bodily injury case against a claim that somehow the Plaintiff will be injured if he cannot maintain a parallel prosecution of the identical claims.

Discovery will obviously seek to elicit evidence from the defendant that he engaged in the identical alleged illegal activity that is the subject of the State Indictment. The civil proceeding, if not deferred, will undermine Defendants' Fifth Amendment privilege against self-incrimination, expand rights of discovery beyond the limits of Texas Rule of Criminal Procedure and expose the basis of the defense to the prosecution in advance of a criminal trial. A delay of this civil proceeding will not seriously jeopardize the public interest.

---

[1] A true and correct copy of the indictment is attached hereto as Exhibit 1.
[2] Plaintiff's First Amended Complaint at Page 4, Paragraph 23.

Motion to Stay



RECORD 133

## LEGAL ARGUMENT

### A. When the court forces Relator to choose between waiving his Fifth Amendment right or suffering an adverse inference in this civil case, an abuse of discretion occurs.

Should this Court force the Defendant to answer civil discovery and forego his constitutional right against self-incrimination while the option to stay the civil proceedings is available, such order would be an abuse of discretion. In *Wehling v. Columbia Broadcasting System*, Wehling invoked his Fifth Amendment right to silence in the civil case while there was a competing grand jury proceeding, and the district court ordered Wehling to answer the discovery requests or suffer dismissal of his civil case. 608 F.2d 1084, 1086 (5th Cir. 1979), *on reh'g*, 611 F.2d 1026 (1980). Subsequently, the district court dismissed his case and refused to grant a stay of civil discovery. *Id.* at 1086. On appeal and under an abuse of discretion standard of review, the *Wehling* court reversed the dismissal of Wehling's civil suit holding the district court's dismissal was "constitutionally impermissible," for the U.S. Supreme Court has "disapproved of procedures which require a party to surrender one constitutional right in order to assert another." 608 F.2d at 1088 (noting that dismissal of the civil case is inappropriate where other, less burdensome remedies [such as a stay of civil discovery] are

Motion to Stay

available) (citing *Simmons v. United States*, 390 U.S. 377, 394 (1968)).

Therefore, when a court forces the Defendant to answer civil discovery and forego his constitutional right to silence while the option to stay the civil proceedings is available and the Defendant is under criminal indictment for the same events, the refusal to stay the civil case is an abuse of discretion.

### B. If ordered to give a civil deposition, Defendant will be unable to adequately defend himself in both cases, thus violating his constitutional rights to due process and against self-incrimination.

Absent the requested stay, the Defendant will be unable to answer any questions of substance in his civil deposition; therefore, he will be unable to make his defense to the accusations asserted by the Plaintiff, Tom Lytle. This outcome is an unconstitutional denial of David Petruska's right to due process in this case. A fundamental precept of our judicial system is equal treatment under the law and hamstringing David Petruska by the tactic of insisting on a premature deposition to force assertion of the Fifth Amendment violates that premise. Once a deposition occurs in this context, the harm is done, and the bell cannot be unrung.

This trial court should stay the civil case when, as here, such a stay is necessary to avoid "substantial and irreparable prejudice." *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983) (citing *SEC v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981)). In this case, Defendant's exposure to an adverse inference from the invocation of the Fifth Amendment would similarly result in such "substantial and irreparable prejudice" if the action proceeds. Each time the

Motion to Stay

RECORD 135

Defendant asserts the Fifth Amendment privilege, which would occur continuously throughout these proceedings, his credibility would be subject to negative inferences. *See, e.g., Gebhardt v. Gallardo,* 891 S.W.2d 327, 331 (Tex. App.-San Antonio 1995, no writ); *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976). Undoubtedly, the accumulated effect of these negative inferences will be crippling to his defense, and will force David Petruska to relinquish his right to due process and forfeit his legal remedies in this civil case.

Under these circumstances, the Court should attempt to fashion a remedy that does not impinge upon the Defendant's constitutional right and does not unduly prejudice either of the parties. *See, e.g., Texas Department of Public Safety Officers Association v. Denton,* 897 S.W.2d 757, 763 (Tex. 1995) ("the trial court should weigh options for delaying civil proceedings during the pendency of criminal investigations or parallel proceedings"). A temporary judicial stay is one such remedy. *See, e.g., Librado v. MS. Carriers, Inc.,* C.A. No. 3:02-CV-2095D, 2002 WL 31495988, at *1 (N.D. Tex. Nov. 5, 2002) (finding that a partial stay was appropriate until such time as a verdict of not guilty has been returned or sentencing has been completed in the criminal action against defendant).

Under Texas law, a trial court may stay a pending case at its discretion. *Myer v. Tunks,* 360 S.W.2d 518, 522-23 (Tex. 1962); *Space Master Int'l, Inc. v. Porta-Kamp Mfg. Co.,* 794 S.W.2d 944, 946 (Tex. App.-Houston [1st Dist.] 1990, no writ). In determining whether to stay an action, the trial court should consider the

Motion to Stay

**RECORD 136**

similarity of issues between the criminal matter and the civil litigation. *See Jackson v. Smith Sec. Serv., Inc.*, 786 S.W.2d 787, 788-89 (Tex. App.-Houston [1st Dist.] 1990, no writ) (where the court using its discretionary power stayed the plaintiffs appeal of her civil case "until the Court of Criminal Appeals has decided her criminal appeal and issued a mandate").

### C. Several factors weigh in favor of granting the stay of the civil proceeding.

All of the common law factors point to a stay of the civil proceeding. When considering a motion to stay in the context of competing interests between the parties, courts generally weigh several factors, including: (1) the extent to which the issues in the two cases overlap, (2) the status of the cases including whether the defendant has been indicted, (3) the interests of the plaintiff in proceeding versus the prejudice caused by delay, (4) the interests of the defendant, (5) the interests of the courts, and (6) the public interest. *See, e.g., Librado*, 2002 WL 31495988 at *1; *Fierson v. City of Terrell*, C.A. No. 3:02 CV 2340-H, 2003 WL 21355969, at *3 (N.D. Tex. June 6, 2003); *Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995). Each of these factors support staying this case pending resolution of the parallel criminal proceeding against the Defendant.

The most important factor to be considered in determining whether to grant a stay "is the degree to which the civil issues overlap with the criminal issues." *Frierson*, 2003 WL 21355969, at *3 (finding that the overlap between the issues in parallel civil and criminal sexual harassment suits justified a civil stay).

Motion to Stay

In this case, the subject matter of the civil suit and the criminal indictment is *virtually identical,* both actions arise out of the same February 15, 2014 allegations that the Defendant threatened the Plaintiff with a deadly weapon. In fact, the overlap is so extensive that the Defendant could "legitimately refuse to answer essentially all relevant questions because of the threat of incrimination." *United States v. Melchor Moreno,* 536 F.2d 1042, 1049 (5th Cir. 1976) (citing *United States v. Gomez-Rojas,* 507 F.2d 1213, 1220 (5th Cir. 1975) (holding that in such circumstances, a witness could be totally excused from responding to civil inquiries). Here, the criminal and civil cases almost completely overlap. *See also Kmart Corporation v. Aronds,* C.A. No. H-96-1212 (S.D. Tex. Dec. 11, 1996) ("[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Id.* at 5) (citing, *SEC v. Dresser Industries, Inc.,* 628 F.2d 1368, 1375-76 (D.C. Cir.), *cert. denied,* 449 U.S. 993 (1980)).

The second factor, the status of the cases, also weighs in favor of a stay of this civil action. *See id.* ("A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct...."). In this matter, David Petruska faces current pending felony charges for the same conduct alleged by Plaintiff herein. If discovery against Mr. Petruska were to proceed before resolution of the criminal proceeding, the parties in both cases might very well encounter the kinds of conflicts and tensions-*e.g.,* assertions of Fifth Amendment privileges by potential witnesses and concerns about the

Motion to Stay

RECORD 138

impact of discovery in this action on the parallel criminal proceeding-that a stay is precisely designed to prevent.

The third factor cited above, the interests of the plaintiff, also weighs in favor of a stay of this proceeding. Because it appears that the criminal action will be resolved in the reasonably near future, any inconvenience or other prejudice associated with delaying these proceedings is likely to be slight, if not altogether non-existent. *See Trustees of Plumbers*, 886 F. Supp. at 1140 (indicating that the expectation that the related criminal action would be resolved within six months supported staying the civil case). Moreover, the interests of the Plaintiff herein, must be severely discounted to a *de minimis* amount, for the Plaintiff's entire claims are that he has fear and apprehension. If the Plaintiff can actually prove his allegations, there will be little impact on his claimed damages for a six-month to a year stay in the civil action.

The interests of the Defendant, the fourth factor, clearly support a stay of this proceeding. Because the two cases arise from the same alleged facts, the Defendant faces the unenviable prospect that every statement he makes in the civil proceeding could be used against him in the criminal case (where, of course, ordinarily the parties are permitted only limited discovery). In short, allowing discovery against the Defendant in the instant action, and that would include discovery from the Defendant or his wife, to proceed on a simultaneous "double track" with the criminal action compromises Defendant's due process rights in both proceedings.

Motion to Stay

The fifth factor cited above, which considers the courts' interests, also supports staying this proceeding. Staying discovery in this case against the Defendant until the criminal proceeding is no longer pending will serve judicial economy because the parties will be in a better position to cooperate with each other on testimonial matters-thereby avoiding unnecessary disputes and moving the case along-once the overriding concern about the effect testimony in this proceeding has on the criminal case is removed. A short stay in this proceeding also alleviates the consideration by the trial court of the adverse inference claims that will arise if civil discovery against the Defendant were allowed to proceed.

Finally, the last factor, the public interest, supports a stay as do the other factors. "[T]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant." *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003). Staying this action in favor of the nearly identical criminal action would permit the latter to be resolved without any possibility of interference from the civil proceeding (*e.g.*, claims or disputes that one party was using the testimony in this civil matter unfairly in the criminal case).

Thus, all of the factors weigh in favor of granting the stay of the civil proceeding.

### D. Texas Law Supports the Granting of the Requested Stay

The Texas Supreme Court has explained that the dangers of compelling "any prospective criminal defendant to testify are real." *Texas Department of Public Safety Officers Association v. Denton*, 897 S.W.2d 757, 764 (Tex. 1995) (Gonzalez, J., concurring). As "the scope of discovery allowed in a civil trial may

exceed what a prosecutor would be permitted in a criminal proceeding," a prosecutor "could use the discovery responses ... against [Defendant] in a criminal proceeding," for the civil "testimony might give a prosecutor a dress rehearsal of [Defendant's] defense to criminal charges." *Id.* at 764-65 (collecting cases).

Because of those dangers and due process concerns, the Texas Supreme Court has followed its federal counterparts and held that even a civil plaintiff is entitled to the protections afforded by the Fifth Amendment when there is a threat of criminal proceedings. *Id.* at 760-61. If by asserting the right to silence, Defendant jeopardizes his civil case, then the guarantee of that right would ring hollow. Even in the case where it is a civil plaintiff who is using the privilege offensively, the Texas Supreme Court held that the following should be considered in assessing how to proceed: When delaying civil proceedings during the pendency of criminal investigations, one should consider the statute of limitations for the relevant crime, and "the extent to which the delay would prejudice the defendant's ability to prepare a defense." *Id.* at 763 (citing, *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084 (5th Cir. 1979)).

The *Denton* opinion stands for the proposition that the trial court must fashion a remedy to make the proceeding fair to both parties.

The Fifth Amendment can be asserted in both civil and criminal trials "wherever the answer might tend to subject to criminal responsibility him who gives it." *McCarth v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L. Ed. 158 (1924); *see Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656

Motion to Stay

RECORD 141

32 L. Ed. 2d 212 (1972). Generally, the exercise of the privilege should not be penalized. *Spevack v. Klein*, 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L. Ed. 2d 574 (1967); *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L. Ed. 2d 653 (1964).... The rule against penalizing the use of the privilege does not prohibit a trial court from taking acts to ensure that the civil proceeding remains fair.

*Id.* at 760.

### E. Conclusion and Prayer for Relief

The Defendant, David Petruska, respectfully submits this Motion and Brief in support of the Granting of a Stay of the Civil Litigation and requests that this Court stay all trial proceedings, including but not limited to the deposition of the Defendant and his wife, in this case pending the outcome of the related criminal matter. Defendant also seeks all other relief to which he may show himself justly entitled.

RECORD 142

Respectfully submitted,
Holmes Firm PC


By *Michael F. Pezzulli*
Michael Pezzulli
SBN# 15881900
14911 Quorum Drive, Suite 340
Dallas, Texas 75254
Direct: 469-316-3428
Main #: 4699167700 Ext. 104
michael@courtroom.com


Rothwell B. Pool
SBN# 16120500
408 W. Nash St.
Terrell, Tx. 75160-2502
Phone: 972-524-7585
RB@rbpoollaw.com


Counsel for Defendants, David C. Petruska and
Sandra L. Petruska

Motion to Stay



**RECORD 143**

## CERTIFICATE OF CONFERENCE

I hereby certify that an email conference was had with opposing counsel and no agreement could be reached.

/s/*Michael F. Pezzulli*

Michael Pezzulli

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document was emailed to opposing counsel, Ms. Barbara Emerson and Mr. Ralph Allen this the 3rd day of August, 2015.

/s/ *Michael F. Pezzulli*

Michael Pezzulli

Motion to Stay



**RECORD 144**

F1400120

Cause No. *CR14-00185*

Court: 294th Judicial District Court of Van Zandt County, Texas

The State of Texas Vs. DAVID CHARLES PETRUSKA

Charge: PC Section 22.02-Aggravated Assault with a Deadly Weapon

Degree: Second Degree Felony

.................................................................................
IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURY, for the County of Van Zandt, State of Texas, duly selected impaneled, sworn, charged, and organized as such at the JANUARY Term A.D. 2014 of the 294th Judicial District Court for said County, upon their oaths present in and to said court at said term that DAVID CHARLES PETRUSKA hereinafter styled Defendant, on or about FEBRUARY 15TH, 2014, and before the presentment of this indictment, in the County and State aforesaid, did then and there intentionally or knowingly threaten TOM LYTLE with imminent bodily injury by POINTING A FIREARM AT HIM AND THREATENING TO KILL HIM, and did and there use or exhibit a deadly weapon, to wit: A FIREARM, during the commission of the said assault and said FIREARM in the manner and means of use could have caused serious bodily injury or death to TOM LYTLE;

**Against the peace and dignity of the State.**

Foreman of the Grand Jury

EXHIBIT
1

I certify this to be a true and exact copy of the original on file in the District Clerk's Office Van Zandt County Texas

**RECORD 145**

THE STATE OF TEXAS
CR14-00185

=========================================================
PRECEPT TO SERVE INDICTMENT
=========================================================

TO THE SHERIFF OF VAN ZANDT COUNTY, SAID STATE, GREETING:

YOU ARE HEREBY COMMANDED to serve

DAVID CHARLES PETRUSKA , DOB: 5/11/1945

the defendant in Cause No. CR14-00185, wherein The State of Texas is

plaintiff, and DAVID CHARLES PETRUSKA , is defendant, in person, with

the accompanying certified copy of the original Bill of Indictment now on

file in 294th District Court, Van Zandt County, Canton, Texas.

HEREIN FAIL NOT, but of this Writ make due return as the law directs.

Issued and given under my hand and seal of Office, this the 21st

Of April , 2014.

KAREN WILSON, CLERK
294TH DISTRICT COURT
VAN ZANDT COUNTY, TEXAS

BY _____ DEPUTY

--------------------------------------------------------

SHERIFF'S RETURN

Came to hand on the __25__ day of __April__ , 20 _14_ ,

at __1__ o'clock _p_.M., and executed by delivering to the within named

defendant, _David Charles Petruska_ in my custody, in person, a

certified copy of the indictment mentioned within, and delivered to me with

this writ, on the __25__ day of __April__ , 20 _14_ .

Returned on the __25__ day of __April__ , 20 _14_ .

__L. Ray__ Sheriff,
__Van Zandt__ County, Texas.

BY __Hughes #851__ DEPUTY

I certify this to be a true and
exact copy of the original on file
in the District Clerk's Office,
Van Zandt County, Texas.

DEFENDANT'S COPY

**RECORD 146**

Filed 8/14/2015 6:41:45 PM
Karen L. Wilson
District Clerk
Van Zandt County, Texas
Marisa Chaney

Kimberly Knowles

CAUSE NO. 14-00172

| | | |
|---|---|---|
| THOMAS LYTLE AND ELLEN LYTLE | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | |
| | § | |
| DAVID C. PETRUSKA, SANDRA L. | § | 294TH JUDICIAL DISTRICT |
| PETRUSKA, COMPASS BANK, | § | |
| HELMUTH K. GUTZKE AND | § | |
| ZACKIANN GUTZKE | § | VAN ZANDT COUNTY, TEXAS |

## PLAINTIFFS' OPPOSITION TO DEFENDANT
## DAVID C. PETRUSKA'S MOTION TO STAY ALL PROCEEDINGS

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs Thomas Lytle and Ellen Lytle and file this their Opposition to *Defendant David C. Petruska's Motion to Stay All Proceedings* ("Motion to Stay") and in opposition to the motion would show the Court as follows:

### PROCEDURAL BACKGROUND

This suit was filed on July 9, 2014 against Defendant David Petruska and others as an action seeking a declaratory judgment regarding an alleged easement on Plaintiffs' real property. In addition, Plaintiffs sought damages pursuant to TEX. CIV. PRAC. & REM. CODE § 12.002(b) for the filing and claim of a fraudulent encumbrance on Plaintiffs' real property. Included in the Original Petition is the following factual allegation:

> Petruska has taken actions to assert his rights to the easement, including coming on to Plaintiffs' property and threatening Thomas Lytle with an assault rifle.[1]

On February 12, 2015 Plaintiffs filed *Plaintiffs' First Amended Petition*. The above factual allegation remains in the Amended Petition and has not been expanded.

---

[1] *Plaintiffs' Original Petition* filed July 9, 2014, paragraph 24.

PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID C. PETRUSKA'S
MOTION TO STAY ALL PROCEEDINGS
\\Bdnt-fs1\wpprolaw\3191.002\274205.docx

Page 1

I certify this to be a true and exact copy of the original on file in the District Clerk's Office.

RECORD 147

Prior to suit being filed, on or about April 21, 2015, David Petruska was indicted by a Van Zandt County Grand Jury (not by Plaintiff Thomas Lytle) for this assault with a deadly weapon.

Defendant David Petruska has previously alleged that the assault identified by Plaintiffs "had no connection to the disputed easement."[2] While Defendant David Petruska now contends these civil proceedings will undermine Defendant's Fifth Amendment privilege; Defendant has waived that privilege. By an Affidavit filed with this Court on December 1, 2014, an exhibit to *Defendants David C. and Sandra L. Petruska's Response to Plaintiff's Motion for Summary Judgment on Liability, Subject to Their Motion for Continuance*, Defendant testified as follows:

> In paragraph 21 of Plaintiff's Motion for Summary Judgment on Liability (filed October 29, 2014), the Lytles wrote, "The Petruskas have taken actions to assert their rights to the easement, including coming on to Plaintiffs' property and threatening Plaintiff, Thomas Lytle, with an assault rifle." This is false. I never came on to the Lytles' property with an assault rifle. On February 15, 2014, I had an unloaded assault rifle on my gator and was driving on my own property. I had my rifle because Thomas Lytle had threatened to shoot me and three other workers, while we were working on a fence on our property. I never threatened Thomas Lytle with my rifle. Also, my driving with the rifle in my gator had no connection to the disputed easement.[3]

Even if this Court were to find there is no waiver of Defendant's Fifth Amendment privilege, there are no grounds to stay proceedings in this action. The alleged risk to Defendant is one of his own making. As this Court is aware, Defendant David Petruska's criminal proceeding has been set for pretrial hearing eight times. In each instance the proceedings have been continued at Defendant's request.

---

[2] *Defendants David C. and Sandra L. Petruska's Response to Plaintiffs' Motion for Summary Judgment on Liability*, Subject to Their Motion for Continuance, page 15, paragraph 17.

[3] *Defendants David C. and Sandra L. Petruska's Response to Plaintiff's Motion for Summary Judgment on Liability*, Subject to Their Motion for Continuance, Tab 1, Affidavit of David C. Petruska, page 5, paragraph 19.

PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID C. PETRUSKA'S
MOTION TO STAY ALL PROCEEDINGS
\\Bdnt-fs1\wpprolaw\3191.002\274205.docx

Page 2

CERTIFIED RECORD 148

## LEGAL ARGUMENT

The Courts have repeatedly held Defendant has no constitutional right to a stay of the civil proceedings. "There is no general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of separate civil and criminal actions." *SEC v. Kiselak Capital Group, LLC*, No. 4:09-CV-256-A, 2011 WL 4398443 *2 (N.D. Tex. Sept. 20, 2011); *SEC v. First Financial Group*, 659 F.2d 660, 666 (5th Cir. 1981). There is no constitutional or statutory provision allowing a party "the right to choose the case, either criminal or civil, which he desires to first proceed to trial." *Gebhardt v. Gallardo*, 891 S.W.2d 327, 331 (Tex. App.— San Antonio 1995).

Defendant's request is an extraordinary remedy which acts as a blanket assertion of the Fifth Amendment. Blank assertions of the Fifth Amendment are improper. *SEC v. Kiselak Cap. Group, LLC*, 2011 WL 4398443 *2; *United States v. Godwin*, 625 F.2d 693, 701 (5th Cir. 1980); *Gebhardt*, 891 S.W.2d at 330. It is "the rule rather than the exception" that civil and criminal proceedings move forward contemporaneously. *Alcala v. Texas Webb County*, 625 F.Supp.2d 391, 397 (S.D. Tex. 2009); *Gebhardt*, 891 S.W.2d at 330.

In determining whether a stay is appropriate, the "first and most important factor is the degree to which the civil issues overlap with the criminal issues." *SEC v. Kiselak Cap. Group*, 2011 WL 4398443 *2. In this instance, as admitted by Defendant David Petruska, the facts surrounding his assault on Thomas Lytle are related but tangential to whether Defendants claimed an easement and whether there was fraud under TEX. CIV. PRAC. & REM. CODE § 12.002(b). To justify a stay, David Petruska must make a strong showing that "the two proceedings will so overlap that either (1) he cannot protect himself in the civil proceeding by selectively invoking his Fifth Amendment privilege, or (2) effective defense of both [criminal

PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID C. PETRUSKA'S
MOTION TO STAY ALL PROCEEDINGS
\\Bdnt-fs1\wpprolaw\3191.002\274205.docx

Page 3



RECORD 149

and civil cases] is impossible." *Alcala*, 625 F. Supp. 2d at 401. As in *Alcala*, the facts of the proceedings do not overlap. The criminal proceedings involved the actions of Defendant on one particular day: his threat to shoot and kill Plaintiff Thomas Lytle with an assault rifle. The conduct which forms the basis of this suit is "at least one step removed." Liability is based on actions taken years before David Petruska's assault and relate to property rights. As stated by the court in *Alcala*, any alleged overlap is further reduced when private parties are involved in the civil suit. *Id*. Private party plaintiffs have interests distinct from those of the government.

As there is little overlap, Defendant David Petruska has the ability to defend both actions and rely on this Fifth Amendment rights (to the extent not already waived). If he is questioned regarding the assault, he can repeat his earlier testimony, testify anew or invoke his Fifth Amendment right not to incriminate himself.

On the other hand, to invoke the extraordinary remedy of a stay would violate Plaintiff's rights under Article 1, Section 13 of the Texas Constitution. *In re: Gore*, 251 S.W.3d 696, 699 (Tex. App.—San Antonio, 2007). To stay the case will violate the "open courts" provisions of the Texas Constitution. *Gebhardt*, 891 S.W.2d at 332. Plaintiffs are entitled to their constitutional right of access to the courts. As part of that right they are entitled to full discovery within a reasonable time, to develop claims and have their case tried. *In re: Gore*, 251 S.W.3d at 699. In *Gore* the court identified repeated holdings by various Texas Courts of Appeal, finding an abuse of discretion when civil proceedings are stayed during the pendency of criminal proceedings.

To the extent Defendant's rights later become an issue the Court can fashion remedies less severe than a stay of the proceedings. Defendant may seek a protective order on discovery; the Court can determine through motions in limine how and when evidence may be admitted at

PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID C. PETRUSKA'S
MOTION TO STAY ALL PROCEEDINGS
\\Bdnt-fs1\wpprolaw\3191.002\274205.docx

Page 4

RECORD 150

trial. Defendant has not shown any factual basis to support the extraordinary relief sought. Defendant's entire argument is that there is a criminal proceeding pending so the civil action should be stayed. That simply is not the law.

Defendant David Petruska has not established special circumstances which would warrant such extraordinary relief. To grant this relief would deny Plaintiffs their constitutional right of access to the courts. Defendants' Motion to Stay should be denied.

WHEREFORE, for the reasons stated above, Plaintiffs Thomas Lytle and Ellen Lytle respectfully request that the Court deny the Motion to Stay.

Respectfully submitted,

BELLINGER & SUBERG, L.L.P.

By: _____
BARBARA L. EMERSON
Texas State Bar No. 06599400
10,000 N. Central Expy., Suite 900
Dallas, Texas 75231
Telephone: 214/954-9540
Facsimile: 214/954-9541
bemerson@bd-law.com

ATTORNEY FOR PLAINTIFFS,
THOMAS LYTLE AND ELLEN LYTLE

PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID C. PETRUSKA'S
MOTION TO STAY ALL PROCEEDINGS
\\Bdnt-fs1\wpprolaw\3191.002\274205.docx

Page 8



RECORD 151

# CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of foregoing has been forwarded to

all counsel via eservice and email on the 14th day of August, 2015 as provided below.

Ralph E. Allen
Attorney and Counselor at Law
100 East Ferguson, Suite 901
Tyler, Texas 75702
(903) 593-9727 Telephone
rallen@tyler.net

Michael F. Pezzulli
Holmes Firm PC
14911 Quorum Drive, Suite 340
Dallas, Texas 75254
(469) 916-7700
Michael@courtroom.com

_____
Barbara L. Emerson

PLAINTIFFS' OPPOSITION TO DEFENDANT DAVID C. PETRUSKA'S
MOTION TO STAY ALL PROCEEDINGS
\\Bdnt-fs1\wpprolaw\3191.002\274205.docx

Page 6

I certify this to be a true and
exact copy of the original on file
in the District Clerk's Office

By _____
DEPUTY CLERK

RECORD 152

CAUSE NO. 14-00172

| | | |
|---|---|---|
| THOMAS LYTLE & ELLEN LYTLE | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | 294th JUDICIAL DISTRICT |
| | § | |
| | § | |
| DAVID C. PETRUSKA, ET. AL. | § | VAN ZANDT COUNTY, TEXAS |

## ORDER STAYING PROCEEDINGS

*Aug. 17, 2015*

NOW on ~~this day~~ the application for Stay of Proceedings filed in this matter on August 4, 2015 comes on for hearing. The Court having examined the application, the evidence and counsels' argument, is of the opinion that the Motion should, in all things be granted.

THE COURT FINDS that the defendant, David C. Petruska, is the subject of a Felony Indictment currently pending in the District Court of Van Zandt County, Texas and such indictment contains factual allegations substantially similar to the allegations contained in the instant matter.

THE COURT FURTHER FINDS that to continue these proceedings in this case would create an impermissible jeopardy to the Defendant and would have the potential to cause the Defendant to be forced to either forego his constitutional right against self-incrimination or be forced to waive his constitutional right and suffer the consequences, if any, of such waiver.

THE COURT FURTHER FINDS that it is inappropriate in the instant case to force the Defendant to choose between the assertion of or a waiver of his constitutional rights at this stage of this litigation.

IT IS THEREFORE ORDERED AND RENDERED that this proceeding is hereby stayed for a period ending the earlier of six-months from the date of the Order, or the completion of the trial level proceedings in the Van Zandt criminal action. In the event that the criminal matter is not resolved within the six-month stay, the Defendant, David C. Petruska, has the right to again move this Court for an additional stay and the Plaintiffs have the right to oppose such stay should the Plaintiffs choose to make such opposition.

Signed this __21__ day of August, 2015.

Honorable Teresa A. Drum
District Judge Presiding

**ORDER STAYING PROCEEDINGS – page 1**

I certify this to be a true and exact copy of the original on file in the District Clerk's Office, Van Zandt County, Texas.
By _____ DEPUTY CLERK

**RECORD 153**

# CRIMINAL DOCKET

CASE NO. CR14-00185

| NUMBER OF CASE | STYLE OF CASE | ATTORNEYS | OFFENSE | DATE OF FILING |
|---|---|---|---|---|
| CR14-00185 | THE STATE OF TEXAS vs. David Charles Petruska | Chris Martin STATE | Aggravated Assault with a Deadly Weapon | MONTH 4 DAY 16 YEAR 14 |

FEE BOOK VOL. PAGE

INFORMATION OR INDICTMENT

DEFENDANT

WITNESSES

MINUTE BOOK VOL. PAGE

| DATE OF ORDERS | | | ORDERS OF COURT |
|---|---|---|---|
| MONTH | DAY | YEAR | WAS STENOGRAPHER USED? |
| 5 | 29 | 14 | Waived Arrg PT 7/17/14 |
| 7 | 17 | 14 | PT 8/21/14 |
| 8 | 21 | 14 | PT 9-18-14 |
| 9 | 18 | 14 | PT 11-13-14 |
| 11 | 13 | 14 | PT 01-22-15 |
| 1 | 22 | 15 | PT 3-24-15 |
| 3 | 24 | 15 | Reset PT 5-19-15 |
| 5 | 20 | 15 | PT 7-7-15 |
| 7 | 7 | 15 | PT 8-18-15 |
| 8 | 18 | 15 | DC 10-20 - JS 11-2-15 |

I certify this to be a true and exact copy of the original on file in the District Clerk's office. Van Zandt County, Texas
BY: _____ DEPUTY CLERK